1  Michael St. James, CSB No. 95653
   ST. JAMES LAW, P.C.
2  155 Montgomery Street, Suite 1004
   San Francisco, California 94104
3  (415) 391-7566 Telephone
   (415) 391-7568 Facsimile
4  michael@stjames-law.com

5  Counsel for York Credit Opportunities Fund, L.P.

6

7              UNITED STATES BANKRUPTCY COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
   In re                                )    Case No. 03-51775 through 03-51778
10                                       )    Chapter 11
                                         )
11 SONICBLUE INCORPORATED et al.         )
                        Debtor.          )
12 ─────────────────────────────────────)

13

14         MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
                   MOTION FOR LEAVE TO APPEAL

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      SUMMARY ...................................................................................................................... 1

II.     FACTS ............................................................................................................................ 1

        A.      Context ................................................................................................................ 1

        B.      The Trustee's Charter ......................................................................................... 4

        C.      The Trustee's Decision to Hire His Partners ..................................................... 5

        D.      The Bankruptcy Court's Ruling .......................................................................... 6

III.    ARGUMENT .................................................................................................................. 6

        A.      The Trustee Should Be Required to Remain Disinterested by Retaining Independent

        Counsel ............................................................................................................................ 6

        B.      Leave to Appeal Should Be Granted ................................................................. 10

IV.     CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*First Nat. Bank of Montevideo, Minn. v. Johnson* 19 B.R. 651, 653 (D.C.Minn., 1982) ........................ 11

*In re Butler Industries, Inc.* 101 B.R. 194 (Bkrtcy. C.D. Cal. 1989) (rejecting employment) *aff'd* 114
 B.R. 695 (C.D. Cal. 1990) ................................................................................................ 8, 9

*In re Duque,* 48 B.R. 965 (D.C.Fla.,1984) ........................................................................ 11

*In re Gem Tire & Service Co.,* 117 B.R. 874, 879 (Bkrtcy. S.D. Tex. 1990) ........................... 8

*In re Michigan Interstate Railway Co.,* 32 B.R. 325 (Bkrtcy. E.D. Mich. 1983) ....................... 8

*In re Palm Coast, Matanza Shores Limited Partnership,* 101 F.3d 253 (2nd Cir. 1996 ....... 7, 11

*In re Roderick Timber Co.* 185 B.R. 601, 604 (BAP 9th Cir. 1995) ............................... 10, 11

*In re Showcase Jewelry Design, Ltd.,* 166 B.R. 205, 206 (E.D.N.Y 1994) ............................ 7, 9

*Knapp v. Seligson,* 316 F.2d. 164 (2nd Cir. 1966) ...................................................... 7, 11

*Mosser v. Darrow,* 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed 927 (1951) .......................... 7

*See, In re Interamericas, Ltd.,* 321 B.R. 830, 834 (S.D. Tex. 2005) ..................................... 8

*U.S. v. Air Florida, Inc.* 48 B.R. 749, 751 (D.C.Fla.,1984) ............................................ 11

**Statutes**

316. F.2d. at 168 ................................................................................................ 7

**Other Authorities**

Derr & Layden, *Appointing the Trustee's Own Law Firm – Conflict and Cases,* 13 Oct AM. BANKR.
 INST. J. 26 ..................................................................................................... 7, 9

Kelbon, Herman & Bell, *Conflicts, the Appointment of "Professionals," and Fiduciary Duties of Major
 Parties in Chapter 11,* 8 BANKR. DEV. J. 349, 398-400 (1991) ............................................ 9

Phelan & Penn, *Bankruptcy Ethics, An Oxymoron,* 5 AM. BANKR. INST. L. REV. 1, 40-41 (Spring 1997) 9

**Rules**

Fed. R. Bankr. P. 7052 ......................................................................................... 6

Fed. R. Bankr. P. 8003 ........................................................................................ 10

## I.     SUMMARY

The largest bankruptcy case in the District, with $80 million in cash assets, was derailed by ethical problems so severe that the Court called for the appointment of a *disinterested* and *independent* Chapter 11 Trustee.  The Trustee then *hired his own law firm* to represent him in the case, diverting millions of dollars of fees to his firm's coffers and making him no longer "disinterested".  Although the decision is technically permissible in extreme cases, the decisional law makes it clear that the extreme cases are cases that are so small that otherwise the Trustee could not obtain counsel.  *No* decisional law supports a Trustee hiring his own counsel in a large case, where the principal function of decision is to maximize fee opportunities.

