# Exhibit

# 5

FRIEDMAN DUMAS & SPRINGWATER LLP
CECILY A. DUMAS (S.B. NO. 111449)
150 Spear Street, Suite 1600
San Francisco, CA  94105
Telephone: (415) 834-3800
Fax: (415) 843-1044
cdumas@friedumspring.com

ALSTON & BIRD LLP
GRANT T. STEIN, ESQ.
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Fax: (404) 881-7777
grant.stein@alston.com
(*pro hac vice* pending)

*Proposed Attorneys for Dennis J. Connolly in His Capacity
as Chapter 11 Trustee for SONICblue Incorporated, et al.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 Cases |
| | ) |
| SONICBLUE INCORPORATED, a | ) Case Nos.: 03-51775 |
| Delaware corporation, DIAMOND | ) through 03-51778 |
| MULTIMEDIA SYSTEMS, INC., a | ) |
| Delaware corporation, REPLAYTV, | ) Jointly Administered |
| INC., a Delaware corporation, and | ) |
| SENSORY SCIENCE CORPORATION, | ) **APPLICATION FOR AN ORDER** |
| a Delaware corporation, | ) **PURSUANT TO SECTION 327(a)** |
| | ) **OF THE BANKRUPTCY CODE** |
| Debtors and Debtors-in-Possession. | ) **AUTHORIZING THE RETENTION** |
| | ) **OF ALSTON & BIRD LLP AS** |
| | ) **COUNSEL TO DENNIS J. CONNOLLY** |
| | ) **THE CHAPTER 11 TRUSTEE** |
| | ) |
| | ) Date: |
| | ) Time: |
| | ) Place:      280 South First Street |
| | )                San Jose, CA 95113 |
| | ) Judge:      Hon. Marilyn Morgan |

Application for an Order Pursuant to Section 327(a)
of the Bankruptcy Code Authorizing the Retention of
Alston & Bird LLP As Counsel to Dennis J. Connolly,
Chapter 11 Trustee (Case No. 03-51775)

I, Dennis J. Connolly, the duly appointed Chapter 11 Trustee (the "Trustee") in the above-captioned bankruptcy case for SONICblue Incorporated and its three operating subsidiaries, Diamond Multimedia Systems, Inc., ReplayTV, Inc. and Sensory Science Corporation (collectively, the "Debtors"), hereby apply (the "Application") to this Court for entry of an Order pursuant to 11 U.S.C. § 327(a) authorizing the retention and employment of Alston & Bird LLP ("A&B") as counsel to the Trustee in these cases.  In support of this Application, the Trustee represents as follows:

## BACKGROUND

1.     On March 21, 2003 (the "Petition Date"), the Debtors filed with this Court their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code").

2.     On April 17, 2007, this Court entered the Order Approving Appointment of Chapter 11 Trustee wherein the Court approved the appointment of the Trustee pursuant to Section 1104 of the Bankruptcy Code.

3.     This Court has jurisdiction over this case and this Application pursuant to 28 U.S.C. §§ 1334 and 157.  Pursuant to 28 U.S.C. § 157(b)(2)(A), this is a core matter. Venue of this case and of this Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought in this Application are Section 327(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

- 2 –

**RELIEF REQUESTED**

4.     In order to assist him in the administration of these cases, the Trustee seeks to employ the law firm of A&B, a firm at which the Trustee is a Partner, as his principal counsel pursuant to Section 327(a) of the Bankruptcy Code.  The Trustee respectfully represents that there is cause for him to retain A&B and that A&B's retention is in the best interests of these bankruptcy estates.

5.     This is a very complex case from the perspective of the issues that remain. Based on a review of the March 26, 2007 Order entered in these cases, those issues appear primarily to be to complete an investigation of the facts and issues surrounding the disqualification of counsel for the Debtors and debtors in possession, and to make decisions and take actions based on that investigation.  The Court's direction that the Trustee in this case be selected from a nationwide search to ensure that the Trustee be a "strong trustee with the appropriate qualifications and without connections to this case and this legal community" applies equally to the selection of counsel for the Trustee.  The Trustee understands that there are numerous issues relating to the relationship between the counsel for the Debtors (as its general corporate counsel for approximately 15 years before the filing of the bankruptcy) and the Debtors that must be explored and reviewed in the context of any analysis of the conduct of Debtors' counsel.

6.     The second area of primary focus in this case is the intertwined question of claims allowance, distributions to creditors, and plan confirmation.   Equally significant, if not as sensitive, legal issues will be presented by these questions and they also require counsel to work with the Trustee in making decisions and working between

- 3 –

Application for an Order Pursuant to Section 327(a)
of the Bankruptcy Code Authorizing the Retention of
Alston & Bird LLP As Counsel to Dennis J. Connolly,
Chapter 11 Trustee (Case No. 03-51775)

and among the parties to reach a consensual resolution, or to execute litigation.  Among other things, the Trustee understands that issues of subordination and the allowance of the Senior Note Holders' claims will be at issue in the cases.  This subordination impacts not only the apparent dispute relative to the Via claim and whether that claim is or would have been subject to the characterization as "Senior Indebtedness" under the Senior Note Indenture, but also the relationship to the Junior Note Indenture and the allocation of the value of the estate to various creditor constituencies.[1]

7.     A&B is a substantial law firm, with more than 750 attorneys – of whom approximately 450 are based in Atlanta.  Of these lawyers I have selected three in particular to lead the work to be performed in these cases based on their experience and judgment.  Those three lawyers are Neal Batson, Steve Collins, and Grant Stein.

8.     Mr. Batson is a senior bankruptcy lawyer and is Special Counsel to A&B who has been identified as an *Elder Statesman* by a leading reviewer of lawyers internationally.  Among other things Mr. Batson has served as the Examiner in both the Enron and Southmark bankruptcy cases.  It is anticipated that he will be involved in providing strategy recommendations and assisting in potential settlement negotiations of the complex and difficult issues in this case at such time as those may arise.

9.     Mr. Collins serves as the Ethics Partner at A&B.  He is also very familiar with the intricacies of Section 327 disinterestedness and generally with the related issues

---

[1]     Any defined terms used herein shall have the meaning ascribed to them in the Disclosure Statement Describing First Amended Liquidating Plan of Reorganization as of January 18, 2007 Proposed Jointly by Debtors and Creditors' Committee (Docket No. 2101) (the "Disclosure Statement").

- 4 –

Application for an Order Pursuant to Section 327(a)
of the Bankruptcy Code Authorizing the Retention of
Alston & Bird LLP As Counsel to Dennis J. Connolly,
Chapter 11 Trustee (Case No. 03-51775)

that arise in the area.  Mr. Collins served as one of the senior lawyers on the Enron engagement, and Mr. Collins is very familiar with the issue of disclosure under the Bankruptcy Code and Rules.  He also has pursued numerous investigations in various areas of the law for clients and it is anticipated that he will take the lead in dealing with the ethical issues in this case.

10.    Mr. Stein is the most recent former head of A&B's bankruptcy practice group and is very familiar with the complexities and practicalities of the legal issues that arise with claims resolution, distributions, plan confirmation and negotiations, and ethical issues faced by lawyers generally, and bankruptcy lawyers specifically including fee disgorgement questions.  He will be involved in all of these areas in this case.

11.    Because of the extreme importance of the issues in this case, the analysis needed, and their resolution, the ability I have to work with lawyers whom I have known for twenty years and in whose independent judgment and analytical ability I have full and complete confidence is essential to the expeditious and appropriate resolution of the very significant issues in this case.  It is respectfully submitted that in this unusual setting, alternative counsel would not be best suited to assist the Trustee in completing his job.

12.    A&B has agreed to serve as counsel to the Trustee and, subject to approval by the Bankruptcy Court, the Trustee has agreed to pay A&B its standard hourly rates, and other charges such as expense reimbursements, photocopy services and the like, as limited by and consistent with B.L.R. 9029-1, Guidelines 19-24, and 27-40, all being subject to approval by the Bankruptcy Court, on notice as provided in the Bankruptcy Code.  The principal attorneys and paralegals presently designated to represent the

- 5 –

Trustee in these cases and their standard hourly rates are set forth below:

| | |
|---|---|
| Neal Batson | $750 |
| Steven M. Collins | $660 |
| Grant T. Stein | $625 |
| Jennifer M. Meyerowitz | $430 |
| Sean Hyatt | $335 |
| Wendy R. Reiss | $320 |
| David Wender | $320 |
| Will Sugden | $320 |
| Tedra Ellison | $160 |

Other attorneys and paralegals may from time to time perform services for the Trustee in connection with the matters described herein. The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions, including increased experience of the professionals rendering services. The hourly rates for the other professionals not identified in this Application will be within the ranges of the rates noted above.

13. Further, the Trustee understands that it is A&B's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the clients' cases. The expenses charged to clients include, among other things, long distance telephone charges, telecopier charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, computerized research, and transcription costs, as well as allowable nonordinary overhead expenses. The Trustee understands that A&B will charge for these expenses in a manner and at rates consistent with charges made generally to A&B's other clients, as limited by and consistent with B.L.R. 9029-1, Guidelines 19-24, and 27-40. With respect to travel time for which an A&B attorney is not actually working on this file, A&B will not bill for such time in

- 6 –

Application for an Order Pursuant to Section 327(a)
of the Bankruptcy Code Authorizing the Retention of
Alston & Bird LLP As Counsel to Dennis J. Connolly,
Chapter 11 Trustee (Case No. 03-51775)

accordance with B.L.R. 9029-1, Guideline 17.

14.    The Trustee has been advised that each of the attorneys listed above that will appear before this Court are admitted to practice before the courts of the State of Georgia and the United States District Court for the Northern District of Georgia. Further, certain of these attorneys are admitted to practice before other courts as well, including the United States Court of Appeals for the Eleventh Circuit and the United States Supreme Court.   The attorneys have knowledge and experience of bankruptcy practice and are well qualified to represent the Trustee.

15.    In the performance of the Trustee's duties in these cases and any related proceedings in this Court and other courts, it will be necessary for various legal services to be rendered by A&B to the Trustee, among those services being:

(a)    assisting the Trustee in consultations, negotiations and all other dealings with creditors and other parties in interest concerning the administration of this case;

(b)    preparing pleadings, conducting investigations and making court appearances incidental to the administration of the Debtors' estates;

(c)    advising the Trustee of his rights, duties and obligations under the Bankruptcy Code, Bankruptcy Rules, Local Rules and Orders of this Court;

(d)    advising and assisting the Trustee with respect to litigation;

(e)    rendering other legal advice and performing all those legal services necessary and proper to the administration of the Debtors' estates during the pendency of these cases; and

- 7 –

Application for an Order Pursuant to Section 327(a)
of the Bankruptcy Code Authorizing the Retention of
Alston & Bird LLP As Counsel to Dennis J. Connolly,
Chapter 11 Trustee (Case No. 03-51775)

(f)    taking any and all necessary actions in the interest of the Trustee incident to the proper representation of the Debtors' bankruptcy estates in the administration of these cases.

