1  FRIEDMAN DUMAS & SPRINGWATER LLP
   CECILY A. DUMAS (S.B. NO. 111449)
2  150 Spear Street, Suite 1600
   San Francisco, CA 94105
3  Telephone Number:  (415) 834-3800
   Facsimile Number:  (415) 834-1044
4
   ALSTON & BIRD LLP
5  GRANT T. STEIN
   1201 West Peachtree Street
6  Atlanta, GA 30309
   Telephone Number:  (404) 881-7000
7  Facsimile Number:  (404) 881-7777
   (admitted *pro hac vice*)
8
   *Attorneys for Dennis J. Connolly in His Capacity as*
9  *Chapter 11 Trustee for SONICblue Incorporated, et al*

10               UNITED STATES BANKRUPTCY COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                     SAN JOSE DIVISION

13

14  In re                           Case Nos. 03-51775 through 03-51778

15  SONICBLUE INCORPORATED, a        Chapter 11 Cases
    Delaware corporation, DIAMOND
16  MULTIMEDIA SYSTEMS, INC., a      Jointly Administered
    Delaware corporation, REPLAYTV,
17  INC., a Delaware corporation, and   **RESPONSE OF DENNIS J. CONNOLLY,**
    SENSORY SCIENCE CORPORATION,       **CHAPTER 11 TRUSTEE, IN**
18  a Delaware corporation,            **OPPOSITION TO MOTION OF YORK**
                                       **CREDIT OPPORTUNITIES FUND, L.P.**
19  Debtors.                          **FOR LEAVE TO APPEAL**

20                                    Judge: Hon. Marilyn Morgan

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ........................................................................... 1

II. FACTUAL BACKGROUND ........................................................................... 2

III. ARGUMENT ................................................................................................. 7

    A.     York Has Failed to Establish a Basis for Interlocutory Appeal ................................. 7

    B.   The Bankruptcy Court Did Not Abuse its Discretion in Approving Alston & Bird's Retention ........................................................................................................ 9

    C.     York's Assertion That the Chapter 11 Trustee Must Retain Counsel Other Than Alston & Bird to Remain Disinterested is Based on Incorrect and Invalid Interpretations of Cited Authority ................................................................................................. 10

IV. CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

Page

**Cases**

ACLU of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.,
  84 F.3d 1471 (3d Cir. 1996) ................................................................................. 10

Arizona v. ASH Grove Cement Co (In re Cement Antitrust Litig. (MDL No. 296)),
  673 F.2d 1020 (9th Cir. 1982) .............................................................................. 8

Belli v. Temkin (In re Belli),
  268 B.R. 851 (B.A.P. 9th Cir, 2001) ..................................................................... 8

Griffin v. Oceanic Contractors, Inc.,
  458 U.S. 564 (1982) .............................................................................................. 11

Ichinose v. Homer Nat'l Bank (In re Ichinose),
  946 F.2d 1169 (5th Cir. 1991) ............................................................................... 8

In re Butler Indus., Inc.,
  101 B.R. 194 (Bankr. C.D. Cal. 1989) ............................................................. 13, 14

In re Butler Indus., Inc.,
  114 B.R. 695 (C.D. Cal. 1990) .............................................................................. 11

In re Gem Tire & Service Co.,
  117 B.R. 874 (Bankr. S.D. Tex. 1990) ............................................................. 13, 14

In re Interamericas, Ltd.,
  321 B.R. 830 (Bankr. S.D. Tex. 2005) ................................................................... 14

In re Kurtzman, 220 B.R. 538 (S.D.N.Y. 1998) ..................................................... 1, 9

In re Marvel Entm't Group, Inc.,
  140 F.3d 463  (3d Cir. 1998) ........................................................................... 1, 9, 10

In re Michigan Interstate Railway Co.,
  32 B.R. 325 (Bankr. E.D. Mich. 1983) .................................................................. 14

In re Showcase Jewelry Design Ltd.,
  166 B.R. 205 (Bankr. E.D.N.Y. 1994) ................................................................... 12

Knapp v. Seligson (In re Ira Haupt & Co.),
  361 F.2d 164 (2d Cir. 1966) ............................................................................. 12, 13

Mission Indians v. Am. Mgmt. & Amusement, Inc.,
  824 F.2d 710 (9th Cir. 1987) ................................................................................ 10

Oliner v. Kontrabecki (In re Cent. European Indus. Dev. Co.),
  305 B.R. 510 (N.D. Cal. 2004) ........................................................................... 8, 9

Palmer v. Kennedy (In re Mandell),
  69 F.2d 830 (2d Cir. 1934) ................................................................................... 10

U.S. v. Ron Pair Enters., Inc.,
    489 U.S. 235 (1989) ......................................................................................................... 11

United States Trustee v. Bloom (In re Palm Coast, Matanza Shores Ltd. Partnership),
    101 F.3d 253 (2d Cir. 1996) ...................................................................................... 13, 15