This is the quintessential example of a matter which warrants permitting an interlocutory appeal. The issue is one of critical importance to the bankruptcy case; indeed, to practice in this District.  If not reviewed now, the decision will never be reviewable as a practical matter.  Moreover, if the lower court's Order were reversed now, shortly after the Trustee's appointment, it would be easy for the Trustee to retain disinterested counsel and go forward.  After enough time passes, changing counsel becomes much more difficult as a practical matter.

This Court should grant leave to appeal the Employment Order, and should reverse it.

## II.     FACTS

Although the problem at the core of this appeal can be addressed as an abstract question, it is much more compelling when considered in terms of the facts of this unique case.

### A.     Context

SONICBlue and its affiliates commenced this bankruptcy case in the Spring of 2003, and immediately effected a sale of substantially all of their business assets.  Since then, the only material asset of the estate has been $80 million in cash proceeds of sale.  The Debtor in Possession and the

Creditors Committee thereafter undertook to litigate and/or settle various claims and causes of action associated with the case.

The appointment of the Trustee was precipitated by revelations about misconduct on the part of the various estate fiduciaries and their professionals.   While the Court deferred ruling on the merits of most of the underlying claims of misconduct until they were presented in the context of a full evidentiary hearing, it concluded that the allegations had sufficient substance that the appointment of a "disinterested trustee" was "necessary to restore creditor confidence in the bankruptcy system."[1]

The key allegations, for which substantial evidence was adduced, were as follows:

   • The Creditors Committee, which was to represent the interests of all general unsecured creditors as a fiduciary, had become controlled by the Senior Bondholders,[2] who had made use of their control to insert themselves into the Via negotiations (discussed below).

   • Counsel for the Creditors Committee had not acted as an effective balance against the Senior Bondholders, potentially because it sought to preserve its referral sources.[3]

   • Counsel for the Debtor in Possession, Pillsbury Winthrop Shaw Pitman ("PWSP") identified an apparently meritorious $43 million challenge to the claims of the Senior Bondholders.[4]  The Senior Bondholders responded by demanding indemnification by PWSP under a pre-bankruptcy opinion letter that PWSP had issued in favor of the Senior Bondholders.   The Senior Bondholders asserted that if the challenge was meritorious, it would represent a claim against PWSP under the opinion letter.[5]

   • PWSP "solved" the issue by delegating the challenge to counsel for the Creditors Committee. PWSP failed to disclose the conflict and issue to the Court, a lapse the Court found required its immediate disqualification from any further representation in the case.[6]

---

[1]    Memorandum Decision and Order on Trustee, Conversion & Disqualification Motions, 16:7-9 (hereinafter "Trustee Decision").

[2]    Trustee Decision, 17:2-17.

[3]    Trustee Decision, 17:18-18:20.

[4]    Trustee Decision, 9:22-10:7.

[5]    Trustee Decision, 10:8-19.

[6]    Trustee Decision, 14:24-15:26.

- Since the Creditors Committee was controlled by the Senior Bondholders, the Committee could not effectively prosecute the challenge against the Senior Bondholders. The Creditors Committee did *not* acknowledge the conflict or attempt to resolve it through, e.g., the appointment of special counsel.[7]

- Via asserted a $75 million claim, which was disputed, but to which the Senior Bondholders' debt was expressly subordinated. Working through their position on the Committee, Senior Bondholders inserted themselves into the settlement negotiations liquidating the Via claim,[8] and in that context obtained a waiver of the subordination of the Senior Bondholders' claims to Via.[9] That result provided no benefit to the bankruptcy estate or the unsecured creditors generally, although it did afford a very substantial economic benefit to the Senior Bondholders. It was suggested that the Committee Counsel permitted this negotiation to preserve referral sources and counsel for the Debtor in Possession (PWSP) permitted it in hopes of avoiding a claim under the pre-petition opinion letter.