16.    To the best of the Trustee's knowledge, understanding and belief, A&B does not hold any disqualifying interest to the Debtors, their directors, any significant creditors or any other significant parties in interest in matters upon which the law firm is to be engaged by the Trustee.  As set forth in the Declaration of Dennis J. Connolly in Support of Appointment of Dennis J. Connolly as Chapter 11 Trustee for the Bankruptcy Estate of SONICblue Incorporated, et al. filed on April 17, 2007 (the "Connolly Declaration"), the First Supplement to the Declaration filed contemporaneously with this Application, and in the Declaration of Grant T. Stein (the "Stein Declaration") attached hereto, the Trustee submits that A&B and certain of its partners, counsel and associates represent creditors or equity security holders of the Debtors in connection with matters unrelated to the matters on which the Trustee seeks to employ A&B.  The Trustee and A&B have examined A&B's books and records with respect to its connections to creditors and other parties in interest and is continuing to do so.

17.    A&B utilizes a number of procedures (the "Firm Procedures") to determine its relationships, if any, to parties that may have connections to a debtor.  A&B maintains records of all of its clients, the matters on which it represents its clients, and the other parties which have a substantial role in such matters.  In addition, A&B has inquired of its attorneys whether they have any independent (i.e., non-A&B) relationships with the Debtors, their directors, any of their significant creditors, and any other

- 8 –

significant parties in interest.  A&B has utilized the conflicts system and the Firm Procedures to determine any relationships with the referenced persons and entities.

18.    In implementing the Firm Procedures with respect to A&B's representation of the Trustee in these cases, A&B took the following actions to identify parties that may have connections to the Debtors and to identify A&B's relationships with such parties:

(a)    A&B compiled, from information provided by the United States Trustee and/or publicly available information, a list of interested parties and creditors (the "Interested Parties"), attached to the Connolly Declaration and the Stein Declaration as Schedule 1.  The Interested Parties include the Debtors and their non-debtor subsidiaries and affiliates, creditors and certain parties in interest, including professionals identified by the Office of the United States Trustee, creditors and parties in interest shown on Exhibit "C" to the First Amended Disclosure Statement filed by the Debtors and the Official Committee of Unsecured Creditors (the "Committee"), and other parties in interest identified in that certain Memorandum Opinion dated March 26, 2007.

(b)    A&B then caused the employees of A&B to compare each of the names on the Interested Parties list to the names in its master electronic database of current and former clients (the "Conflicts Database").  The Conflicts Database generally includes the name of each client of the firm, the name of each party who is or was known to be adverse to such client of the firm, the name of each party that has or had a substantial role with regard to the subject matter of A&B's

– 9 –

Application for an Order Pursuant to Section 327(a)
of the Bankruptcy Code Authorizing the Retention of
Alston & Bird LLP As Counsel to Dennis J. Connolly,
Chapter 11 Trustee (Case No. 03-51775)

retention, and the names of the A&B attorneys who are or were primarily responsible for matters for such clients. A&B also sent an email inquiry to A&B attorneys inquiring of any known connections between A&B and certain of the interested parties (including Debtor's primary bankruptcy counsel), the United States Trustee and attorneys with the Office of the United States Trustee in Region 17.

(c)    If an Interested Party produced a match with a known party in the Conflicts Database, A&B reviewed a report for that specific party to determine whether A&B: (i) had or have in the past or is currently representing the party and/or (ii) whether the matter is active or closed.

19.    Schedule 2 to the Connolly Declaration and attached Stein Declaration identifies those Interested Parties (or their affiliates) that A&B is representing. If attorneys at A&B are currently representing the Interested Party (or its affiliate), the A&B representation is identified on Schedule 2 as "Active."

20.    A&B has the following connections with matters wholly unrelated to the Debtors and these Chapter 11 cases:

(a)    A&B represents Matsushita Electric Industrial Co., Ltd. and Matsushita Electric Corporation of America in tax matters and certain intellectual property matters that are unrelated to the Debtors or their cases. While the Trustee understands that Matsushita Kotobuki Electronic Sales of America LLC and Matsushita Kotobuki Electronics Industries are creditors that presently sit on the Committee, A&B is informed that Matsushita Kotobuki Electric Sales and

- 10 –

Application for an Order Pursuant to Section 327(a)
of the Bankruptcy Code Authorizing the Retention of
Alston & Bird LLP As Counsel to Dennis J. Connolly,
Chapter 11 Trustee (Case No. 03-51775)

Matsushita Kotobuki Electronics Industries are subsidiaries of Matsushita Electric Industrial Co., Limited.  A&B is not aware of any challenge to the claims filed by the Matsushita entities.

(b)     A&B represents U.S. Bank, N.A. in financings unrelated to the Debtors or their cases.  The Trustee understands that U.S. Bank, N.A. is the successor indenture trustee for the Junior Notes (as defined in the Disclosure Statement). U.S. Bank's legal fees to A&B in 2006 and 2007 were less than $1/10^{th}$ of 1% of A&B's total collected legal fees for this period.  A&B has a written conflict waiver from U.S. Bank that enables it to be fully adverse to U.S. Bank.

(c)     Two partners of A&B's Washington, D.C. and New York offices are formerly partners with the predecessor firm to Debtors' counsel.  A&B has served as counsel to parties in litigation that may have interest coincident with parties represented by Pillsbury and A&B has been adverse to Pillsbury on other matters.   Since 1991, either Pillsbury or certain of its predecessor firms (including the Shaw Pittman firm) has referred 12 matters to A&B.  The fees for the matters aggregate approximately $580,000 over the past 16 years, which is less than 2/100 of 1% of the total revenues for A&B over the past 16 years.

(d)     A&B represents Houlihan, Lokey, Howard & Zukin ("HLHZ") in connection with certain fairness opinions and related issues in respect of transactions and matters wholly unrelated to the Debtors or their cases.  The Trustee understands that HLHZ is a financial advisor/investment banker to the Debtors although it appears that the engagement is largely at an end by virtue of

- 11 –

Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention of Alston & Bird LLP As Counsel to Dennis J. Connolly, Chapter 11 Trustee (Case No. 03-51775)

the fact that the transactions for which HLHZ had been engaged have now closed.

(e)    A&B represents the Coca-Cola Company on tax matters and property matters all in which are wholly unrelated to the Debtors or their cases.

(f)    A&B represents Wells Fargo, NA, and certain of its affiliates with respect to certain financial transactions (as an asset-based lender) in respect of transactions that are wholly unrelated to the Debtors or their cases.

(g)    A&B represents Intel Corporation on anti-trust and related matters all unrelated to the Debtors or their bankruptcy cases.

(h)    Jasper Cummings, Of Counsel to A&B, was retained by Hennigan Bennett & Dorman on behalf of its client, Beecher, Ltd., in the Azabu Buildings Company, Ltd. Chapter 11 bankruptcy case pending in the District of Hawaii, Bankruptcy Case No. 05-50011, dealing with the Honolulu Hyatt Hotel.  Mr. Cummings has prepared an expert report and is to be deposed and give trial testimony concerning a federal income tax issue under the Debtor's reorganization plan.  The issue on which he is a designated expert is whether the Internal Revenue Service will issue a ruling favorable to the Debtor's position.

21.    The Trustee does not believe that any of the above-referenced connections should be disqualifying and that the Trustee's retention and employment of A&B is in the best interest of the Debtors' estates and their creditors.

22.    The foregoing disclosures have been made based upon the review of the best information available at this time.  Accordingly, the Trustee understands that A&B

- 12 –

and certain of its partners, counsel and associates may have in the past represented, and may currently represent and in the future likely will represent creditors of the Debtors in connection with matters unrelated to the matters on which the Trustee seeks to employ A&B. To the extent that it is determined that any additional matters should be disclosed, A&B will supplement this Application.

23.     Based upon the Trustee's personal knowledge as well as the attached Stein Declaration, A&B is a "disinterested person" as that term is defined in Section 101(4) of the Bankruptcy Code, in that, to the best of the Trustee's knowledge, A&B, its partners, counsel, and associates:

a.     are not creditors, equity security holders, or insiders of the Debtors;

b.     are not and were not, within two years before the date of the filing of the petition, a director, officer or employee of the Debtors; and

c.     do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

24.     Neither the Trustee nor any member of A&B is related to the Bankruptcy Judge in these Bankruptcy Cases, the Honorable Marilyn Morgan.

25.     Neither the Trustee nor any member of A&B is related to the United States Trustee in the region in which these bankruptcy cases are pending. Other than as set forth above, neither the Trustee nor A&B has had any connection with the United

- 13 –

Application for an Order Pursuant to Section 327(a)
of the Bankruptcy Code Authorizing the Retention of
Alston & Bird LLP As Counsel to Dennis J. Connolly,
Chapter 11 Trustee (Case No. 03-51775)

States Trustee for Region 17, or with the attorneys of the United States Trustee's office.

26.    No previous application for the relief sought herein has been made to this or any other court.

27.    Notice of this Application has been given to (i) the United States Trustee for the Northern District of California, (ii) the Creditors' Committee, and (iii) the Official Service List in this case.  In light of the nature of the relief requested, the Trustee submits that no further notice need be given.

WHEREFORE, for the above-stated reasons, the Trustee respectfully requests that he be authorized to retain A&B and its partners and associates, assisted by its paralegals, as counsel to the Trustee in these Chapter 11 cases from the date of his appointment on April 17, 2007, and the Trustee respectfully requests that the Court grant such other and further relief as the Court deems just and proper.

This 2nd day of May 2007.

By:    /s/ Dennis J. Connolly
Dennis J. Connolly
Chapter 11 Trustee for the Debtors

- 14 –

Application for an Order Pursuant to Section 327(a)
of the Bankruptcy Code Authorizing the Retention of
Alston & Bird LLP As Counsel to Dennis J. Connolly,
Chapter 11 Trustee (Case No. 03-51775)

1  Grant T. Stein, Esq.
2  Ga. Bar No. 677835
   ALSTON & BIRD LLP
3  1201 West Peachtree Street
   Atlanta, GA 30309-3424
4  Telephone: (404) 881-7000
5  grant.stein@alston.com
   (*pro hac vice* application pending)
6
7  *Proposed Attorneys for Dennis J. Connolly in His Capacity*
   *as Chapter 11 Trustee for SONICblue Incorporated, et al.*
8
9              **UNITED STATES BANKRUPTCY COURT**
10            **NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN JOSE DIVISION**
11

| | | |
|---|---|---|
| 12 | In re: ) | Chapter 11 Cases |
| 13 | ) | |
| | SONICBLUE INCORPORATED, a ) | Case Nos.: 03-51775 |
| 14 | Delaware corporation, DIAMOND ) | through 03-51778 |
| | MULTIMEDIA SYSTEMS, INC., a ) | |
| 15 | Delaware corporation, REPLAYTV, ) | Jointly Administered |
| | INC., a Delaware corporation, and ) | |
| 16 | SENSORY SCIENCE CORPORATION, ) | **DECLARATION OF GRANT T. STEIN** |
| 17 | a Delaware corporation, ) | **IN SUPPORT OF APPLICATION** |
| | ) | **FOR EMPLOYMENT OF** |
| 18 | Debtors and Debtors-in-Possession. ) | **ALSTON & BIRD LLP AS** |
| 19 | ) | **COUNSEL TO DENNIS J.** |
| | ) | **CONNOLLY, THE** |
| 20 | ) | **CHAPTER 11 TRUSTEE** |
| 21 | ) | |
| | ) | Date: |
| 22 | ) | Time: |
| 23 | ) | Place:   280 South First Street |
| | ) |           San Jose, CA 95113 |
| 24 | _____ ) | Judge:   Hon. Marilyn Morgan |