**Statutes**

11 U.S.C. § 327(a) ............................................................................................................ 11
11 U.S.C. § 327(d) ....................................................................................................... passim
11 U.S.C. §§ 101 et seq. ..................................................................................................... 2
28 U.S.C. § 1292(b) ...................................................................................................... 1, 8
28 U.S.C. § 158 ................................................................................................................ 15
28 U.S.C. § 158(a) ............................................................................................................. 1
28 U.S.C. § 158(a)(3) ........................................................................................................ 7
28 U.S.C. § 158(b) ............................................................................................................ 8

**Rules**

Federal Rule of Bankruptcy Procedure 8003 ........................................................... 1, 7, 8, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Response of Chapter 11 Trustee in Opposition to
Motion of York Credit Opportunities Fund

Dennis J. Connolly, the Chapter 11 Trustee (the "Chapter 11 Trustee") in the above-captioned Chapter 11 bankruptcy cases for SONICblue Incorporated and its three operating subsidiaries, Diamond Multimedia Systems, Inc., ReplayTV, Inc. and Sensory Science Corporation (collectively, the "Debtors"), hereby submits this Response (the "Response") in Opposition to the Motion of York Credit Opportunities Fund, L.P. ("York") for Leave to Appeal under Federal Rule of Bankruptcy Procedure 8003 (the "Motion for Leave").

## I.

## PRELIMINARY STATEMENT

York's request for an interlocutory appeal of the Order authorizing the Chapter 11 Trustee's retention of his law firm, Alston & Bird LLP ("Alston & Bird") as his counsel, as expressly authorized by 11 U.S.C. § 327(d), is based on the contention that the Bankruptcy Court abused its discretion. Abuse of discretion is the standard of appellate review in this matter.  In re Marvel Entm't Group, Inc., 140 F.3d 463, 470-478 (3d Cir. 1998) (holding that the district court abused its discretion in denying the retention of the trustee's law firm to serve as counsel to the trustee); see also In re Kurtzman, 220 B.R. 538, 540 (S.D.N.Y. 1998). Despite York's contentions, the request for interlocutory review should be denied.

Reason 1:     York's appeal should be dismissed because it does not meet the standards for grant of an interlocutory appeal.  One of the standards under 28 U.S.C. § 1292(b) imported into 28 U.S.C. § 158(a) in assessing an interlocutory appeal is whether there is a *controlling issue of law as to which there is a substantial ground for a difference of opinion*.  See York's Memorandum at page 10.  The controlling law in this case is 11 U.S.C. § 327(d), which clearly authorizes the Bankruptcy Court's approval of the Chapter 11 Trustee's retention of his own law firm in this case.  Therefore, there is no substantial ground for a difference of opinion, and York's request for an interlocutory appeal should be denied.

Reason 2:     York's request for interlocutory review must also be denied because – contrary to York's position – it is patently clear from the record that the Bankruptcy Judge has taken affirmative measures to ensure that the Debtors' bankruptcy cases proceed in a

1   manner consistent with her reasons for appointing a Chapter 11 Trustee in the first instance.

2   York's suggestion that the Bankruptcy court abused its discretion cannot be more misguided.

3   York's first argument – that the Bankruptcy Court lacked the authority to approve the

4   Chapter 11 Trustee's request to retain his own firm – is misguided because York's assertion

5   (i) ignores the plain language of Section 327(d) of the Bankruptcy Code explicitly, which

6   provides that a trustee may act as attorney for the estate where it is the best interest of the

7   estate, and (ii) mischaracterizes the "relevant" authority by failing to note that the cases cited

8   recognize a trustee's ability to retain his own firm.  York's second argument contends that

9   material issues concerning the integrity of the bankruptcy process and the Bankruptcy Court,

10  which led the Bankruptcy Court to appoint the Chapter 11 Trustee and to disqualify the

11  Debtors' bankruptcy counsel, preclude the Bankruptcy Court from approving the retention of

12  Alston & Bird despite the explicit grant of authority under 11 U.S.C. § 327(d).   York's

13  second argument clearly fails for two basic reasons under the standards applicable to

14  discretionary interlocutory appeals.

15      There has been no abuse of discretion by the Bankruptcy Judge under 11 U.S.C.

16  § 327(d) and therefore York's Motion for Leave to Appeal an interlocutory order should be

17  denied.

## II.

## FACTUAL BACKGROUND

20      1.      On March 21, 2003 (the "Petition Date"), the Debtors filed their voluntary

21  petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101

22  et seq., as amended (the "Bankruptcy Code").

23      2.      On April 2, 2003, the Debtors sought the retention of Pillsbury Winthrop Shaw

24  Pittman LLP ("Pillsbury") to represent the Debtors.

25      3.      On April 11, 2003, the Bankruptcy Court approved Pillsbury's retention.