One of the motivating factors behind the enactment of the Bankruptcy Code in 1979 was to break up the "bankruptcy ring" and the rampant cronyism through which a collection of "bankruptcy regulars" "hacked up" the bankruptcy cases among themselves, without giving much weight to the niceties of bankruptcy law or legal ethics.[10]

As a historical matter, this District did not suffer from those issues, in part due to a salutary local practice under which local trustees were not members of law or accounting firms and did not have any other, potentially conflicting, business relationships with the estate professionals. In the Northern District of California, up until the decision that is the subject of this appeal, trustees have always been completely and truly independent and disinterested, enjoying no financial relationships with other estate professionals and receiving no economic benefits from their position other than the compensation awarded them by Court Order.

---

[7]    See, Trustee Decision, 17:2-18:20.

[8]    Trustee Decision, 17:2-17 ("Because the bondholders appear to have used their position on the committee to insert themselves into the settlement negotiations without revealing a hidden agenda, they may have breached their fiduciary duty to the unsecured creditor body…")

[9]    Trustee Decision, 7:28-9:16.

[10]    See, Trustee Decision, 18:16-20.

*B.     The Trustee's Charter*

Responding to the pathological situation described above, the Court expressed the need for "a strong, *neutral* trustee, who has *no connections* to any interested party"; a "strong and *disinterested* trustee" (emphasis supplied).[11]

The Trustee correctly considered the Court's ruling to apply both to himself and his law firm.[12] This was so because so many of the problems in the case related to the misuse of law firms and their business relationships with the estate.  The Court had noted that various parties "have questioned whether [the Debtor's Responsible Individual] has relinquished his management responsibilities to [his counsel]."[13]  Likewise, the connections of counsel to the business dynamics of the case had become a critical factor:  There was at least the appearance that PWSP's potential exposure to the bondholders led that firm to negotiate provisions of the VIA settlement that were favorable to the bondholders, but not otherwise beneficial to PWSP's client.[14]  There were suggestions that Committee counsel's "conduct was a self-interested act to protect its referral sources."[15]  Most critically, the Court noted that "there have been serious allegations that the case is being run by and for the benefit of counsel."[16]

---

[11]     Trustee Decision, 16:12, 18:24.

[12]     In the Alston & Bird Employment Application, the Trustee recites that the mandate to select someone "without connections to this case" "applies equally to the selection of counsel for the Trustee"... but he then selects his own partners! See, Application, ¶5 at 3:14-17.

[13]     Trustee Decision, 16:13-15.

[14]     Trustee Decision, 14:23 – 16:6.

[15]     Trustee Decision, 18:13-14.

[16]     Trustee Decision, 18:25; and see, Transcript of February 15, 2007 Hearing, 15:14-17.

    MR. SHAFFER:  What was missing in this case, Your Honor, was a client.  One of the things that keeps the professionals in line, in direction, is a client.

    THE COURT:     That's true.

1    Entering the case in this extraordinary context, the Trustee was expected to "clean house", and in

2    doing so, it was important for the Trustee to conduct himself as "Caesar's wife," selecting truly

3    independent professionals based exclusively on their suitability to the task at hand.

4

5

6    C.    *The Trustee's Decision to Hire His Partners*

7    While he may have done so with the best of intentions, the Trustee's decision to select his own

8    law firm to act as his counsel in this case demonstrated a remarkable insensitivity to both a salutary local

9    practice and the extraordinary and pathological context of the case into which he was appointed.  As

10   noted before, no Trustee in this District had previously retained as professionals in a case persons with

11   whom he had business interests.  The sole stated justification for the decision is as follows:

12

13         11.    Because of the extreme importance of the issues in this case, the analysis
           needed, and their resolution [sic], the ability I have to work with lawyers whom I have
14         known for twenty years and in whose independent judgment and analytical ability I have
           full and complete confidence is essential to the expeditious and appropriate resolution of
15         the very significant issues in this case.  It is respectfully submitted that in this unusual
           setting, alternative counsel would not be best suited to assist the Trustee in completing
16         his job.

17   Alston & Bird Employment Application, 5:14-20.

18   Clearly, there was no need for the Trustee to select his own firm as counsel.  A person of Mr.

19   Connolly's stature, extensive background and experience must know some lawyers, somewhere in the

20   country "in whose independent judgment and analytical ability I have full and complete confidence"

21   who are not also members of his own law firm.

22

23   As discussed below, the case law recognizes the permissibility of hiring the Trustee's own firm

24   in two contexts:  where there are exigent circumstances that require counsel to act immediately, without

25

26   _____

27   Here, the Trustee proposes that the lawyer and the client be members of the same law firm, feeding from the same
     trough.
28

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION FOR LEAVE TO APPEAL                                                          5

awaiting a retention order, and where the estate is so small that unless the trustee represents himself, the estate will not be represented at all. Transparently, neither of these circumstances exist here.