25        Personally appeared before the undersigned officer, duly authorized to administer
26
   oaths in the State of Georgia, Grant T. Stein, who after being duly sworn, deposes and
27
   states as follows:
28

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

1.    I am a partner with the law firm of Alston & Bird LLP ("A&B") and in that capacity, I have either personal knowledge of, or I have reviewed appropriate portions of A&B's business records or have obtained information from other attorneys at A&B, with respect to the matters set out herein.  A&B maintains an office at 1201 West Peachtree Street, Atlanta, Georgia 30309-3424, and offices in Washington, D.C., Charlotte, North Carolina, Raleigh, North Carolina and New York, New York.  I have read the Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention of Alston & Bird LLP as Counsel to Dennis J. Connolly, the Chapter 11 Trustee (the "Application"), executed by Dennis J. Connolly, the duly appointed Chapter 11 Trustee (the "Trustee"), and submit this Declaration in support thereof.[2]

2.    To the best of my knowledge, understanding and belief, A&B does not hold any disqualifying interest to the Debtors, their directors, any significant creditors or any other significant parties in interest in matters upon which the law firm is to be engaged by the Trustee.  A&B and certain of its partners, counsel and associates represent creditors or equity security holders of the Debtors in connection with matters unrelated to the matters on which the Trustee seeks to employ A&B.  A&B has examined its books and records with respect to its connections to creditors and other parties in interest and is continuing to do so.

3.    A&B utilizes a number of procedures (the "Firm Procedures") to determine its relationships, if any, to parties that may have connections to a debtor.  A&B maintains records of all of its clients, the matters on which it represents its clients, and the other

---

[2]    Any capitalized terms not defined herein shall have the meaning attributed to them in the Application.

- 2 -

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

parties which have a substantial role in such matters.  In addition, A&B has inquired of its attorneys whether they have any independent (i.e., non-A&B) relationships with the Debtors, their directors, any of their significant creditors, and any other significant parties in interest.  A&B has utilized the conflicts system and the Firm Procedures to determine any relationships with the referenced persons and entities.

4.    In implementing the Firm Procedures in connection the representation of the Trustee in these cases, A&B took the following actions to identify parties that may have connections to the Debtors, and A&B's relationships with such parties:

(a)    A&B compiled, from information provided by the United States Trustee and/or publicly available information, a list of interested parties and creditors (the "Interested Parties"), attached hereto as Schedule 1.  The Interested Parties include the Debtors and their non-debtor subsidiaries and affiliates, creditors and certain parties in interest, including professionals identified by the Office of the United States Trustee, creditors and parties in interest shown on Exhibit "C" to the First Amended Disclosure Statement filed by the Debtors and the Official Committee of Unsecured Creditors (the "Committee"), and other parties in interest identified in that certain Memorandum Opinion dated March 26, 2007.

(b)    A&B then caused the employees of A&B to compare each of the names on the Interested Parties list to the names in its master electronic database of current and former clients (the "Conflicts Database").  The Conflicts

- 3 -

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

Database generally includes the name of each client of the firm, the name of each party who is or was known to be adverse to such client of the firm, the name of each party that has or had a substantial role with regard to the subject matter of A&B's retention, and the names of the A&B attorneys who are or were primarily responsible for matters for such clients. A&B also sent an email inquiry to A&B attorneys inquiring of any known connections between A&B and certain of the interested parties (including Debtor's primary bankruptcy counsel), the United States Trustee and attorneys with the Office of the United States Trustee in Region 17.

(c)  If an Interested Party produced a match with a known party in the Conflicts Database, A&B reviewed a report for that specific party to determine whether A&B: (i) had or have in the past or is currently representing the party and/or (ii) whether the matter is active or closed.

5.   Schedule 2 attached hereto identifies those Interested Parties (or their affiliates) that A&B is representing. If attorneys at A&B are currently representing the Interested Party (or its affiliate), the A&B representation is identified on Schedule 2 as "Active."

6.   A&B has the following connections with matters wholly unrelated to the Debtors and these Chapter 11 cases:

(a)  A&B represents Matsushita Electric Industrial Co., Ltd. and Matsushita Electric Corporation of America in tax matters and certain intellectual property matters that are unrelated to the Debtors or their cases. I

- 4 -

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

understand that Matsushita Kotobuki Electronic Sales of America LLC and Matsushita Kotobuki Electronics Industries are creditors that presently sit on the Committee, A&B is informed that Matsushita Kotobuki Electric Sales and Matsushita Kotobuki Electronics Industries are subsidiaries of Matsushita Electric Industrial Co., Limited.  A&B is not aware of any challenge to the claims filed by the Matsushita entities.

(b)      A&B represents U.S. Bank, N.A. in financings unrelated to the Debtors or their cases.  I understand that U.S. Bank, N.A. is the successor indenture trustee for the Junior Notes (as defined in the Disclosure Statement).  I also understand that A&B has a written conflict waiver from U.S. Bank, N.A. for this matter which is unrelated to any other work we do for U.S. Bank, N.A.  U.S. Bank's legal fees to A&B were less than $1/10^{th}$ of 1% of A&B's total collected legal fees for this period.  A&B has a written conflict waiver from U.S. Bank that enables it to be fully adverse to U.S. Bank.

(c)      Two partners of A&B's Washington, D.C. and New York offices are formerly partners with the predecessor firm to Debtors' counsel.  A&B has served as counsel to parties in litigation that may have interest coincident with parties represented by Pillsbury and A&B has been adverse to Pillsbury on other matters.  Since 1991, either Pillsbury or certain of its predecessor firms (including the Shaw Pittman firm) has referred 12 matters to A&B.  The fees for the matters aggregate approximately

- 5 -

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

$580,000 over the past 16 years, which is less than 2/100 of 1% of the total revenues for A&B over the past 16 years.

(d)    A&B represents Houlihan, Lokey, Howard & Zukin ("HLHZ") in connection with certain fairness opinions and related issues in respect of transactions and matters wholly unrelated to the Debtors or their cases. The Trustee understands that HLHZ is a financial advisor/investment banker to the Debtors although it appears that the engagement is largely at an end by virtue of the fact that the transactions for which HLHZ had been engaged have now closed.

(e)    A&B represents the Coca-Cola Company on tax matters and property matters all in which are wholly unrelated to the Debtors or their cases.

(f)    A&B represents Wells Fargo, NA, and certain of its affiliates with respect to certain financial transactions (as an asset-based lender) in respect of transactions that are wholly unrelated to the Debtors or their cases.

(g)    A&B represents Intel Corporation on anti-trust and related matters, all unrelated to the Debtors or their bankruptcy cases.[3]

(h)    Jasper Cummings, Of Counsel to A&B, was retained by Hennigan Bennett & Dorman on behalf of its client, Beecher, Ltd., in the Azabu Buildings Company, Ltd. Chapter 11 bankruptcy case pending in the District of Hawaii, Bankruptcy Case No. 05-50011, dealing with the Honolulu Hyatt

---

[3]    I understand that Intel Corporation is not a creditor of the Debtors. However, Intel Corporation is a party to certain protective orders filed in these bankruptcy cases. These protective orders may cover certain information that would be relevant to the Trustee's investigations.

- 6 -

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

Hotel.  Mr. Cummings has prepared an expert report and is to be deposed and give trial testimony concerning a federal income tax issue under the Debtor's reorganization plan.  The issue on which he is a designated expert is whether the Internal Revenue Service will issue a ruling favorable to the Debtor's position.

7.    I have the following additional connections in this case beyond those connections for A&B noted above.

 a.    I personally have worked on two cases with lawyers at Shaw, Pittman, Potts & Trowbridge, a predecessor to Pillsbury, Winthrop, Shaw, Pittman, former counsel to the debtor and debtor in possession in this case.  One case was in 1991 and dealt with an out of court restructuring and possible bankruptcy, and a second was in 1998 and dealt with a senior secured lender's position in a real estate bankruptcy case.  I also received a contact in March, 2007, from an attorney I worked with in 1998, concerning a potential new litigation matter.  Upon the selection of the Trustee, I determined that it would not be appropriate for me to become involved in that matter, and never became involved in it.

 b.    Michael H. Goldstein, a Shareholder of Stutman, Treister & Glatt, is a member of the Board of Directors of the Association of Insolvency and Restructuring Advisors (AIRA).  I am the President-Elect of that organization.

8.    A&B, its partners, attorneys, and counsel, may have appeared in the past

- 7 -

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

and may appear in the future in matters unrelated to this case, in which the Debtors, creditors and other parties in interest may be involved. In addition, A&B, its partners, attorneys, and counsel may have represented in the past and may represent in the future, creditors of the Debtors and parties in interest in matters unrelated to these Chapter 11 cases. In addition to the foregoing, some of A&B's approximately 750 attorneys may have had some personal or professional relationships with attorneys, accountants, employees, or officers of creditors of the Debtors. The undersigned does not have knowledge of any such relationship that is material nor does he know of any way in which all such relationships could be discovered. To the extent that it is determined that any additional matters should be disclosed, the undersigned will supplement this Declaration.

9.      I do not believe that A&B has or represents any adverse interest to the Debtors, their directors, any significant creditors or any other significant parties in that should disqualify it from serving as counsel to the Trustee in these cases. A&B is a "disinterested person" as that term is defined in Section 101(4) of the Bankruptcy Code, in that, to the best of my knowledge, A&B, its partners, counsel, and associates.

   (a)     are not creditors, equity security holders, or insiders of the Debtors;

   (b)     are not and were not, within two years before the date of the filing of the petition, a director, officer or employee of the Debtors; and

   (c)     do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by

- 8 -

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

10.    No agreement or understanding in any form or guise exists between A&B and any other person for a division of compensation for services rendered in or in connection with these cases, and no such division of compensation prohibited by Section 504 of the Bankruptcy Code will be made, except among members of A&B. A&B has not shared or agreed to share any compensation received in this case with any entity other than its partners, counsel and associates.

11.    I, and other attorneys of A&B, are members in good standing of the State Bar of Georgia as well as the State Bars of the various states where A&B attorneys practice. A&B has had substantial experience and practice before the United States Bankruptcy Courts. Further, I believe we are well qualified to represent the Trustee as its bankruptcy counsel and to advise the Trustee on corporate, bankruptcy, litigation, and other matters appropriate and incidental to this case, as may be required.

12.    A&B has agreed to undertake this representation at its standard hourly rates and other usual charges, which rates and other charges are subject to periodic adjustments to reflect economic and other conditions, all of which must be in accordance with B.L.R. 9029-1, Guidelines 19-24, and 27-40. Further, with respect to travel time for which an A&B attorney is not actually working on this file, A&B will not bill for such time in accordance with by and consistent with B.L.R. 9029-1, Guideline 17. Any request for payment of these charges will be subject to approval of the Court, on notice to the United States Trustee, creditors and parties in interest.