26      4.      On or about August 2006, counsel for certain senior bondholders informed

27  Pillsbury of the senior bondholders' belief that Pillsbury had a conflict of interest associated

28

with Pillsbury's continued representation of the Debtors and, in particular, Pillsbury's proposed objection to the senior bondholders' claim.

5.    On or about September 2006, Pillsbury transferred its file regarding the proposed objection to the senior noteholders' claim to Levene, Neale, Bender, Rankin & Brill ("LNBRB") on account of the assertion that Pillsbury was conflicted.

6.    On February 15, 2007, the United States Trustee (the "UST") filed a Motion for Appointment of a Chapter 11 Trustee or, in the alternative, an Examiner, and on February 27, 2007, an Amended Motion for Appointment of a Chapter 11 Trustee.  On February 20, 2007, the UST moved for the disqualification of Pillsbury contending that Pillsbury (i) knew or should have known that it suffered from an actual conflict of interest that disqualified Pillsbury from representing the Debtors and (ii) failed to file a supplemental disclosure statement noting its conflict of interest as required by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  On February 27, 2007, creditor SonicBlue Claims, LLC ("SB Claims") filed a motion to convert the cases to chapter 7, and filed an amended motion to convert on February 28, 2007.  Although the relief requested by the UST and SB Claims differed, both moving parties stressed common themes:  a lack of prior disclosures by professionals in the cases and the need for an investigation to be conducted by an outside party in order to restore creditor confidence and to protect the integrity of the bankruptcy process.[1]

7.    On March 19, 2007, the Bankruptcy Court held a hearing in respect of the U.S. Trustee's motion to disqualify Pillsbury.

8.    On March 26, 2007, the Court entered its Memorandum Decision and Order on Motion to Appoint a Chapter 11 Trustee, Motion to Convert Case, and Motion to

---

[1] The United States Trustee noted in her motion that "[u]nless administration of these cases and *the investigation of the prior administration of these cases is turned over to an independent fiduciary* who is empowered to act on his or her findings, parties in interest are likely to continue to harbor questions regarding whether these cases have been properly administered."  Amended Motion of United States Trustee for Appointment of Chapter 11 Trustee at 11:8-12 (emphasis added).  SB Claims voiced a similar concern:  "Immediate conversion is necessary to protect creditor's rights, *to investigate the failures of the four years that this case languished in chapter 11*, and to bring this case to a timely close."  SonicBlue Claims, LLC's Motion to Convert to Chapter 7 at 9:17-20 (emphasis added).

Disqualify Pillsbury Winthrop Shaw Pittman LLP and for Disgorgement of Attorneys' Fees (the "Memorandum Decision and Order"), in which the Court granted the motions to appoint a Chapter 11 trustee and to disqualify Pillsbury as Debtors' counsel, and denied the motion to convert the cases to chapter 7. In granting the motion to appoint a Chapter 11 trustee, the Court stressed the need for the U.S. Trustee to go beyond the local panel to locate a suitable trustee to meet the particular needs of the cases: "It is important to this court that the United States Trustee can tap into a large pool of possible trustees by conducting a nationwide search. In this way, the United States Trustee will have a far greater opportunity to locate a strong trustee with the *appropriate qualifications* and without connections to this case and this legal community." Memorandum Decision at 19:27-28 to 20:1-2 (emphasis added).

9.    On April 16, 2007, the U.S. Trustee, acting in accordance with the Court's direction, filed an Application for Order Approving the Appointment of Chapter 11 Trustee in which she disclosed that she had selected Mr. Connolly. On April 17, 2007, the Court approved the appointment of Mr. Connolly as Chapter 11 Trustee. On May 2, 2007, the Chapter 11 Trustee filed and served his (1) Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention of Alston & Bird as Counsel to Dennis J. Connolly, the Chapter 11 Trustee ("Alston & Bird Retention Application"), and (2) Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention of Friedman Dumas & Springwater LLP as Local Counsel to Dennis J. Connolly, the Chapter 11 Trustee ("FDS Retention Application"). On May 8, 2007 the Court entered its orders authorizing the retentions on an interim basis, setting June 14, 2007 as the date for the hearing on approval of a final order authorizing the retentions, and setting a deadline of May 31, 2007 for objections to the Chapter 11 Trustee's retention applications.

10.    In the Alston & Bird Retention Application, the Chapter 11 Trustee described the experience of Neal Batson, Steve Collins and Grant Stein which formed the basis for his conclusion that the interest of the estates would be best served by his engaging Alston & Bird to perform a full investigation of the adequacy of the disclosures and degree of

disinterestedness of prior professionals, and to deal with the other issues that would arise in this case. See Alston & Bird Retention Application ¶¶ 7-10.