It is respectfully submitted that the only material reason for the Trustee to retain his own firm to represent him in this case was his desire to retain in his firm the millions of dollars of fees that Trustee's counsel would likely earn in the case.

### D. The Bankruptcy Court's Ruling

The Bankruptcy Court entertained briefing and oral argument on Appellant's Objection to the employment of Alston & Bird as Trustee's counsel. At the conclusion of oral argument, the Court briefly recited its analysis into the record: a trustee's choice of counsel was generally to be given deference, and the Court was not persuaded that this was a case that warranted overruling that general principle. See, Fed. R. Bankr. P. 7052 (permitting the Court to present its findings of fact and conclusions on the record).

## III.   ARGUMENT

### A. The Trustee Should Be Required to Remain Disinterested by Retaining Independent Counsel

Decisional law recognizes that something of critical importance is imperiled when a trustee hires his own law firm: the trustee's duties of independence, disinterestedness and loyalty.

It is this ethical concern that drives the case law.

> [T]he most overriding concern is the appearance of impropriety that arises when an individual attorney has the dual role of trustee representing the interests of the estate and attorney representing the financial interests of his or her law firm.

Derr & Layden, *Appointing the Trustee's Own Law Firm – Conflict and Cases*, 13 Oct AM. BANKR.
INST. J. 26 (1994) (noting that, "[a]s a result of these inherent potential conflicts, one would think that an appropriate circumstance rarely arises in which a trustee could hire his or her firm…").

The resulting rule is straight-forward and well established: "Absent special circumstances a trustee who is a partner of a law firm ought not seek to retain his law firm to represent him in the administration of a large bankruptcy matter." *In re Showcase Jewelry Design, Ltd.*, 166 B.R. 205, 206 (E.D.N.Y 1994), citing *Knapp v. Seligson*, 316 F.2d. 164 (2nd Cir. 1966). In *Knapp*, Justice Friendly explained the reason

> '[s]uch appointments should be the exception and made only when sound special circumstances justify.'… *The conduct of bankruptcy proceedings not only should be right but must seem right.* Even when litigation is likely to be the trustee's chief responsibility, there must always be doubt whether he can make a truly disinterested determination that his own firm, no matter what its overall merit, is best qualified to be his counsel in the circumstances of the particular case

*Knapp, supra*, 316. F.2d. at 168 (emphasis supplied).

The Second Circuit was more recently called upon to discuss the issue at length *In re Palm Coast, Matanza Shores Limited Partnership*, 101 F.3d 253 (2nd Cir. 1996). Its analysis focused on the law of trusts, noting that it "requires that the trustee *in his role as trustee*, be disinterested and prohibits him from obtaining interests adverse to the estate." *Palm Coast, supra,* 101 F.3d at 258 (emphasis in original). The Panel explained this principle in the language of a Supreme Court decision:

> "Equity tolerates in bankruptcy trustees no interests adverse to the trust. This is not because such interests are always corrupt, but because they are always corrupting." *Mosser v. Darrow*, 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed 927 (1951).

*Id.*

The Second Circuit therefore concluded:

> *A trustee who hires his own professional firm to assist him cannot be a 'disinterested person' who has no interests adverse to the estate.* Once the trustee's firm is hired by the estate, the trustee's personal interests are implicated. At that point, the trustee's independence and disinterestedness are compromised by a potential conflict of interest.

*Id.* (emphasis supplied) The Second Circuit acknowledged Section 327(d) as a statutory exception to this broad rule.

Recognizing that the rule is founded in issues of ethics and the importance of the appearance of propriety to the bankruptcy process, the courts having been sparing in their willingness to apply permit trustees to retain their own firms as counsel, noting that "such appointments should be exceptional, and justified by special circumstances"; *In re Gem Tire & Service Co.*, 117 B.R. 874, 879 (Bkrtcy. S.D. Tex. 1990) (holding that "the best interest of the estate test of §327(d) must be clearly demonstrated" at 878, rejecting employment). The statutory exception provided by Section 327(d) "must... be severely limited so as to prevent abuse and the appearance of impropriety." *In re Butler Industries, Inc.* 101 B.R. 194 (Bkrtcy. C.D. Cal. 1989) (rejecting employment) *aff'd* 114 B.R. 695 (C.D. Cal. 1990), quoting with approval *In re Michigan Interstate Railway Co.*, 32 B.R. 325 (Bkrtcy. E.D. Mich. 1983) (rejecting employment).