- 9 -

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

1

2      Dated: May 2, 2007                    /s/ Grant T. Stein

3                                            GRANT T. STEIN
                                             Georgia Bar No. 677835
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -

Declaration of Grant T. Stein In Support of Application for
Employment of Alston & Bird LLP As Counsel to
Dennis J. Connolly, Chapter 11 Trustee, Case No. 03-51775

**SCHEDULE 1**

3 DFX
ABT TV
Actebis Distribution
Adecco Employment Services, Inc.
Advance Service/Advance TV
Advanced Digital Solutions International, Inc.
Alpha Electronics
A-Max Technology Co. Ltd.
American Alliance Insurance Co.
American Arbitration Association, Inc.
American Express Travel Related Services
Amoisonic Electronics, Inc.
Andrew Wolfe
Apple Computer
APS, Inc.
Argo Partners
Audio Wizard
Avaya Finance, Inc.
Avaya fka Lucent Technologies
Avaya, Inc.
AVC Corp
Avia Technology
Avocon
Baltrans Logistics Inc.
Bankvest
Bari Abdul
BDI Leguna Distributors
Beautiful Enterprise Co. Ltd.
Bergerson Eliopoulos
Berkley Industries LLC
Bialson, Bergen & Schwab
Binar Graphics, Inc.
Bowne of Los Angeles
California Audio Labs, LLC
California Franchise Tax Board
CarrAmerica Realty, L.P.
Celestica
Central Transport International
Christie Parker & Hale

Lee and Li
Levene, Neale, Bender, Rankin & Brill
LG Electronics Inc.
Lite-On Technology Corporation
Manufacturers' Service Limited
Marcus Smith
Marger Johnson & McCollom
Maricopa County
Marsh USA, Inc.
Maxtor Corporation
McGrane, Greenfield
McNutt & Littneker
Metropolitan Graphics
Michelle Miller
Michigan Department of Treasury
Microniche Info Systems, Inc.
Micronics Computers, Inc.
Murray & Murray
Nasdaq
Nationwide Gourmets
Naumann Hobbs Material Handling
Neopost
Nike
Off Site Record Management
Office Depot
O'Melveny & Myers
Orchid (Europe) Limited
Orchid France S.A.R.L.
Orchid Technology
Orchid Technology Group
Orion Advanced Marketing
Pachulski, Stang, Ziehl, Younger & Jones
Palmetto Electronics
Pillsbury Winthrop Shaw Pittman LLP
Portside Growth & Opportunity Fund Ltd.
Posh Bagel
Preferred Packaging & Container
Print, Inc.
PSC
PTI Global

CIT Communications Finance Corp.
City of Santa Clara
City Video Electronics Repair
Continental Promotion Group
Continental Resources
Cornerstone Research
Corporate Transport. 'n Tours
Costello Communications
Dana Kane
Daniel Rhodes
Dash Electronics
David Gershon
DDB Worldwide
Decision One Corporation
Densitron Europe
Diamond Computer Systems Japan K.K.
Diamond Multimedia Services Co., Ltd.
Diamond Multimedia Systems Hong Kong, Ltd.
Diamond Multimedia Systems International, Inc.
Diamond Multimedia Systems, Inc.
Digital Commerce
DigitalCast, Inc.
Dolphin Capital
Donald V. Biase/Tops Appliance City
Drinker Biddle & Reath
DSI Technology Escrow Services
Eakins Open Systems
Ed Esber
Edward J. Brachocki
Elevator Service Company, Inc.
Empeg Limited
ENG Electronic Enterprise
Ernst & Young LLP
E-Services Private Sub LLC
ESL, Inc.
Familycare, Inc.
Federal Express
Fenwick & west
Fidelity Investments Institutional Operations
First Rocky Mountain Sales Inc.
Folger Levin
Frontpath, Inc.

Puglisi
QVC, Inc.
Recall Total Information MGM
Reigncom
Reliable Richard Service Co.
Rentokil Tropical Plant Service
Replay TV, Inc.
Retail Services
RioPort, Inc.
Riverside Claims, LLC
Riverside Contracting, LLC
Robert Lee
Roger Hackett
S3 – VIA, Inc.
S3 Asia Pacific Limited
S3 Europe Ltd.
S3 Graphics Co., Ltd.
S3 Graphics, Inc.
S3 International
S3 Japan, K.K.
S3 Singapore Pte, Ltd.
S3 Ventures, Ltd.
S3, Inc. Litigation Plaintiffs
Samsung Electronics America
Samsung Electronics Co., Ltd.
Sandisk Corporation
Schiff Hardin & Waite
Schraith, James T.
Scott Morris Enterprises
Sensory Science Corporation
Sharon Taylor
Shred-it
Smithfield Fiduciary LLC
Sodexho Marriott Services
Sonic Holdings LLC
Sonica3, Inc.
SONICblue GmbH
SONICblue Holding LLC
SONICblue Holdings (PTY), Ltd.
SONICblue Incorporated
SONICblue International Limited
SONICblue Singapore Pte Ltd.
Southeastern Sales
Southwest Incentives

Fuller, Glenn
GE Capital/General Electric Capital
Gleason Associates
Good Guys
Go-Video Productions, Inc.
Greenleaf Compaction
Grey Ventures, Inc.
GVC Corp.;
Hain Capital
HD Electronics
Hennigan, Bennett & Dorman
Hotjobs.com
Howard, Rice
HR Audio Video, Inc.
HSN dba Home Shopping Network
In-House Service Co.
Inserv Company
Integnology
Intel
Interface Analysis Associates
Intertan Technical Services
Ira Kaye dba Kaye & Associates
Island Data Corporation
James Williams
Jeffer, Mangels & Butler
Jeffrey Berg
John Kovacs
John Todd
Joseph Kincaid/Raymond Leasing
JP Digital Imaging Inc.
Kaiser Foundation Health Plan, Inc.
Kaiser Permanente
Kenneth Potashner
Kevin Bohren
Kenneth Potashner
Khahn Trading, Inc.
Kintetsu World Express
Korea Export Insurance Corporation
K. O. Electronics
Larry Kenswil
Larson Pallet Co.

SPEA Software AG
Splash Studios
Squire, Sanders & Demsey
Staples Credit Plan
State of Michigan/
State of Tennessee/
Stereo & Video Repair
Sterling Electronics
Stutman, Triester & Glatt
Supra Corporation
Synnex
Tai Tien Electronics
Target
Tech Data
Tech Search
Teletron Service
Televentions, L.L.C.
Tennessee Department of Revenue
Terese Farkas
Terry Holdt
Texas Comptroller of Public Accounts
The Coca-Cola Company
The Electronics Shop
The Interpublic Group of Companies, Inc.
TV Data Technologies
Tweeter Home Ent. Group
United Microelectronic Corporation
United Radio
Universal Electronics
Varta The Battery Experts
Verisign, Inc.
Via Technologies, Inc.
Visions Electronics
Walter Amaral
Warren Communications
Webside Story
Wells Fargo
Westronix
William Morris Agency, Inc.
Wist Office Products
Zodiac Trading

## SCHEDULE 2

Coca-Cola -- Corporate and tax matters unrelated to SONICblue

Houlihan, Lokey, Howard & Zukin -- Matters unrelated to SONICblue

Intel Corporation -- anti-trust and related matters unrelated to SONICblue

Matsushita Electric Industrial Co., Ltd and
  Matsushita Electric Corporation of America -- IP and tax work unrelated to SONICblue

QVC, Inc. -- Tax matters unrelated to SONICblue

U.S. Bank, N.A. -- Financing matters unrelated to SONICblue

Wells Fargo -- Finance and related matters unrelated to SONICblue

1  Grant T. Stein, Esq.
   Ga. Bar No. 677835
2  ALSTON & BIRD LLP
3  1201 West Peachtree Street
   Atlanta, GA 30309-3424
4  Telephone: (404) 881-7000
   grant.stein@alston.com
5  (*pro hac vice* application pending)
6
7  *Proposed Attorneys for Dennis J. Connolly in His Capacity*
   *as Chapter 11 Trustee for SONICblue Incorporated, et al.*
8
9  **UNITED STATES BANKRUPTCY COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**
10 **SAN JOSE DIVISION**
11 In re:                                    )   Chapter 11 Cases
                                             )
12 SONICBLUE INCORPORATED, a                 )   Case Nos.: 03-51775
   Delaware corporation, DIAMOND             )   through 03-51778
13 MULTIMEDIA SYSTEMS, INC., a               )
14 Delaware corporation, REPLAYTV,           )   Jointly Administered
   INC., a Delaware corporation, and         )
15 SENSORY SCIENCE CORPORATION,              )   **STATEMENT OF ATTORNEY**
   a Delaware corporation,                   )   **COMPENSATION PURSUANT**
16                                           )   **TO 11 U.S.C. § 329 AND**
17 Debtors and Debtors-in-Possession.        )   **BANKRUPTCY RULE 2016(b)**
                                             )
18                                           )
                                             )   Date:
19                                           )   Time:
                                             )   Place:    280 South First Street
20                                           )             San Jose, CA 95113
21                                           )   Judge:    Hon. Marilyn Morgan
                                             )
22 ─────────────────────────────────────────)
23        Pursuant to Section 329 of the United States Bankruptcy Code (the "Bankruptcy

24 Code") and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

25 Rules"), the undersigned, a partner of Alston & Bird LLP ("A&B"), proposed attorneys

26 for Dennis J. Connolly, the Chapter 11 Trustee (the "Trustee") in above-captioned

27

28 Chapter 11 bankruptcy cases of SONICblue Incorporated, Diamond Multimedia Systems,

Inc., ReplayTV, Inc., and Sensory Science Corporation (collectively, the "Debtors"), states that, to the best of his knowledge, information and belief:

1.      A&B is the proposed counsel for the Trustee in these cases.

2.      The compensation agreed to be paid by the Trustee to A&B is for legal services rendered or to be rendered in contemplation of and in connection with these cases.  The fees billed by A&B for services in the case will be at its standard hourly rates, and A&B will also charge for other expenses such as for computerized research, long distance charges, telecopier charges, photocopy services and the like, as limited by and consistent with B.L.R. 9029-1, Guidelines 19-24, and 27-40.  With respect to travel time for which an A&B attorney is not actually working on this file, A&B will not bill for such time in accordance with B.L.R. 9029-1, Guideline 17.

3.      The services rendered or to be rendered include the following:

a.      assisting the Trustee in consultations, negotiations and all other dealings with creditors and other parties in interest concerning the administration of this case;

b.      preparing pleadings, conducting investigations and making court appearances incidental to the administration of the Debtors' estates;

c.      advising the Trustee of his rights, duties and obligations under the Bankruptcy Code, Bankruptcy Rules, Local Rules and Orders of this Court;

d.      advising and assisting the Trustee with respect to litigation;

e.      rendering other legal advice and performing all those legal services

- 2 -

necessary and proper to the administration of the Debtors' estates during the pendency of these cases; and

f.      taking any and all necessary actions in the interest of the Trustee incident to the proper representation of the Debtors' bankruptcy estates in the administration of these cases.

g.      The services rendered or to be rendered include the following:

4.      A&B has received no money, no transfer or assignment of pledge of property that is in any way related to these cases.