11. On June 12, 2007, the Chapter 11 Trustee filed a Declaration. This Declaration (the "June 12, 2007 Connolly Declaration") provided in relevant part, as follows:

5. *To assist me in the performance of my duties as Trustee, I intend to retain A&B as my principal counsel. A&B is one of the nation's largest law firms, with more than 750 attorneys – of whom approximately 450 are based in Atlanta. A&B currently has nineteen (19) attorneys in its bankruptcy and financial restructuring group, having extensive experience handling all matters arising in large and complex representations, including Chapter 11 cases, and representing various parties, including debtors, examiners, trustees, creditors' committees, institutional lenders, other critical creditors and parties-in-interest, and potential acquirers of businesses and large assets. The A&B bankruptcy partners who will principally be involved with this matter are Neal Batson, Steve Collins and Grant Stein.*

6. *Based on my review of the Court's orders of March 26, 2007 and May 4, 2007 (the "Orders"), the issues in the cases include, but are not limited to, the following:*

   a. *a complete investigation of the facts and circumstances surrounding the disqualification of counsel for the Debtors and Debtors in Possession;*

   b. *a complete investigation of the facts and circumstances relating to the conduct of certain of the members of the Official Committee of Unsecured Creditors (the "Creditors' Committee") in respect of the bankruptcy cases and an investigation into the conduct of counsel for the Committee, as well as other parties in interest involved in the bankruptcy cases prior to the appointment of the Trustee;*

   c. *the initiation of appropriate action based on that investigation which may include, but not be limited to, objections to professional fee applications, affirmative relief, claim for subordination, or other activities; and*

   d. *the prosecution of a plan to enable a distribution of unsecured creditors pursuant to a bankruptcy plan, which such plan would address, among other things:*

      i. *the subordination issues as between the Senior Note Indenture and the Junior Note Indenture (as defined in the currently-filed Disclosure Statement);*

      ii. *the issues relating to subordination of claims under Section 510(c) of the Code;*

      iii. *issues relating to the so-called "original issue discount" in respect of the Senior Notes and the Junior Notes;*

      iv. *issues relating to the administration of the case including additional claims objections, tax and related matters, and other areas.*

7. *The Court's Order of March 26, 2007 makes it clear that the Court expected, and directed, a nationwide search for a Trustee that would be a "strong Trustee with the appropriate qualifications without connection to this case and this legal committee ...."*

8.    *Once appointed, I viewed the Court's mandate as equally applicable to the selection of counsel to the Trustee. I understand there are a number of issues relating to the relationship between counsel for the Debtors (as the general corporate counsel for approximately 15 years before the filing of the bankruptcy cases) and the debtors that must be explored and reviewed in the context of any analysis of the conduct of debtors' counsel. This would also hold true with respect to the conduct of the members of the Creditors' Committee as well as its counsel.*

9.    *In selecting counsel, I focused on the qualifications, experience, expertise and efficiencies in utilizing A&B as my counsel. As noted in the application, among those lawyers selected to represent me are Neal Batson, Steve Collins and Grant Stein. Mr. Batson is a senior bankruptcy lawyer and is special counsel to A&B and has been identified as an elder statesman by a leading reviewer of lawyers internationally. Without question, Mr. Batson is one of the premiere insolvency practitioners in the country today. He has been chair of the American College of Bankruptcy, chair of the Southeastern Bankruptcy Law Institute, on the Rules Committee as appointed by former Chief Justice Rehnquist, and has been involved significant cases in insolvency over the past 30 years. More importantly for this particular engagement, Mr. Batson was the examiner in two of the most significant examinations in the past 20 years (being Southmark and Enron). In the context of the Enron investigation, a significant amount of time and effort went into the analysis of the conduct of the lawyers for Enron. That Enron investigation led to a report on the conduct of certain lawyers for Enron. Mr. Collins was a significant actor in the Enron investigation (as was this Trustee). In addition, Mr. Collins is the "loss prevention and ethics partner" at A&B and has significant experience in the area of professional liability. Mr. Stein has significant experience in the chapter 11 practice and has dealt with Bankruptcy Rule 2014, Section 327 and professional issues many times as a practicing lawyer, both prosecuting objections and defending counsel, is a member of the American College of Bankruptcy and serves on its Board of Regents, is a director of the Association of Insolvency and Restructuring Advisors (and President-Elect of that organization), and is a director of the Southeastern Bankruptcy Law Institute. All of these lawyers bring to the table significant expertise and judgment.*

10.   *Although there are a number of lawyers throughout the country who have been involved in significant investigations and examinations, I do not believe that those lawyers have been involved in quite the same qualitative analysis of the conduct of attorneys as that in the Enron investigation.*

11.   *In considering the issue of selection of counsel, the benefit to the bankruptcy estates and the administration of these cases through the retention of A&B was manifest and compelling in my view. For the reasons noted above, few, if any, lawyers in the country have had the experience and have the expertise in the area of investigations and, in particular, attorney conduct in respect of insolvency matters as the lawyers at A&B who are now involved in these matters. Second, the level of efficiencies that could be achieved through the retention of A&B is also significant. As a matter of logistics, the retention of A&B certainly reduces the time needed to educate another firm as to the approach to the litigation investigation, as to the way in which the cases are to be handled and, simply put, the way in which the Trustee would propose to proceed. Thus from an efficiency standpoint the retention of A&B presents a significant advantage.*