Ordinarily, case law restricts employment of a trustee's law firm in much the same way that it has been restricted in this District: to small cases in which the estate might not otherwise be represented by counsel. *See, In re Interamericas, Ltd.*, 321 B.R. 830, 834 (S.D. Tex. 2005), collecting cases for the proposition that "most relevant authority – including *Butler* – attempts to limit retention of the trustee's own firm to small cases." And see *Knapp, supra,* (rejecting employment of the trustee's firm as counsel in "substantial cases").

The only appellate decision on the subject within the Ninth Circuit – the District Court's decision in *Butler, supra* – is instructive. The Court noted that it is the Trustee's burden to show "cause" why the best interests of the estate are better served by hiring the Trustee's own firm "as opposed to representation by an *independent* law firm." *Butler, supra*, 114 B.R. at 699 (emphasis supplied). There, as here, the Trustee argued that retention of his own firm would simply "result in a smoother administration of the estate"; *id.*; an assertion that was found to constitute insufficient "cause."

Rather, the District Court in *Butler*, like other courts and commentators, adopted the Bankruptcy Court's identification of four examples of the sort of unusual circumstances that would constitute good cause to compromise the disinterestedness of the Trustee by permitting him to retain his own law firm as counsel:

> 1. Where the estate's assets consist principally of causes of action and legal counsel would have to look to recovery for payment of fees;
>
> 2. Where there is relatively little legal work to perform and thus it does not merit the effort and expense of hiring an outside law firm;
>
> 3. Where a substantial legal action must be taken immediately, and the trustee cannot wait for completion of the appointment process for outside counsel;
>
> 4. Where the trustee can demonstrate that such appointment will result in a substantial reduction of costs to the estate.

Derr & Layden, *supra,* 13 Oct AM. BANKR. INST. J. 26; *Butler, supra,* 114 B.R. at 699, n. 1; *Showcase, supra*, 166 B.R. at 207; Phelan & Penn, *Bankruptcy Ethics, An Oxymoron*, 5 AM. BANKR. INST. L. REV. 1, 40-41 (Spring 1997); Kelbon, Herman & Bell, *Conflicts, the Appointment of "Professionals," and Fiduciary Duties of Major Parties in Chapter 11*, 8 BANKR. DEV. J. 349, 398-400 (1991)

Transparently, *none* of those examples provided by *Butler* and supported in the case law are even remotely applicable here; quite the contrary.

In this case, Trustee's counsel can readily anticipate earning a tremendous amount of fees. After all, counsel for the Debtor in Possession earned $4 million allowing the case to "languish in chapter 11"; Trustee's Reply, footnote 1, quoting the U.S. Trustee. The Trustee and the U.S. Trustee argue that the scrutiny that will be present in this case will prevent Trustee's counsel from overbilling. As the District Court pointed out in *Butler*, "Safeguards against excess fee billing are built into the bankruptcy code. Those safeguards are irrelevant in this instance, however, because the objective is to avoid the potential conflict problem, not to remedy the problem once it is encountered." *Butler, supra*, 114 B.R. at 699.

1    More than almost any other case, this case cries out for a *truly* disinterested Trustee, nowhere

2    more so than in the multi-million dollar selection of the Trustee's counsel. The Court should take to

3    heart that the Second Circuit's observation that "once the trustee's firm is hired by the estate, the

4    trustee's personal interests are implicated. At that point, the trustee's independence and disinterestedness

5    are compromised by a potential conflict of interest."

6

7    The Trustee's perception that the estate's administration will be smoother if he is permitted to

8    work with his law partners is a trifling concern to balance against permitting the Trustee, in a case with

9    this extraordinary past, to commence his administration with his independence and disinterestedness

10   compromised by this "potential conflict of interest."