5.      A&B has not shared or agreed to share with any other person, any compensation paid or to be paid except pursuant to the partnership agreement of A&B.

This 2nd day of May 2007.

ALSTON & BIRD LLP


/s/ Grant T. Stein
GRANT T. STEIN
Georgia Bar No. 677835
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000

- 3 -

# Exhibit

# 6

Entered on Docket
**May 04, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**The following constitutes
the order of the court. Signed May 04, 2007**

*Marilyn Morgan*
**Marilyn Morgan
U.S. Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>**SONICBLUE INCORPORATED, DIAMOND MULTIMEDIA SYSTEMS, INC., REPLAYTV, INC., and SENSORY SCIENCE CORPORATION,**<br><br>Debtors. | Cases No. 03-51775, 03-51776, 03-51777, and 03-51778-MM<br><br>Chapter 11 cases<br>Jointly administered<br><br><br>**MEMORANDUM DECISION AND ORDER ON MOTION OF SENIOR NOTEHOLDERS FOR CLARIFICATION, OR IN THE ALTERNATIVE, RECONSIDERATION** |

Let there be no doubt that the words and findings of my Memorandum Decision of March 26, 2007 were carefully selected to respond to the issues then before the court, which were whether to appoint a chapter 11 trustee pursuant to § 1104, whether to convert the case to chapter 7, and whether to disqualify counsel for the debtor. The findings made in support or denial of those motions must be understood in context. After considering the argument of counsel and the record before me, the motion for clarification, or in the alternative, reconsideration by Portside Growth & Opportunity Fund Ltd., Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd. (previously described as the "senior debtholders," "senior bondholders" or "senior noteholders," but hereinafter "senior noteholders") is denied as explained below.

1

**MEMO. DECISION AND ORDER ON MOTION FOR CLARIFICATION**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1.  **Noting a Distinction Between a Right to Payment and a Claim for Compensation, the Joint Venture Agreement Expressly Grants VIA a Claim for Compensation Upon Breach**.

Article 5.6(a) of the joint venture agreement expressly provides that both VIA and the joint venture are entitled to be compensated for damages resulting from loss of the Intel license. The preamble to Article 5.6(a) reads in pertinent part that: "If JV is Enjoined from Utilizing the Intel License . . . , then the following liquidated damages shall apply *to compensate JV and VIA for any and all losses they may suffer as a result thereof*. . . . (Emphasis added.) The senior noteholders conveniently omitted in their motion the phrase "to compensate JV and VIA for any and all losses they may suffer as a result thereof . . . ," replacing it with ellipses in a manner that is misleading to the reader.

Article 5.6(a) makes a distinction between the right to be compensated for losses suffered and the right to receive a distribution of damages for those losses. While it provides that damages are *payable* to the joint venture, it states unambiguously that VIA, as well as the joint venture, is entitled to compensation for losses resulting from an inability to use the Intel cross-license. As noted, the distinction is meaningful because the determination whether VIA is entitled to priority turns on whether it has a claim against SONICblue. More importantly, whether VIA has a claim may affect the amount of the distributions to the senior noteholders absent subordination by VIA.

The term "claim" is broadly defined in § 101(5), is not limited to rights to payment, but includes rights to an equitable remedy for breach of performance. In fact, VIA asserted a claim in this case. Modification of the decision at the senior noteholders' request for purposes of clarification on this point is unwarranted.

2.  **The Senior Noteholders Appear Not to Have Disclosed Significant Information to the Committee Notwithstanding its Unusually High Level of Involvement**.

The senior noteholders object to the characterization that they inserted themselves into the VIA litigation, that they had a hidden agenda, and that their counsel, Bruce Bennett, operated in the shadows. However, it was not apparent until SONICblue's litigation counsel, Albert J. Boro, Jr., filed his declaration on March 5, 2007 that the senior noteholders were involved at the highest levels of strategy development and settlement negotiations in the VIA litigation. Bennett was consulted with

MEMO.  DECISION AND ORDER ON MOTION FOR CLARIFICATION

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1  respect to proposed settlement terms even when committee counsel was not contacted. Yet, the senior

2  noteholders were not a party to the VIA adversary proceeding and did not file their own objections to

3  the claims of VIA and S3 Graphics. While standing to participate is not at issue, it is unusual for non-

4  parties to be involved to the degree that the senior noteholders were.

5      At the disclosure statement hearing held January 23, 2007, it became apparent that the senior

6  noteholders had not revealed to committee counsel, Ron Bender, that the VIA settlement contained a

7  waiver by VIA of senior indebtedness status or that the waiver would directly benefit the senior

8  noteholders, who were members of the committee. Based on the concerns of a taint raised by the claims

9  traders, I directed Bender to conduct an investigation of the settlement negotiations and how the waiver

10  provision was inserted into the VIA settlement. The following exchange highlights the problem:

11          The Court:      So you're saying that even at the time that the agreement was approved,
                             the Committee was not aware of this provision?
12
           Mr. Bender:     Not aware, not focused, or any of the like. Now I don't want to mislead
13                          the Court. It's my responsibility to read a document. The document does
                            say that Via agrees that its claim is not senior indebtedness, but I would
14                          have no reason to focus on it being an important point.

15  Bennett, as counsel for the senior noteholders, attended the January 23 hearing by telephone.

16  Thereafter, Bender filed a twenty-three page Preliminary Status Report on February 12, 2007 regarding

17  his investigation. From reviewing that report, it does not appear that Bennett ever volunteered relevant

18  information despite the ongoing investigation and Bender's active efforts to pursue answers. At a time

19  when Bender was seeking transparency and making inquiries of other parties as to their motivations,

20  Bennett and his clients did not come forward.

21      When further facts came to light on February 15, 2007 prompting the motions to appoint a

22  chapter 11 trustee, to convert the case, and to disqualify debtor's general bankruptcy counsel, I set these

23  motions for hearing on March 19, 2007. Bennett himself acknowledged on March 19 that the hearing

24  was the first time that he had personally addressed the court in this case. Even then, however, Bennett

25  did not reveal his role in securing the waiver provision that arguably benefitted his clients' interests at

26  the expense of the unsecured creditor class. More significantly, Bennett apparently never disclosed to

27  the committee or Bender the senior noteholders' potential conflict in connection with the subordination

28  provisions of the senior indenture, of which Bennett was acutely aware. That debtor's counsel may have

3

**MEMO. DECISION AND ORDER ON MOTION FOR CLARIFICATION**

been aware of the subordination provision in the senior indenture and the waiver of senior status in the VIA settlement is of no moment for purposes of this motion for clarification.  The appearance of concealment by the senior noteholders and Bennett was one of the grounds for the appointment of a trustee.  For the reasons stated, the motion for clarification or reconsideration on this point is also denied.

At the hearing on this motion, much emphasis was placed on who knew what when, posturing for the benefit of the trustee, and putting spin on a bad situation.  However, it is incumbent on all interested parties not to lose sight of the big issues necessary to move this case forward:  what to do about the fact that there was no meaningful disclosure of the effect of VIA's waiver of priority, and how to revise the disclosure statement and plan in order to provide a reasonably prompt distribution to creditors.  There will be time later to focus attention on the conduct of the attorneys and fiduciaries involved.

Good cause appearing, IT IS SO ORDERED.

**\* \* \* END OF ORDER \* \* \***

**MEMO.  DECISION AND ORDER ON MOTION FOR CLARIFICATION**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case No. 03-51775-MM

**SERVICE LIST**

CRAIG A BARBAROSH
PILLSBURY WINTHROP LLP
650 TOWN CENTER DRIVE 7TH FLOOR
COSTA MESA CA 92626-7122

BRUCE BENNETT
HENNIGAN BENNETT & DORMAN LLP
865 SOUTH FIGUEROA ST SUITE 2900
LOS ANGELES CA 90017

RON BENDER
LEVENE NEALE BENDER RANKIN &
BRILL LLP
1801 AVENUE OF THE STARS STE 1120
LOS ANGELES CA 90067

NANETTE DUMAS
OFFICE OF THE UNITED STATES
TRUSTEE
280 SOUTH FIRST ST SUITE 268
SAN JOSE CA 95113-0002

K JOHN SHAFFER
STUTMAN TRIESTER & GLATT PC
1901 AVENUE OF THE STARS 12TH FL
LOS ANGELES CA 90067

BERNARD BURK
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN
3 EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO CA 94111-4024

DENNIS J CONNOLLY
ALSTON& BIRD LLP
1201 WEST PEACHTREE STREET
ATLANTA GA 30309

GRANT STEIN
ALSTON& BIRD LLP
1201 WEST PEACHTREE STREET
ATLANTA GA 30309

CECILY A DUMAS
FRIEDMAN DUMAS & SPRINGWATER
LLP
150 SPEAR STREET SUITE 1600
SAN FRANCISCO CA 94105

MEMO.  DECISION AND ORDER ON MOTION FOR CLARIFICATION

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

# Exhibit

# 7

**May 09, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1 | Grant T. Stein, Esq.
2 | Ga. Bar No. 677835
  | ALSTON & BIRD LLP

**The following constitutes
the order of the court. Signed May 08, 2007**

3 | 1201 West Peachtree Street
4 | Atlanta, GA 30309-3424
  | Telephone: (404) 881-7000

**Marilyn Morgan
U.S. Bankruptcy Judge**

5 | grant.stein@alston.com
  | (*pro hac vice* application pending)

_____

6 |

7 | *Attorneys for Dennis J. Connolly in His Capacity
  | as Chapter 11 Trustee for SONICblue Incorporated, et al.*

8 |

9 | **UNITED STATES BANKRUPTCY COURT
   | NORTHERN DISTRICT OF CALIFORNIA
   | SAN JOSE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Cases |
| | |
| SONICBLUE INCORPORATED, a Delaware corporation, DIAMOND MULTIMEDIA SYSTEMS, INC., a Delaware corporation, REPLAYTV, INC., a Delaware corporation, and SENSORY SCIENCE CORPORATION, a Delaware corporation, | Case Nos.: 03-51775 through 03-51778 |
| | Jointly Administered |
| | **INTERIM ORDER AUTHORIZING THE RETENTION OF ALSTON & BIRD LLP AS COUNSEL TO DENNIS J. CONNOLLY, THE CHAPTER 11 TRUSTEE AND SETTING FINAL HEARING** |
| Debtors and Debtors-in-Possession. | |
| | Date:    June 14, 2007 |
| | Time:    1:30 p.m. |
| | Place:   280 South First Street |
| | San Jose, CA 95113 |
| | Judge:   Hon. Marilyn Morgan |

The Court has considered the application (the "Application") of Dennis J. Connolly, the Chapter 11 Trustee (the "Trustee") in the above-captioned Chapter 11 bankruptcy cases of SONICblue Incorporated, and its three operating subsidiaries,

Statement of Attorney Compensation Pursuant
to 11 U.S.C. § 329 and Bankruptcy Rule 2016(b)
Case No. 03-51775

{00289301.DOC v 2}

Diamond Multimedia Systems, Inc., ReplayTV, Inc., and Sensory Science Corporation (collectively, the "Debtors"), requesting the authority to employ Alston & Bird LLP ("A&B") to represent the Trustee in these cases filed pursuant to Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). This Court has jurisdiction over the Application and finds that notice of the Application is adequate, and that no further notice is necessary.