12.   *Apart from the efficiency aspect, in considering "national law firms" in this regard, my judgment was that the rates for the A&B lawyers are competitive, if not significantly so, to any lawyers based in New York, Washington, D.C.,*

*Chicago, Dallas or Houston. As noted below, although solicited by California firms, I did not consider the retention of counsel in California (for the obvious reasons stated in the Court's Order of March 26, 2007), nor did I consider counsel on the West Coast generally as that may have created an entirely different set of issues with connections with counsel for the various parties as well as the parties themselves. Thus, A&B presented significant competitive advantage in the areas of expertise, experience and efficiency and the rate structure was more than competitive with other national law firms based in other major cities throughout the country. For those reasons, I propose to retain A&B as my primary counsel.*

13.   On June 14, 2007, after York objected to the retention of Alston & Bird, the Bankruptcy Court held a specially set hearing to accommodate the schedule of York's counsel. At that hearing the Bankruptcy Court considered York's objection to Alston & Bird Retention Application. A true and correct copy of the Transcript of the June 14, 2007 hearing held at 10:30 a.m. is attached as Exhibit "A" hereto. During this hearing the Bankruptcy Court heard argument and considered the evidentiary record made in accordance with B.L.R. 9013-1(d) with respect to whether the Chapter 11 Trustee demonstrated cause justifying his retention of Alston & Bird. After hearing oral argument from the Chapter 11 Trustee, the U.S. Trustee, and other parties in interest present that desired to be heard, the Court ruled and approved the retention of Alston & Bird as counsel for the Chapter 11 Trustee. See June 14, 2006 Transcript 21: 7-9, 21-22 ("It's clear from the record that Alston & Bird is qualified. And it's certainly clear from the record that this is an extraordinary case that does require maybe some special handling. . . .   So with respect to those two issues, I am going to overrule the objection.").

14.   On June 22, 2007, the Bankruptcy Court entered its Order Authorizing the retention of Alston & Bird as Counsel and FDS as Local Counsel to the Chapter 11 Trustee (the "Retention Order").

### III.

### ARGUMENT

**A.     York Has Failed to Establish a Basis for Interlocutory Appeal**

15.   Under Bankruptcy Rule 8003, the motion for leave to proceed on an interlocutory appeal under Section 158(a)(3) must:

. . . . contain: (1) a statement of the facts necessary to an understanding of the questions to be presented by the appeal; (2) a statement of those questions and of the

1

relief sought; (3) a statement of the reasons why an appeal should be granted; and (4) a copy of the judgment, order, or decree complained of and of any opinion or memorandum relating thereto.

2

3      16.    Case law under 28 U.S.C. § 158(b) or Bankruptcy Rule 8003 indicates that

4   28 U.S.C. § 1292(b) is helpful to determine whether to grant discretionary interlocutory

5   review of a decision of a Bankruptcy Court.  Ichinose v. Homer Nat'l Bank (In re Ichinose),

6   946 F.2d 1169, 1176-77 (5th Cir. 1991); Oliner v. Kontrabecki (In re Cent. European Indus.

7   Dev. Co.), 305 B.R. 510, 528 (N.D. Cal. 2004).

8      17.    Under Section 1292(b), "[t]he appropriate test is whether the 'appeal presents

9   a meritorious issue on a controlling question of law as to which there is substantial ground

10   for difference of opinion and an immediate appeal would materially advance the ultimate

11   termination of the litigation.  Id. (quoting Belli v. Temkin (In re Belli), 268 B.R. 851, 858

12   (B.A.P. 9th Cir. 2001)); see also Arizona v. ASH Grove Cement Co (In re Cement Antitrust

13   Litig. (MDL No. 296)), 673 F.2d 1020, 1026 (9th Cir. 1982).  If, however, the controlling

14   question of law is a mixed question of law and fact, interlocutory review is not appropriate."

15   Oliner, 305 B.R. at 529 ("Because the alleged 'controlling questions of law' raised by

16   Kontrabecki are inextricably intertwined with the bankruptcy court's factual findings, an

17   interlocutory appeal is not appropriate.").

18      18.    On page 10 of the York Memorandum, York contends that "the 'controlling

19   question of law' is whether a trustee may employ his own law firm as his counsel in a large

20   bankruptcy case, where there are no exigent circumstances requiring such retention."  York

21   Memorandum 10:26-27.  Though denominated by York as a "question of law," York's

22   proffered "question" is not truly a question of law, but is instead a mixed question of law and

23   fact.  Though York glosses over it by never once citing to Section 327(d) of the Bankruptcy

24   Code, the statute is clear and controlling law as to which there can be no dispute establishes

25   that a court may authorize a trustee to act as an attorney if such authorization is in the best

26   interest of the estate.  Section 327(d) provides as follows:

27
            The court may authorize the trustee to act as attorney or accountant for
            the estate if such authorization is in the best interest of the estate.