11

12   B.    *Leave to Appeal Should Be Granted*

13

14   The Order that is the subject of this appeal was interlocutory. As such, leave to appeal must be

15   requested pursuant to Fed. R. Bankr. P. 8003. The standard for granting leave to appeal is well

16   established:

17
> Granting leave to appeal is left to the discretion of the Panel. 28 U.S.C. § 158(b); *In re*
18   *NSB Film Corp.,* 167 B.R. 176, 180 (9th Cir. BAP 1994). Neither 28 U.S.C. § 158(b), nor
     Rule 8003, provides any standards for us to apply in determining whether to grant leave
19   to appeal. The Panel, though, has previously stated that it looks to the standards set forth
     in 28 U.S.C. § 1292(b), which concerns the taking of interlocutory appeals from the
20   district court to the court of appeals. *In re Burke,* 95 B.R. 716, 717 (9th Cir. BAP 1989);
     *In re Price,* 79 B.R. 888, 889 (9th Cir. BAP 1987), *aff'd* 871 F.2d 97 (9th Cir.1989). We
21   consider then whether the order on appeal involves a controlling question of law as to
     which there is a substantial ground for difference of opinion and whether an immediate
22   appeal may materially advance the ultimate termination of the litigation. *Id.* We also ask
     whether denying leave will result in wasted litigation and expense.
23

24   *In re Roderick Timber Co.* 185 B.R. 601, 604 (BAP 9th Cir. 1995).

25

26   Here, the "controlling question of law" is whether a trustee may employ his own law firm as his

27   counsel in a large bankruptcy case, where there are no exigent circumstances requiring such retention.

28

---

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION FOR LEAVE TO APPEAL                                          10

1    Although the test is phrased in terms of whether "there is a substantial ground for difference of

2    opinion," in fact, that test is satisfied where, as here, there are no substantial grounds supporting the

3    lower court's decision.  See, *Roderick Timber Co., supra* (trustee must keep timesheets); *U.S. v. Air*

4    *Florida, Inc.* 48 B.R. 749, 751 (D.C.Fla.,1984) (bankruptcy court enjoined criminal prosecution); *First*

5    *Nat. Bank of Montevideo, Minn. v. Johnson* 19 B.R. 651, 653 (D.C.Minn., 1982) (bankruptcy court's

6    injunction exceeded its jurisdiction).  Here, research has uncovered *no case* in which a trustee has been

7    permitted to retain his own law firm as his counsel in a large case; rather, case law uniformly instructs

8    that he should not do so. See, *Knapp, supra, Palm Coast Matanza Shores, supra.*

9    Likewise, an immediate appeal may advance the termination of the litigation.  Directly

10   comparable is the case if *In re Duque,* 48 B.R. 965 (D.C.Fla.,1984).  There, the bankruptcy court

11   authorized the employment of criminal counsel to represent the Debtor in Possession, and certain

12   creditors appealed the employment order.  Granting leave to appeal, the District Court explained that:

13       resolving administrative matters with some finality, in the sound discretion of the district
14       court in its appellate capacity, can expedite ultimate disposition of the bankruptcy case
         and is consistent with the goal of speedy termination of such cases.

15                                    *       *       *

16
17       Additionally, this appeal is wholly dispositive of the validity of the Hogan employment
         and any resulting fee, and no purpose is served by delaying the appeal. Indeed, it would
18       be manifestly unfair to require Mr. Hogan to continue working with uncertainty as to his
         right to be paid.

19
20   21 B.R. at 968.  The same factors that led the District Court in *Duque* to address the appeal of the

21   employment order on the merits should lead this Court to address the instant appeal on its merits.  The

22   issue is important, and in a case such as this should not be left to fester.  The question of the appropriate

23   selection of counsel – of whether the Trustee should be required to remain disinterested – should be

24   addressed and resolved now.

25   ///

26
27   ///

28

1    IV.    CONCLUSION

2          The norm in this District has been to require Trustees to be truly disinterested, by barring them

3    from having financial interests in the professionals they employ.     The practice is salutary and

4    appropriate in general, but absolutely critical in a case such as this one, where the business interests of

5    the estates' professionals led to the crisis which required the appointment of a trustee "to restore creditor

6    confidence in the bankruptcy system."

7          The Court should grant leave to appeal, so that this critical issue can be considered and resolved

8    at the outset.

9
10                                        Respectfully submitted,
11
      DATED:  July 2, 2007              ST. JAMES LAW, P.C.
12
13
                                        By:  /s/  Michael St. James   .
14                                           Michael St. James
                                             Counsel for York Credit Opportunities Fund, L.P.
15

16

17

18

19

20

21

22

23

24

25

26

27

28