Upon review of the Application and the related submissions, the Court is satisfied on a preliminary basis that A&B does not hold any disqualifying interest to the Debtors, those who acted on behalf of the Debtors, any significant creditors or any other significant parties in interest in matters upon which the law firm is to be engaged by the Trustee. The Court is further satisfied that A&B is disinterested within the meaning of Section 101(14) of the Bankruptcy Code, and that the Trustee's employment of A&B as counsel is in the best interests of the Debtors' estates. Accordingly it is hereby:

ORDERED, that the Application is granted on an interim basis; and it is further

ORDERED, that the Trustee is authorized to retain A&B, its partners, associates and paralegals on an interim basis as of April 17, 2007, the date of the Trustee's appointment, as his attorneys in all matters relating to the performance of his duties as the Chapter 11 Trustee in these cases as set forth in the Application; and it is further

ORDERED, that A&B shall be compensated in accordance with the procedures set forth in 11 U.S.C. §§ 330 and 331 and applicable Bankruptcy Rules, and any other order of this Court; and it is further

{00289301.DOC v 2}- 2 -

1    ORDERED, that a final hearing on A&B's retention as counsel for the Trustee

2    shall be held on June 14, 2007, at 1:30 p.m.; and it is further

3    ORDERED, that objections, if any, to A&B's retention as counsel for the Trustee

4    shall be filed with the Clerk and served (i) on the Trustee, through A&B as his counsel, at

5    the following address: Grant Stein, Esq., Alston & Bird LLP, 1201 West Peachtree Street,

6    Atlanta, GA 30309; (ii) on the Creditors Committee through its counsel at the following

7    address: Ron Bender, Esq., Levene, Neale, Bender, Rankin & Brill LLP, 10250

8    Constellation Blvd., Suite 1700, Los Angeles, CA 90067; and (iii) on the United States

9    Trustee at the following address: Nanette Dumas, Esq., Office of the United States

10    Trustee, 280 South First Street, Suite 268, San Jose, CA 95113.  Filing and service of

11    objections shall be accomplished on or before May 31, 2007, and any such objection shall

12    be heard and considered at the hearing to be held on June 14, 2007; and it is further

13    ORDERED, that if no objection is filed to A&B's retention as counsel for the

14    Trustee, the Court may enter a Final Order approving same without any further notice or

15    hearing; and it is further

16    ORDERED, that within five (5) days, A&B is directed to serve a copy of the

17    Application, the Declaration and this Order on the Special Notice List; and it is further,

18    ORDERED, that A&B shall file a certificate of service with the Court evidencing

19    compliance with the notice provisions of this Order.

20
21
22
**\*\* END OF ORDER \*\***
23
24
25
26
27
28

Statement of Attorney Compensation Pursuant
to 11 U.S.C. § 329 and Bankruptcy Rule 2016(b)
Case No. 03-51775

1

<u>COURT SERVICE LIST</u>

2

3

Nanette Dumas
Office of the US Trustee
280 South First Street, Ste. 268
San Jose, CA 95113

4

5

6

Ron Bender, Esq.
Levene, Neale, Bender, Rankin & Brill LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

7

8

9

Cecily A. Dumas
Friedman Dumas & Springwater LLP
150 Spear Street, Suite 1600
San Francisco, CA 94105

10

11

Grant. T. Stein
Alston & Bird LLP
1201 West Peachtreet Street
Atlanta, GA 30309-3424

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit

# 8

1   FRIEDMAN DUMAS & SPRINGWATER LLP
    CECILY A. DUMAS (S.B. NO. 111449)
2   150 Spear Street, Suite 1600
    San Francisco, CA 94105
3   Telephone Number:  (415) 834-3800
    Facsimile Number:  (415) 834-1044
4
    ALSTON & BIRD LLP
5   GRANT T. STEIN
    1201 West Peachtree Street
6   Atlanta, GA 30309
    Telephone Number:  (404) 881-7000
7   Facsimile Number:  (404) 881-7777
    (*pro hac vice* application pending)
8
    *Attorneys for Dennis J. Connolly in His Capacity as*
9   *Chapter 11 Trustee for SONICblue Incorporated, et al.*

10

11                  UNITED STATES BANKRUPTCY COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14
    In re                              Case Nos. 03-51775 through 03-51778
15
    SONICBLUE INCORPORATED,            Chapter 11 Cases
16  a Delaware corporation, DIAMOND
    MULTIMEDIA SYSTEMS, INC.,          Jointly Administered
17  a Delaware corporation, REPLAYTV,
    INC., a Delaware corporation, and  NOTICE OF HEARING ON TRUSTEE'S
18  SENSORY SCIENCE CORPORATION,       EMPLOYMENT APPLICATIONS
    a Delaware corporation,
19                                     Date:      June 14, 2007
    Debtors.                           Time:      1:30 p.m.
20                                     Place:     280 South First Street
                                                  San Jose, CA 95113
21                                     Judge:     Hon. Marilyn Morgan

22  TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND ITS COUNSEL
23  OF RECORD, ALL PERSONS HAVING FILED AND SERVED REQUESTS FOR
    NOTICE IN THIS CHAPTER 11 CASE, AND OTHER INTERESTED PARTIES:
24
25          PLEASE TAKE NOTICE that on June 14, 2007 at 1:30 p.m., or as soon

26  thereafter as the matter may be heard, Dennis J. Connolly, the Chapter 11 Trustee (the

27  "Trustee") in the above-captioned Chapter 11 bankruptcy cases of SONICblue Incorporated,

28  and its three operating subsidiaries, Diamond Multimedia Systems, Inc., ReplayTV, Inc., and

NOTICE OF HEARING ON TRUSTEE'S EMPLOYMENT                    {00289832.DOC v 1}
APPLICATIONS

1  Sensory Science Corporation (collectively, the "Debtors"), will seek orders, pursuant to

2  section 327(a) of the Bankruptcy Code, authorizing the retention of Alston & Bird LLP

3  ("A&B") as counsel to the Trustee, and the retention of Friedman Dumas & Springwater LLP

4  ("FDS") as local counsel to the Trustee.

5       PLEASE TAKE FURTHER NOTICE THAT, pursuant to Bankruptcy Local

6  Rule 9014-1(c)(1) of the United States Bankruptcy Court for the Northern District of

7  California and the Interim Orders signed by the Court on May 8, 2007 authorizing the

8  retention of counsel and setting a final hearing, **any objection to the requested relief must**

9  **be filed and served no later than March 31, 2007** (i) on the Trustee, through A&B as his

10  counsel, at the following address: Grant Stein, Esq., Alston & Bird LLP, 1201 West Peachtree

11  Street, Atlanta, GA 30309; (ii) on the Trustee, through FDS as his counsel, at the following

12  address: Cecily A. Dumas, Esq., Friedman Dumas & Springwater LLP, 150 Spear Street,

13  Suite 1600, San Francisco, CA 94105; (iii) on the Creditors Committee through its counsel at

14  the following address: Ron Bender, Esq., Levene, Neale, Bender, Rankin & Brill LLP, 10250

15  Constellation Blvd., Suite 1700, Los Angeles, CA 90067; and (iv) on the United States

16  Trustee at the following address: Nanette Dumas, Esq., Office of the United States Trustee,

17  280 South First Street, Suite 268, San Jose, CA 95113.  Any objection must be accompanied

18  by any declarations or memorandum of law the party objecting wishes to present in support of

19  its position.  If no objection is filed, the Court may enter a Final Order granting the request

20  without any further notice or hearing.

21       The Trustee's application is based upon this notice, the A&B application, the

22  supporting declaration of Grant T. Stein, the A&B statement of attorney compensation, the

23  FDS application, the supporting declaration of Cecily A. Dumas, the FDS statement of

24  attorney compensation, and the Interim Orders signed by the Court on May 8, 2007.  Such

25  pleadings are being served, by regular mail, on the Official Committee of Unsecured

26  //

27  //

28  //

NOTICE OF HEARING ON TRUSTEE'S EMPLOYMENT    2    {00289832.DOC v 1}
APPLICATIONS

1   Creditors and its counsel of record, all persons having filed and served requests for notice in

2   this chapter 11 case, and other interested parties.

3   Dated: May 9, 2007                          FRIEDMAN DUMAS & SPRINGWATER LLP

4

5                                      By:   /s/ Cecily A. Dumas

6                                            Cecily A. Dumas

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF HEARING ON TRUSTEE'S EMPLOYMENT          3                          {00289832.DOC v 1}
APPLICATIONS

# Exhibit

# 9

1

1       UNITED STATES BANKRUPTCY COURT

2       NORTHERN DISTRICT OF CALIFORNIA

3           (SAN JOSE DIVISION)

4

5   In re:

6   SONIC BLUE, INC.,                Case No. 03-51775-MM
                                     Thru    03-51778-MM
7                                    (Jointly Administered)

8                                    Chapter 11

9                                    San Jose, California
                                     May 4, 2007
10                                   10:20 a.m.
            Debtor.
11  _____/

12

13              TRANSCRIPT OF PROCEEDINGS
        a) MOTION FOR CLARIFICATION, OR IN THE ALTERNATIVE,
14      FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION
        BY PORTSIDE GROWTH & OPPORTUNITY FUND, SMITHFIELD
15      FIDUCIARY, LLC, AND CITADEL EQUITY FUND, LTD.
        b) AMENDED OPPOSITION BY SONIC BLUE CLAIMS, LLC
16

17
            BEFORE THE HONORABLE MARILYN MORGAN
18          UNITED STATES BANKRUPTCY JUDGE

19
    APPEARANCES:
20

21  For the Creditors'      LEVENE, NEALE, BENDER, RANKIN
    Committee:              & BRILL, LLP
22                          BY: RON BENDER, ESQ.
                            10250 Constellation Boulevard.
23                          Suite 1700
                            Los Angeles, California 90067
24
                            (APPEARING TELEPHONICALLY)
25

```
 1   APPEARANCES (CONTINUED):

 2

 3
     For Pillsbury:              HOWARD, RICE, NEMEROVSKI, CANADY,
 4                               FALK & RABKIN, PC
                                 BY: BERNARD BURK, ESQ.
 5                               Three Embarcadero Center, 7th Floor
                                 San Francisco, California 94111
 6

 7
     Proposed Counsel            FRIEDMAN, DUMAS & SPRINGWATER, LLP
 8   for Trustee:                BY CECILY A. DUMAS, ESQ.
                                 150 Spear Street, Suite 1600
 9                               San Francisco, California 94105

10                                       -and-

11                               ALSTON & BIRD, LLP
                                 BY: GRANT T. STEIN, ESQ.
12                               One Atlantic Center
                                 1201 West Peachtree Street
13                               Atlanta, Georgia 30309

14

15
     For the U.S. Trustee:       OFFICE OF THE U.S. TRUSTEE
16                               BY: NANETTE DUMAS, ESQ.
                                 280 South First Street #268
17                               San Jose, California 95113

18

19   For SB Claims:              STUTMAN, TREISTER & GLATT
                                 BY: K. JOHN SHAFFER, ESQ.
20                               1901 Avenue of the Stars,
                                 12th Floor
21                               Los Angeles, California 90067

22
     For the senior             HENNIGAN, BENNETT & DORMAN
23   note holders:              BY: BRUCE BENNETT, ESQ.
                                865 South Figueroa Street,
24                              Suite 2900
                                Los Angeles, California 90017
25
```