28

11 U.S.C. § 327(d).

19.    York has attempted to modify the plain statutory language and limit the Bankruptcy Court's express authority and the scope of Section 327(d) to small and/or extreme cases.  The cases cited by York do not impose York's bright-line rule.  Instead, as demonstrated below, the cases cited by York specifically recognize that whether a trustee may retain his own firm is a factual inquiry that requires the trustee to establish that such retention is in the best interest of the bankruptcy estate.

20.    The Chapter 11 Trustee's June 12, 2007 Declaration specifically demonstrates why the retention of Alston & Bird is in the best interest of the Debtors' estate, and is supported the Bankruptcy Court's decision announced at the June 14, 2007 Hearing. Accordingly, the only "true" issue in York's request for interlocutory appeal is whether, under the particular facts of this case, the Bankruptcy Court abused its discretion in granting the Chapter 11 Trustee's request to retain Alston & Bird.  Because this alleged "question of law" is in reality a mixed question of law and fact, the request for interlocutory review should be denied.  Oliner, 305 B.R. at 529 ("Because the alleged 'controlling questions of law' raised by Kontrabecki are inextricably intertwined with the bankruptcy court's factual findings, an interlocutory appeal is not appropriate.").

**B.    The Bankruptcy Court Did Not Abuse its Discretion in Approving Alston & Bird's Retention**

21.    York's request for interlocutory review also should be denied because it has failed to demonstrate that the Bankruptcy Court's approval of Alston & Bird's retention was an abuse of its discretion.

22.    Orders relating to the retention of counsel are reviewed for an abuse of discretion.  Marvel, 140 F.3d at 470 (concluding that the district court abused its discretion in denying the retention of the trustee's law firm to serve as counsel to the trustee); Kurtzman, 220 B.R. at 540.  Under the abuse of discretion standard, "a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Barona Group

1    of the Capitan Grande Band of Mission Indians v. Am. Mgmt. & Amusement, Inc., 824 F.2d

2    710, 724 (9th Cir. 1987); see also, Marvel, 140 F.3d at 470 ("An abuse of discretion exists

3    where the [court's] decision rests upon a clearly erroneous finding of fact, an errant

4    conclusion of law, or an improper application of law to fact.") (quoting ACLU of New Jersey

5    v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1476 (3d Cir. 1996)).

6            23.     In its request for interlocutory review of Alston & Bird's retention, York

7    argues in a conclusory fashion – without citing any evidence in support of its conclusions –

8    that the Bankruptcy Court improperly approved the Chapter 11 Trustee's decision to the

9    employ the firm in which he is a partner.  York contends that (i) there is no decisional

10   authority that supports a trustee's decision to hire his own firm in a large case and (ii) that the

11   Bankruptcy Court cannot in good conscience approve Alston & Bird's retention in light of its

12   previous ruling concerning the appointment of a strong and independent trustee. However,

13   York's argument fails to recognize two critical points.  First, the Bankruptcy Court applied

14   the same legal standard that forms the basis for York's request for interlocutory appeal – i.e.,

15   that a trustee must demonstrate that its retention of his own firm is in the best interest of the

16   debtor's estate.   Second, the Bankruptcy Court specifically concluded, after (i) hearing

17   arguments made by the Chapter 11 Trustee, the U.S. Trustee, and York and (ii) reviewing the

18   uncontroverted and unchallenged evidence introduced by the Chapter 11 Trustee, that "only

19   in the rarest cases should the trustee be deprived of the privilege of selecting his own firm"

20   and "[i]t's clear from the record that Alston is Bird is qualified.  And it's certainly clear from

21   the record that this is an extraordinary case that does require some special handling."  See

22   June 14, 2006 Transcript 21: 2-3, 7-9, 21-22 (quoting Palmer v. Kennedy (In re Mandell),

23   69 F.2d 830, 831 (2d Cir. 1934)).  Because there has been no abuse of discretion by the

24   Bankruptcy Judge under 11 U.S.C. § 327(d), York's Motion for Leave to Appeal an

25   interlocutory order should be denied.

26          **C.     York's Assertion That the Chapter 11 Trustee Must Retain Counsel
                      Other Than Alston & Bird to Remain Disinterested is Based on Incorrect**

27          **and Invalid Interpretations of Cited Authority**

28

1    24.    Section 327(a) of the Bankruptcy Code allows a bankruptcy trustee, with the

2    Bankruptcy Court's approval, to employ attorneys and other professionals to represent him

3    and help him carry out his duties.  Under Section 327(d), the trustee himself may act as

4    attorney for the estate if the court finds it to be in the estate's best interest.  11 U.S.C.