3

1  APPEARANCES (CONTINUED):

2

3  Also Present:              DENNIS CONNOLLY, Trustee

4

5  Court Recorder:            LUPE BARRON
                              UNITED STATES BANKRUPTCY COURT
6                             280 South First Street
                              San Jose, California 95113
7

8

9  Transcription Service:     Jo McCall
                              Electronic Court
10                            Recording/Transcribing
                              2868 E. Clifton Court
11                            Gilbert, Arizona 85297
                              Telephone: (480) 361-3790
12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1                    P R O C E E D I N G S
 2   May 4, 2007                            10:20 a.m.
 3                          ---oOo—
 4           THE CLERK: Item 11, Sonic Blue, Incorporated.
 5           THE COURT: Nobody is eager to come forward to
 6   make appearances.
 7       (Laughter.)
 8           MR. BENNETT: Good morning, Your Honor, Bruce
 9   Bennett of Hennigan, Bennett & Dorman on behalf of the note
10   holders.
11           THE COURT: Good morning.
12           MR. BURK: Good morning, Your Honor, Bernard Burk
13   from Howard Rice for Pillsbury Winthrop.
14           THE COURT: Mr. Burk.
15           MS. CECILY DUMAS: Good morning, Your Honor,
16   Cecily Dumas, Friedman, Dumas & Springwater.  We're the
17   proposed local counsel for the Chapter 11 Trustee.
18           THE COURT: Good morning.
19           MS. CECILY DUMAS: Good morning.  Also here with
20   me -- and if it please the Court, I'd like to introduce Mr.
21   Grant Stein of the firm of Alston & Bird in Atlanta, the
22   trustee's proposed lead counsel.  We filed Mr. Stein's pro
23   hac application.  We have not yet received an order.
24           MR. STEIN: Good morning, Your Honor, Grant Stein,
25   associated in the case.
```

1          THE COURT: Okay.  Welcome to our court, Mr.

2    Stein.

3          MR. STEIN: Thank you, Your Honor.

4          MR. SHAFFER: Good morning, Your Honor, John

5    Shaffer of Stutman, Treister & Glatt for SB Claims.

6          THE COURT: Good morning.

7          MS. NANETTE DUMAS: Good morning, Your Honor,

8    Nanette Dumas for the U.S. Trustee.

9          MS. CECILY DUMAS: My apologies, also in the court

10   is Mr. Dennis Connolly, the Chapter 11 Trustee.

11         MR. CONNOLLY: Good morning, Your Honor.  It's

12   nice to be here.

13         THE COURT: Good morning, Mr. Connolly, and

14   welcome to our court to you.

15         MR. CONNOLLY: Thank you very much.  I appreciate

16   it.

17         THE COURT: We have a telephonic appearance I

18   understand.

19         MR. BENDER: Yes, Your Honor, good morning.  This

20   is Ron Bender, Levene, Neale, Bender, Rankin and Brill

21   appearing on behalf of the Creditors' Committee.

22         THE COURT: Okay.  Good morning, Mr. Bender.

23         Mr. Bennett, this is your motion.

24         MR. BENNETT: Yes, it is, Your Honor.

25         The matter has been fairly extensively briefed,

1  and so I will be -- I will probably be very brief in my

2  oral remarks.

3         First of all, I want to deal with the pleading

4  that was styled as the response to the reply, actually that

5  was filed by Pillsbury, which was of course filed out of

6  order and out of time.  But first, I think to help put

7  things in context, I've prepared a time line.  I'd like to

8  hand a couple of copies up to the Court and to counsel and

9  to the trustee and certainly to his counsel.

10         And, Your Honor, the reason I did this is

11  because, what I gather the principal purpose of the

12  response to the reply was, was to set forth a time line of

13  events based upon the record as it sits today.  Now in

14  context, we all know that this is kind of at the beginning

15  of the process rather than the end of the process, but if

16  people are going to talk about what the record is as of

17  today, they might as well get it right.  And what is shown

18  on the time line, in addition to excerpts from the Burrough

19  (Phonetic) declaration, which are accurately shown in the

20  right-hand column, is whether or not the particular event

21  managed to make it into SB Claims' time line.

22         And I only really want to make two comments on

23  this.  First of all, the very first box, August 11th, 2005,

24  the first box is of course where the Creditors Committee

25  tells everyone involved in these negotiations what their

1   requirements for a settlement are, and according to Mr.

2   Burrough's declaration, they were willing to live with any

3   settlement of the VS/S3G Claims of 25 million dollars or

4   less.

5            This happens at the beginning of the process, not

6   at the end of the process, and the essential allegation as

7   I understand it that made its way in some respects into

8   Your Honor's order on the trustee motion -- or opinion on

9   the trustee motion -- is that the note holders used their

10  position on the Committee to accomplish something.  That

11  allegation relates to events that occurred in September of

12  2005, and the allegation is that somehow the note holders

13  were controlling the Committee and making it do something

14  that the Committee didn't want to do.

15           But the fact is -- at least the record today,

16  which is the record we're of course dealing with, is that

17  the Committee had signed off on a settlement at vastly

18  different terms than were acceptable to the note holders,

19  and they had done it long before the period began when the

20  assertion is that the note holders, rather than speaking

21  for themselves, which they're of course always entitled to

22  do, that they were somehow using the Committee mechanism to

23  help themselves out.

24           The second is a bit more problematic, and I turn

25  Your Honor's attention to the second page and the second

1 | box after April and early May 2006, and you'll see the
2 | sentence that starts, "Our reason."  Are you with me, Your
3 | Honor?

4 |              THE COURT: Yes.

5 |              MR. BENNETT: Okay.  To fully understand this
6 | point, you actually have to have this response to the reply
7 | in front of you, and the response to the reply that I'm
8 | referring to would be on page 7.  I don't know if Your
9 | Honor has it with you.  I'll read it slowly so that you can
10 | follow this.   Here's exactly what the pleading filed by
11 | Mr. Shaffer says:

12 |              According to Mr. Burrough, (quote, open bracket,
13 | little o - closed bracket n-e.), "so one reason for doing
14 | so was that the parties had agreed that defendant's claim
15 | was not senior."

16 |              Your Honor, they've misquoted the declaration.
17 | Now ordinarily, one might think that the substitution of
18 | the word "one" for the word "our" was an innocent
19 | typographical error and we would leave it at that, but what
20 | Mr. Shaffer does with the misquote is quite remarkable.  It
21 | is the launching board for still another accusation.
22 | Here's the accusation.  It follows the sentence where the
23 | misquote is, open paren:

24 |              "(We are left to wonder what the, quote 'other
25 |              reasons', closed quote, for adding this language

1        were."

2   Well, there is no quote, "other reasons," closed quote,

3   anywhere in this Mr. Burrough's declaration, and there's no

4   suggestion that there were other reasons anywhere in that

5   declaration.  So we not only have a misquote at the front

6   end of this, we have an effort to launch still another

7   unfounded allegation based upon the misquote.

8           I'm not going to get into the rest of the merits

9   of the motion in detail, unless I have to on reply, because

10  I think we're dealing with a core issue here that's more

11  important than anything else.  And the core issue is where

12  we are today and where we're going in this case.  We filed

13  the motion mainly because we truly do not believe that the

14  Court intended to make findings on any of the points that

15  we point to in the motion or to otherwise preordain the

16  results of the investigation that the trustee hasn't even

17  started to perform yet.

18          If something doesn't change with the order,

19  what's going to happen is the trustee is going to start

20  this investigation with parties asserting that certain

21  issues have already been decided or that his investigation

22  has to be performed in such a way to reach particular

23  results.  And I don't think that's what this Court

24  intended.  What I think this Court intended, what I think

25  this process needs is a trustee's investigation that starts

1  absolutely on a clean slate.

2         If there's no difference among anyone in this

3  courtroom on this point, the motion should be granted.  And

4  we should be starting with an order and opinion appointing

5  a trustee that does not preordain any results, that is not

6  based upon perceptions of allegations as opposed to actual

7  facts.  If the parties disagree with that and believe that

8  the record already shows something, well then we ought to

9  have findings that actually comport with what the record

10 already shows.  And for reasons that I think we've pointed

11 out very clearly in our papers, right now the Court's

12 opinion is not consonant with what the record assembled

13 today actually shows.

14        I'm available to answer any questions you might

15 have.

16        THE COURT: I understand your views.  Is there

17 anyone else who wishes to be heard?

18        MR. SHAFFER: Your Honor, if I may be, just for a

19 moment.

20        Your Honor, Mr. Bennett is absolutely correct.  I

21 did misread that and misquote it, and I am tremendously

22 embarrassed by that.  That's inexcusable, and I apologize.

23 I apologize to Mr. Bennett.  I apologize to everyone.  I'm

24 very sorry.  As the Court knows, there's been an awful lot

25 of paper in this thing, and things have been moving very

1  fast, and this is one thing where my eyes may have deceived
2  my mind.

3          Nonetheless, Your Honor, and with that and --
4  that is embarrassing.  Your Honor, there are, however, some
5  essential issues that we do need to address here.  Your
6  Honor, there's been statements by both Pillsbury and by the
7  note holders that this Court essentially didn't find
8  anything.  This Court appointed a Chapter 11 trustee, which
9  is a rather unusual event, and the statute requires this
10 Court to make findings in support of what this Court did.
11 So to say that this Court didn't make any findings doesn't
12 make any sense at all.  Your Honor made plenty of findings.

13         How, without question, there are many, many, many
14 more issues that need to be explored in the case, and that
15 is why you've ordered the appointment of a trustee, and
16 that's why the U.S. Trustee's office appointed such a
17 competent trustee to do that.  But that doesn't mean that
18 the Court hasn't already made some findings.  This Court
19 disqualified the law firm and appointed a Chapter 11
20 trustee, and I think that if someone took this up on
21 appeal, the Appellate Court would be very surprised to find
22 out that Your Honor made no findings in doing that.

23         But, Your Honor, the essential element here and
24 what seems to be being missed even by the note holders'
25 time line, is what this Court found, which was that there

1  was an appearance that the note holders used their position

2  on the Committee to advance their own interests without

3  revealing their hidden agenda.  That is the part of the

4  sentences that the note holders would like to have removed,

5  and I would like to present to the Court, if I may, the

6  January 23rd, 2007 transcript, which is already in the

7  record.  And, Your Honor, since I don't have my own copy

8  with me, I'll have to do this with memory and hopefully

9  I'll do a little bit better than I did on this pleading.

10         Your Honor, I was very surprised and troubled as

11  I read the note holders' reply brief, particularly as I got

12  to the last page where it seemed it questioned the

13  declaration that Mr. Bender had filed with regard to what

14  the Committee knew about the subordination issue.  On the

15  last page of the note holders' reply, it says:

16         "The Bender declaration does not say that, quote,

17         'Committee counsel was not informed at the time

18         that the proposed settlement would have the

19         effect of releasing the bondholders from any

20         obligation they might have to Via on account of

21         the senior debt in this issue.' "

22         And it goes on to say after some citations:

23         "In fact Mr. Bender does not state that he was

24         unaware of the issue.  Rather, he carefully

25         states that, quote, 'it was only through an

13

1          objection to the disclosure statement,' closed

2          quote, that Levene Neale, quote, 'first learned

3          of any possible controversy.' "

4  "Any possible controversy" being highlighted here,

5  involving the senior indebtedness issue related to Via in

6  the senior note indenture.

7          Your Honor, in fact, at the January 23rd hearing,

8  which I missed because I had the pleasure of having surgery

9  that day on my ankle, you will recall, Your Honor, that

10 that is when this issue first came up before the Court

11 based on the pleadings of Riverside and Argyle (Phonetic).

12 And Your Honor will also remember that that hearing ended

13 with you authorizing Levene Neale to go forward with an

14 investigation in lieu of an examiner.

15          And you did that, Your Honor, based upon, I

16 believe -- but Your Honor will be the only one that can

17 tell us what you really intended and so I will obviously

18 defer to you -- but I believe you did that in part upon the

19 representations that were made to you by Mr. Bender, which

20 are entirely consistent, I may add, with Mr. Bender's

21 declaration.

22          On page 11 of the transcript in front of you, on

23 lines 4 and 5, Mr. Bender stated to the Court, again

24 consistent with his declaration, there was never any

25 discussion at any time about this idea of senior

1   indebtedness.  And you wanted to clarify that, I believe,
2   because that was an important point to you, so later on in
3   that same page, on line 19, the Court says:
4            "Basically you weren't aware of the issue."
5   And Mr. Bender said,
6            "Correct.  Correct."
7   And there was some more discussion.  I think on page 12,
8   you tried to ask the question again, but it's hard to tell
9   from the transcript, but on page 13 at line 4, you said:
10           "So, you're saying that even at the time that the
11           agreement was approved, the Committee was not
12           aware of this provision."
13  The Committee, not Mr. Bender, the Committee, and the
14  answer was by Mr. Bender:
15           "Not aware or focused or any of the like."
16  Again, consistent with Mr. Bender's declaration.
17           Later on in the hearing, Your Honor -- Mr.
18  Bennett appeared by phone, counsel for the note holders --
19  on page 31, line 9:
20           "First of all, Mr. Bender, so far as he has told
21           you the story told it to you exactly accurately,
22           as I understand it."
23  And I couldn't hear everything Your Honor said, and I don't
24  have a problem if people want to take discovery to verify
25  what was represented is in fact true, and then Mr. Bennett

1  did go on to add some other details but eventually ending

2  with the statement on page 34, line 4:

3              "But that is the whole story, and I think that's

4              rounding out the parts that Mr. Bender might not

5              have known, and we ought to have all the

6              disclosure in the world about this, but there's

7              just nothing here."

8  Your Honor, based upon that transcript, and look -- and the

9  trustee is going to investigate that, there will be

10  depositions; there will be final findings -- but based upon

11  that transcript, this Court could reasonably conclude at

12  least the appearance -- the appearance -- that the note

13  holders used their position on the Committee to forward

14  their hidden agenda.  We know based upon Mr. Burrough's

15  declaration that the note holders contacted Mr. Burrough

16  saying that no matter how that claim is allocated, it can't

17  be senior indebtedness under the indenture.  We won't

18  support it, and the note holders in their own reply brief

19  told us that they insisted that that be the case.

20              And indeed as you saw in my time line, after that

21  phone call, within a couple of days, some additional

22  language was added.  It didn't specifically say the senior

23  indebtedness issue, and we can -- the trustee I'm sure will

24  ask why it was vague, the addition, and yet it did seem to

25  cover the point.

1          But very quickly after that, Your Honor, the
2   Committee, of which the note holders controlled three of
3   the five active seats at the time, approved this deal.  And
4   the question, Your Honor, the question that the trustee
5   will have to investigate is, if in fact there was
6   disclosure to the rest of the Committee by the three note
7   holders who had asked for and got this additional privilege
8   in the agreement, was there disclosure to the rest of the
9   Committee when they voted on this or otherwise approved
10  this transaction?  Was there disclosure to Mr. Bender; was
11  there disclosure to the Committee members?

12         And Your Honor has not made a final finding on
13  that, and I'm not saying Your Honor has, and I don't think
14  Your Honor thinks Your Honor has either.  But what Your
15  Honor has said is there is the appearance that this might
16  have occurred.  And I believe that indeed there is the
17  appearance, Your Honor, and that the trustee will get to
18  the truth.

19         Thank you, Your Honor, that's all I have to add
20  unless there's anything else you need from me.

21         THE COURT: No, thank you, Mr. Shaffer.

22         Is there anyone else who wishes to be heard
23  before we hear again from Mr. Bennett?  Ms. Dumas?

24         MS. NANETTE DUMAS: Just very, very briefly, Your
25  Honor.  I concur that the Court did not make any

1   affirmative findings regarding this whole issue of whether

2   or not the senior note holders used their position to their

3   own advantage.  That remains to be seen, and I think just

4   the whole fact that we're having this hearing today shows

5   how badly a trustee was needed in this case, and I'm so

6   glad we've got one appointed, and it's going to move

7   forward.

8          But I did not understand the Court's opinion to

9   be making factual findings on that specific issue, so I

10  don't think that any clarification is needed, because I

11  think the Court said that the note holders may have used

12  their position, and the Court couched it all in

13  hypothetical language, yet at the same time, there's enough

14  in the record to show that that is one fair interpretation

15  of the facts that are known at this point.  However,

16  obviously further investigation is needed to get at the

17  truth.

18          Thank you, Your Honor.

19          THE COURT: Thank you, Ms. Dumas.

20          Mr. Burk, do you wish to be heard?

21          MR. BURK: Other than to observe, Your Honor, at

22  this point that everyone seems to be saying that they don't

23  understand the Court to have conclusively determined

24  factually any of the issues on which it raised concerns in

25  its opinion, so that we have a rare and beautiful moment of

1  harmony in this case, I have nothing to add.

2              MR. BENNETT: Your Honor --

3              THE COURT: I'm not sure that we are at harmony?

4         (Laughter.)

5              Thank you.    Mr. Bennett?

6              MR. BENNETT: Well, first of all, let's make sure

7  we're on the right place in the map.  I don't think the

8  note holders said in any of their papers, and I don't think

9  I said here today that there were no findings made.  If you

10 go back and remember where we were, we had motions filed by

11 the U.S. Trustee.  We also had a motion filed by SB Claims.

12 That one was denied.

13             The U.S. Trustee's motions were not grounded on

14 any of these things.  They weren't grounded on what the

15 investment agreement said; they weren't grounded on note

16 holder conduct; they were grounded on some fairly

17 straightforward technical arguments about disclosures to

18 this Court by lawyers before it.

19             So all of this stuff wasn't in the motions that

20 this Court actually heard and granted, and they are

21 extensions of the facts that the pleadings that this Court

22 considered and relied upon.

23             THE COURT: There's a great deal of posturing

24 going on.

25             MR. BENNETT: I suppose that's right, Your Honor,

1   and I frankly think we do need a posture-free zone, so

2   let's talk about some other things that were just said.

3   Everyone wants to focus on Mr. Bender, but Mr. Bender

4   wasn't there.  Mr. Burrough's declaration says that Ann

5   Wells and Ann Kerns (Phonetic) were on the phone calls

6   where this was discussed.  There are other lawyers noted in

7   our opposition from the Levene, Neale, Bender firm who were

8   there.  There's another one that we managed to leave out

9   that I stumbled on when I was preparing for argument,

10  Monica Kim (Phonetic) who filed pleadings relating to this

11  matter, and it turns out -- I think I'm correct -- in that

12  Ann Wells is no longer with the Levene, Neale, Bender firm.

13  I think Monica Kim still is.

14          So this idea that this somehow happened in

15  secret, and because Mr. Bender didn't know, nobody knew,

16  when their lawyers were at all the relevant meetings and

17  billing, as we've indicated in our papers, more than a

18  hundred thousand dollars, is a very slender reed to support

19  any finding at all about what Committee counsel knew.  I'm

20  sure we're going to find Ms. Wells; I'm sure we're going to

21  find Ms. Kim; I'm sure we're going to find that fee

22  application, and we're going to know what Committee counsel

23  knew.

24          It defies belief, frankly, that if SB Claims

25  figured all of this out, if O'Melveny & Myers figure it

1   out, if Pillsbury Madison -- I'm sorry, Pillsbury Winthrop
2   now -- figured it out, and my firm figured it out, I can't
3   imagine how it can be that the Levene Neale firm, with all
4   of the time and all of the energy spent in this case,
5   didn't figure everything out.  If that's what they say at
6   the end of this process, I suppose we'll have to figure out
7   what that means.  It doesn't mean the note holders did
8   anything wrong.

9       I am very happy that Mr. Shaffer has modified the
10  rhetoric, and now we're talking about an appearance as
11  opposed to the reality of any wrongful conduct.  Your Honor
12  will note that's a considerable change on their part, and
13  it is welcome.  He knows he can't sustain the former, and
14  he's struggling to still sustain something.

15      Your Honor shouldn't be swept up in this.  You've
16  appointed a very qualified trustee who's going to conduct
17  an investigation and look at everything.  He should not
18  have before him targets that he's supposed to hit.  He
19  should have a clean slate.

20      I think that's enough for now.  I think we do
21  need a clean slate, particularly on these points, which
22  were not raised by the U.S. Trustee in the motions that
23  were granted at all.

24      Thank you, Your Honor.

25      THE COURT:  Is there anyone else who wishes to be

1   heard?

2           You all will note that I am a fan of Abraham

3   Lincoln, and Abraham Lincoln always chose his words very

4   carefully.  I think particularly in this situation, it's

5   incumbent on me to choose my words very carefully.  For

6   that reason, I intend to issue a written ruling.

7           Thank you.

8           ALL COUNSEL: Thank you, Your Honor.

9       (Whereupon, the proceedings are concluded at 11:44

10  a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

1
2
3
4
5              CERTIFICATE OF TRANSCRIBER
6
7          I certify that the foregoing is a correct
8    transcript from the digital sound recording of the
9    proceedings in the above-entitled matter.
10
11   DATED: May 19, 2007
12
13                          By:___/s/ Jo McCall_____
14
15
16
17
18
19
20
21
22
23
24
25