5    § 327(d).  The same condition applies to a trustee's employment of his own law firm as

6    counsel.  In re Butler Indus., Inc., 114 B.R. 695, 698-99 (C.D. Cal. 1990).  A trustee wishing

7    to employ his own law firm should be able to show cause justifying such employment.  In

8    other words, "a trustee must show why representation by the trustee's law firm would be in

9    the best interest of the estate as opposed to representation by an independent law firm."  Id.

10    at 699.

11    25.    Despite recognizing, on page 1 of the Memorandum in Support of the Motion

12    for Leave (the "York Memorandum"), that a trustee's retention of his own firm is

13    permissible, York erroneously maintains that the Bankruptcy Court's approval of Alston &

14    Bird's retention was improper because "[n]o decisional law supports a Trustee hiring his own

15    counsel in a large case, where the principal function of the decision is to maximize fee

16    opportunities."

17    26.    Despite the absence of any evidence in support of its contention that the

18    Bankruptcy Court abused its discretion, York has merely recited its purported view of an

19    alleged "local custom" and supposedly relevant case law to limit the authority specifically

20    provided to the Bankruptcy Court under Section 327(d) of the Bankruptcy Code.  See U.S. v.

21    Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be

22    conclusive, except in the 'rare cases [in which] the literal application of a statute will produce

23    a result demonstrably at odds with the intentions of its drafters.'") (quoting Griffin v.

24    Oceanic Contractors, Inc., 458 U.S. 564 (1982)).    In particular, without citing any authority

25    that establishes that local practice or precedential authority inconsistent with Section 327(d)

26    of the Bankruptcy Code, York asserts, in pages six through ten of the York Memorandum,

27    that "[d]ecisional law recognizes that something of critical importance is imperiled when a

28    trustee hires his own law firm" and that, as a result, the Bankruptcy Court's retention of

1    Alston & Bird was improper.

2    27.    The Chapter 11 Trustee specifically addressed and distinguished each of the

3    cases cited by York at the June 14, 2007 hearing before the Bankruptcy Court.  Nevertheless,

4    York continues to use quoted language out of context and ignore the actual holdings of the

5    cases he cites such that the Trustee must again clarify York's "relevant" authority.

6    28.    For example, on page 7 of the York Memorandum, York maintains that In re

7    Showcase Jewelry Design Ltd., 166 B.R. 205, 206 (Bankr. E.D.N.Y. 1994),[2] supports its

8    conclusion that "[a]bsent special circumstances a trustee who is a partner of a law firm ought

9    not to seek to retain his law firm to represent him in the administration of the estate."

10   Although this quote is contained in Showcase Jewelry, the court did not address whether a

11   trustee who is a partner with a law firm may retain that firm as counsel to the trustee.  The

12   holding in Showcase Jewelry was that a trustee who was an associate in the firm that he was

13   attempting to retain would not be appropriate because of the master/servant relationship of a

14   Trustee to his counsel when compared to the servant/master relationship of an associate to

15   his firm.  Id. at 207.

16   29.    Showcase Jewelry is simply inapplicable.  Further, in this case, the Bankruptcy

17   Court's approval of Alston & Bird's retention was based on a specific finding of proper

18   cause because the Bankruptcy Court specifically concluded that such a showing had been

19   made.  See June 14, 2006 Transcript 21: 7-9, 21-22 ("It's clear from the record that Alston &

20   Bird is qualified.  And it's certainly clear from the record that this is an extraordinary case

21   that does require maybe some special handling. . . .   So with respect to those two issues, I

22   am going to overrule the objection.").

23   30.    Second, also on page 7 of the York Memorandum, York contends that the

24   Second Circuit's decision in Knapp v. Seligson (In re Ira Haupt & Co.), 361 F.2d 164, 168

25   (2d Cir. 1966), established that a trustee's retention of his own firm does not seem right.  The

26   Second Circuit in Seligson did not conclude that the trustee's retention of its own firm does

27
28   [2] While cited by York as an opinion issued by the District Court for the Eastern District of New
     York, the opinion was issued by the Bankruptcy Court for the Eastern District of New York.

1   not seem right.   In fact, despite York's assertion that there is no decisional authority

2   supporting a trustee's decision to retain his own firm in large cases, in this case the Second

3   Circuit specifically recognized that a large and complex case may, in and of itself, constitute

4   special circumstances that justify a trustee's retention of his own firm.  Id. at 168.  Further,

5   after the Second Circuit concluded that a court must look to all the special circumstances to

6   determine whether it is appropriate for a trustee to retain its own firm, the court affirmed the

7   trustee's retention of his own firm.  See id. at 169  Assuming *arguendo* that the Second

8   Circuit's standard applies to the Bankruptcy Court's review of the Alston & Bird Retention,

9   as noted above, the Bankruptcy Court specifically concluded that there existed special

10  circumstances that required special handling and that this justified the Chapter 11 Trustee's

11  retention of Alston & Bird.  See June 14, 2006 Transcript 21: 7-9.

12      31.     Third, on pages 7 and 8 of the York Memorandum, York mis-cites the

13  applicability and limited holding of United States Trustee v. Bloom (In re Palm Coast,

14  Matanza Shores Ltd. Partnership), 101 F.3d 253 (2d Cir. 1996).  While York notes in passing

15  that "[t]he Second Circuit acknowledged Section 327(d) as a statutory exception to this broad

16  rule[]" York fails to inform this Court that the Second Circuit specifically stated that "[i]n

17  certain situations, a bankruptcy trustee can hire his own law firm or accounting firm, but only

18  because those two occupations are specifically exempted by subsection 327(d) of the

19  Bankruptcy Code."  Palm Coast, 101 F.3d at 258.  As noted earlier, this clear law is why the

20  instant motion for interlocutory review should be denied.  Of course, in this case, the Chapter

21  11 Trustee specifically sought to retain Alston & Bird as attorneys – as authorized by Section

22  327(d) of the Bankruptcy Code.  Accordingly, York's reliance on Palm Coast is unavailing.

23      32.     Fourth, in In re Gem Tire & Service Co., 117 B.R. 874 (Bankr. S.D. Tex.

24  1990), the court's denial of the employment of the trustee's firm was without prejudice to a

25  further application with greater information on the justification for the proposed retention.

26  Id. at 880-81.

27

28

33.     Fifth, on page 8 of the York Memorandum, York relies on In re Butler Industries, Inc., 101 B.R. 194, 196 (Bankr. C.D. Cal. 1989) ("Butler I") and its quotation of In re Michigan Interstate Railway Co., 32 B.R. 325, 326 (Bankr. E.D. Mich. 1983) for the proposition that the "[t]he statutory exception provided by Section 327(d) 'must . . . be severely limited so as to prevent abuse and the appearance of impropriety.'" These cases are readily distinguishable.  In Michigan Interstate the court denied the retention of the trustee's law firm because neither the trustee nor his firm had any expertise in bankruptcy reorganizations, not because the trustee sought to retain his own firm.  In fact, to the contrary, the court specifically stated that "[t]o be sure, the [Bankruptcy] Code does authorize a trustee to be appointed as his own counsel under 11 U.S.C. § 327(d), if such appointment is in the best interest of the estate."  Id. at 326.  In Butler I, the court did not conclude that a trustee may never retain its own firm.  Instead, similar to the court's holding in Gem Tire, the trustee in Butler I simply failed to make a sufficient showing of cause to justify the appointment of his own law firm.  Butler I,  101 B.R. at 195 (concluding that "the trustee gave very little support in his application for the appointment of his own law firm, as opposed to the employment of unrelated counsel.").  Because the Chapter 11 Trustee submitted uncontroverted evidence in support of Alston & Bird's retention and the Bankruptcy specifically concluded that the Chapter 11 Trustee satisfied his evidentiary burden (concluding that this is an extraordinary case that does require maybe some special handling), these cases are wholly inapplicable.

34.     Finally, the case of In re Interamericas, Ltd., 321 B.R. 830, 834 (Bankr. S.D. Tex. 2005), also cited by York on Page 8 of its Memorandum, explicitly rejected an attempt to limit the scope of Section 327(d) of the Bankruptcy Code to small cases and noted that "[b]ecause such considerations are inconsistent with the plain language of § 327(d), this Court declines to impose such a limit."  Id.  Instead, the court – like the Bankruptcy Court in this case – considered and applied the statute according to its terms in deciding whether the Chapter 11 Trustee had demonstrated that the retention of the Chapter 11 Trustee's firm was in the best interest of the debtor's estate.

## IV.

## CONCLUSION

York, as the party requesting interlocutory review under Bankruptcy Rule 8003 and 28 U.S.C. § 158, bears the burden of establishing that its appeal presents a controlling question of law as to which there is substantial ground for difference of opinion. However, York has not – because it cannot – establish that the Bankruptcy Court applied a standard inconsistent with the plain language of Section 327(d) of the Bankruptcy Code or applicable authority.  York's reliance and mischaracterization of the Second Circuit's opinion in Palm Coast, 101 F.3d 253 is telling.  In Palm Coast, the Second Circuit specifically stated that a bankruptcy trustee can hire his own law firm because Section 327(d) of the Bankruptcy Code provides such an exception.  Moreover, York has not demonstrated that the Bankruptcy Court's approval of Alston & Bird's retention contravened the express language of Section 327(d) or that its approval was an abuse of discretion.  Accordingly, the Chapter 11 Trustee respectfully requests that for the foregoing reasons, York's request for interlocutory appeal be denied.

Dated: July 12, 2007                               FRIEDMAN DUMAS & SPRINGWATER LLP


                                       By:   /s/ Cecily A. Dumas
                                             Cecily A. Dumas

                                             -and-

                                             ALSTON & BIRD LLP
                                             Grant T. Stein (admitted *pro hac vice*)
                                             1201 West Peachtree Street
                                             Atlanta, GA 30309-3424
                                             (404) 881-7000