EDWINA E. DOWELL, #149059
Assistant U.S. Trustee
NANETTE DUMAS, #148261
SHANNON L. MOUNGER-LUM, #208071
Office of the United States Trustee
Department of Justice
280 S. First Street, Suite 268
San Jose, CA 95113-0002
Telephone:  (408) 535-5525
Fax:          (408) 535-5532

Attorneys for Sara L. Kistler
Acting United States Trustee for Region 17

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

In re:

SONICBLUE, INCORPORATED, a Delaware
Corporation, DIAMOND MULTIMEDIA
SYSTEMS, INC., a Delaware Corporation,
REPLAY TV, INC., a Delaware Corporation,
and SENSORY SCIENCE CORPORATION,
a Delaware Corporation,

                    Debtors.

Case No. 03-51775 MM

Chapter 11

[NO HEARING SET]

## OPPOSITION BY UNITED STATES TRUSTEE TO MOTION FOR LEAVE TO APPEAL

_____The United States Trustee hereby files this opposition to the Motion For Leave

To Appeal (the "Motion") filed by York Credit Opportunities Fund, L.P. ("York").  The

United States Trustee's Request For Judicial Notice ("UST RJN") is filed herewith.

### I.  INTRODUCTION

York asks this Court to grant it interlocutory appellate review of a bankruptcy

court order approving a chapter 11 trustee's employment of a law firm to assist the

trustee in managing the bankruptcy estate under the trustee's charge.  York must meet

three criteria to be eligible for such relief:  (i) it must be appealing a controlling question

of law; (ii) as to which there is substantial ground for difference of opinion; and (iii) it

Opposition By UST To
Motion For Leave To Appeal

1  must demonstrate that an immediate appeal from the order may materially advance the

2  ultimate termination of the litigation.[1]  Because York has failed to meet the requisite

3  threshold standard for leave to appeal, the Motion should be denied.

4  ## II.  FACTUAL BACKGROUND

5       These jointly administered chapter 11 cases were filed on March 21, 2003.  On

6  April 11, 2003, Pillsbury Winthrop Shaw Pittman LLP ("PW") was appointed as counsel

7  for the above-captioned debtors (collectively referred to herein as the "Debtor").

8       Within the first months of the filing of these cases, the Debtor liquidated most of

9  the tangible assets of the estates.  Shortly thereafter most of the Debtor's employees

10 were discharged and only two or three employees were left on the Debtor's payroll for

11 the duration of the bankruptcy proceedings.  For the next several years the Debtor

12 attempted to achieve a resolution of complex litigation with VIA Technologies, Inc.

13 ("VIA") and Intel Corporation ("Intel"), the outcome of which would be determinative of

14 the success or failure of the case in terms of a meaningful distribution to creditors.  A

15 settlement of the VIA/Intel litigation was reached in September 2006 and was approved

16 by the bankruptcy court on October 27, 2006.   In December 2006 the Debtor filed a

17 plan of reorganization, and the plan appeared to be on track for confirmation in early

18 2007.

19      In the meantime, however, unbeknownst to the bankruptcy court or the creditor

20 body as a whole, in August 2006 three creditors (hereinafter referred to as the "Senior

21 Noteholders") who are members of the Official Committee Of Creditors Holding

22 Unsecured Claims ("Committee") and who collectively hold $75 million in Senior Notes

23 pursuant to a 2002 indenture entered into with debtor SonicBlue, asserted to PW

24 through their separate counsel that PW had a conflict of interest in connection with

25 PW's proposed objection to the claim of the Senior Noteholders.  The basis of PW's

26 _____

27      [1]     In re Nicholes, 184 B.R. 82, 86 - 87 (9th Cir. B.A.P. 1995).

28 Opposition By UST To
   Motion For Leave To Appeal                    2

1   alleged conflict was an opinion letter issued by PW to the Senior Noteholders in April

2   2002.  Further, on September 5, 2006 counsel for the Senior Noteholders wrote a letter

3   to the managing partner of PW in which counsel demanded that PW indemnify the

4   Senior Noteholders based on the April 2002 opinion letter.  In the September 5, 2006

5   letter, counsel for the Senior Noteholders also threatened to sue PW for negligence and

6   negligent misrepresentation if PW failed to indemnify the Senior Noteholders.  Based

7   on these allegations by the Senior Noteholders of a conflict on the part of PW, in early

8   September 2006 PW contacted  Levene, Neale, Bender, Rankin & Brill, L.L.P

9   ("LNBRB"), counsel for the Committee, and transferred its files to LNBRB.  From that

10  point onward LNBRB took over the prosecution of the objection to the Senior

11  Noteholders' claim.

12         In that same time period the Debtor filed the settlement of the VIA/Intel litigation

13  under seal with the bankruptcy court.  The settlement document contained a provision

14  that appeared to be economically favorable to the Senior Noteholders to the detriment

15  of the bankruptcy estate.  That settlement provision was not disclosed to the bankruptcy

16  court, the United States Trustee, or the creditor body as a whole.

17         When these events were brought to light in late January 2007, the United States

18  Trustee filed motions to disqualify PW as Debtor's counsel and to appoint a chapter 11

19  trustee.[2]  The bankruptcy court granted both motions in a Memorandum Decision

20  issued on March 26, 2007.  See Request For Judicial Notice In Support Of Motion For

21  Leave To Appeal ("York RJN"), Exhibit 2.

22         On April 16, 2007 the United States Trustee filed a notice with the Court

23

24      [2]    The United States Trustee Program is a division of the United States Department of
        Justice.  The United States Trustee's mission is to promote integrity and efficiency in the
25      nation's bankruptcy system by enforcing bankruptcy laws.  The role of the United States
        Trustee in bankruptcy cases is set forth in 28 U.S.C. Section 586.  Pursuant to 11 U.S.C.
26      Section 307, the United States Trustee has standing to appear and be heard on any issue
        in any bankruptcy case or proceeding.  See In re Donovan Corp., 215 F. 3d 929-930 (9th
27      Cir. 2000).

28  Opposition By UST To
    Motion For Leave To Appeal              3

1   appointing Dennis J. Connolly as the chapter 11 trustee.  York RJN, Exhibit 3.  On April

2   17, 2007 the Court filed the Order Approving Appointment Of Chapter 11 Trustee.  York

3   RJN, Exhibit 4.

4        A chapter 11 trustee has broad powers to investigate and report on the acts,

5   conduct, assets, liabilities and financial condition of a debtor, including any facts

6   pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or

7   irregularity in the management of the affairs of the debtor.  A trustee is required to file a

8   chapter 11 plan as soon as practicable, or recommend conversion of the case to

9   chapter 7 or dismissal.  11 U.S.C. Section 1106.  A trustee is authorized to hire

10  attorneys and other professional persons to represent or assist the trustee in carrying

11  out his or her statutory duties, so long as the trustee's professionals are disinterested

12  persons and do not hold or represent an interest adverse to the bankruptcy estate.  11

13  U.S.C. Section 327(a).

14       On May 2, 2007 Mr. Connolly filed an application with the bankruptcy court to

15  appoint his law firm, Alston & Bird LLP ("A&B"), as his counsel.  York RJN, Exhibit 5.

16  Mr. Connolly was not required to set the matter for hearing, nor was he required to

17  serve the application on any party except the United States Trustee.  Fed. R. Bankr. P.

18  2014(a).  In an abundance of caution, however, Mr. Connolly submitted an interim order

19  of appointment for A&B which was filed by the bankruptcy court on May 8, 2007.  York

20  RJN, Exhibit 7.  On May 9, 2007 Mr. Connolly filed a notice of hearing on the

21  application for the employment of A&B.  York RJN, Exhibit 8.  The hearing was set for

22  June 14, 2007.   Pursuant to the bankruptcy court's interim order, the deadline to file

23  objections to the A&B employment application was May 31, 2007.  York RJN, Exhibit 7,

24  3:12-13.

25       York first made its appearance in this case on June 7, 2007 by filing a notice of

26  assignment of a claim and, through its counsel, a notice of appearance and request for

27

28  Opposition By UST To
    Motion For Leave To Appeal                    4

1   notice.  UST RJN, Exhibits E and F.  On that same day, York filed its objection to the

2   employment applications of A&B and Friedman Dumas & Springwater LLP, together

3   with a request to file the untimely objection and to have the hearing on the objection set

4   at a different time than the prior noticed hearing on the A&B employment application.

5   York RJN, Exhibits 10 - 12.  On June 13, 2007 the bankruptcy court filed an order

6   granting York permission to file its objection and to have its objection heard at a

7   different time than the prior noticed hearing.  York RJN, Exhibit 19.  Mr. Connolly, the

8   United States Trustee and creditor SonicBlue Claims LLC filed responses to the York

9   objection (York RJN, Exhibits 13, 14, 16 and 18), and on June 13, 2007 York filed a

10  supplemental objection (York RJN, Exhibit 17).

11      The bankruptcy court held two hearings on the employment applications on June

12  14, 2007.  At the initial hearing held at 10:30 a.m. on June 14, 2007 the bankruptcy

13  court heard and overruled York's objections to both of the applications.  The court

14  based the decision on the record in the case, and also cited In re Mandell, 69 F. 2d

15  830, 831 (2nd Cir. 1934), for the principle that only in the rarest cases should a trustee

16  be deprived of the privilege of selecting his own counsel, because the relationship

17  between attorney and client is highly confidential, demanding personal faith and

18  confidence so that the two can work together harmoniously.  UST RJN, Exhibit A;

19  20:14-25 - 21:1-13.

20      On June 21, 2007 the bankruptcy court filed the interlocutory order at issue,

21  entitled Final Order Authorizing The Retention Of Alston & Bird LLP As Counsel To

22  Dennis J. Connolly, The Chapter 11 Trustee (the "Interlocutory Order").[3]  York RJN,

23  Exhibit 20.  The Interlocutory Order included findings by the court "that (1) A&B does

24  not hold or represent an interest that is adverse to the estate and is disinterested within

25

26      [3]                A bankruptcy court order regarding the appointment of counsel is an interlocutory order.
                        In re S.S. Retail Stores Corp., 162 F. 3d 1230, 1232 (9th Cir. 1998).
27

28  Opposition By UST To
    Motion For Leave To Appeal                 5

1    the meaning of the Bankruptcy Code; and (2) that the retention of A&B by the Trustee *is*

2    *in the best interests of the estates* . . ." Id., 2:14 - 16 (emphasis added).

3            On July 2, 2007 York filed a notice of appeal of the Interlocutory Order and the

4    instant Motion.

5                            **III.  DISCUSSION**

6            The standard for granting leave to appeal an interlocutory order is well

7    established.

8            'While neither the Bankruptcy Code nor the Federal Rules of Bankruptcy provide
             standards for evaluating a motion for leave to appeal, the majority of courts have
9            applied the analogous standard for certifying an interlocutory appeal set forth in
             28 U.S.C. Section 1292(b).'  Section 1292(b) presents the discretionary review of
10           an interlocutory order where the order '*involves a controlling question of law* as
             to which there is *substantial ground for difference of opinion* and that *an*
11           *immediate appeal from the order may materially advance the ultimate termination*
             *of the litigation*.'  Under section 1292(b), 'only exceptional circumstances [will]
12           justify a departure from the basic policy of postponing appellate review until after
             the entry of a final judgment.'

13   In re Calpine Corp., 356 B.R. 585, 592-93 (S.D.N.Y. 2007) (emphasis added), (citing In

14   re WorldCom, Inc., 2006 WL3592954, at *2 (citing In re Alexander, 248 B.R. 478, 483

15   (S.D.N.Y. 2000); In re Johns-Manville Corp., 45 B.R. 833, 835 (S.D.N.Y. 1984));

16   Klinghoffer v. S.N.C. Achille Lauro, 921 F. 2d 21, 25 (2nd Cir. 1990) (quoting Coopers &

17   Lybrand v. Livesay, 437 U.S. 463, 475 (alteration in the original.).)  See also In re

18   Brentwood Golf Club, L.L.C., 329 B.R. 239, 242 (E.D. Mich. 2005); In re Nicholes, 184

19   B.R. 82, 86 - 87 (9th Cir. B.A.P. 1995).

20           York has not satisfied the test for the granting of a request for leave to appeal

21   because York has failed to articulate a controlling question of law as to which there is a

22   substantial ground for difference of opinion, nor has York demonstrated that there is

23   any litigation that needs to be materially advanced by the granting of an immediate

24   appeal from the Interlocutory Order.

25

26

27

28   Opposition By UST To
     Motion For Leave To Appeal                    6

1

2

### A.    The Interlocutory Order Does Not Involve A Controlling Question Of Law.

The Interlocutory Order involves a single legal question:  whether an

attorney trustee may employ his or her own law firm as counsel in a bankruptcy case.

Unequivocally the answer is yes, where, as here, the bankruptcy court has made an

explicit finding that the employment of the law firm is in the best interest of the estate.

See York RJN, Exhibit 20, 2:14-16.

Section 327(d) of the Bankruptcy Code provides:

> The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

11 U.S.C. Section 327(d) (Thomson West 2007).

York has misstated the controlling question of law by asserting that an

attorney trustee may only hire his or her own law firm when exigent circumstances are

present:

> Here, the "controlling question of law" is whether a trustee may employ his own law firm as his counsel in a large bankruptcy case, where there are no exigent circumstances requiring such retention.

Memorandum Of Point & Authorities In Support Of Motion For Leave To Appeal ("York

MPA"), 10:26-27.

York, however, has cited no Bankruptcy Code section, no Bankruptcy

Rule, no controlling case, and no local rule or guideline as authority for the proposition

that a trustee may only employ his or her own law firm under "exigent circumstances."

The Supreme Court of the United States has held that the plain meaning

of a statute should be conclusive, except in the rare case in which the literal application

produces a result that is demonstrably at odds with the intention of its drafters.  See

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989).  Because the

bankruptcy court made a finding in the Interlocutory Order that it is in the best interests

of the estate for Mr. Connolly to retain his own law firm, the Interlocutory Order fully

Opposition By UST To
Motion For Leave To Appeal                              7

1    comports with 11 U.S.C. Section 327(d), the applicable statute.  Therefore, there is no

2    controlling issue of law for this Court to adjudicate.

3          **B.    The Interlocutory Order Does Not Involve A Question As To
                 Which There Is Substantial Ground For Difference Of Opinion.**

4

5          Just as there is no controlling question of law that would militate in favor of

     the Court granting York leave to appeal the Interlocutory Order, by extension there is

6

7    also no question presented to this Court as to which there is substantial ground for

     difference of opinion.  York, however, has characterized this prong of the standard

8

     differently.

9
          Although the test is phrased in terms of whether 'there is substantial
10        grounds for difference of opinion,' in fact, that test is satisfied where, as
          here, there are no substantial grounds supporting the court's decision.
11   York MPA, 11:1-3.

12         York has failed to support its claim that there were no substantial grounds

13   supporting the bankruptcy court's decision.  To the contrary, in the application to

14   employ A&B, Mr. Connolly provided the bankruptcy court with solid evidence that the

15   retention of A&B was in the best interest of the estate, referring to the experience and

16   expertise of the proposed members of his team, including Neal Batson, an attorney who

17   served as the court appointed examiner in the <u>Enron</u> and <u>Southmark</u> bankruptcy cases.

18   Mr. Connolly also cited the level of comfort that he had with colleagues whom he had

19   known and worked with for the past twenty years, and the level of confidence that he

20   had in their analytical abilities and independent judgment.  York RJN, Exhibit 5, 3:1 -

21   5:20.  Based on that evidence, and based on the plain language of Section 327(d) of

22   the Bankruptcy Code, the bankruptcy court made specific findings in the Interlocutory

23   Order that A&B was disinterested, that it had no interest adverse to the estate, and that

24   the employment of A&B was in the best interest of the estate.  York RJN, Exhibit 20,

25   2:14 -16.  Thus, the Interlocutory Order is based on a solid evidentiary record that the

26   employment of A&B is in the best interests of the estate.

27

28   Opposition By UST To
     Motion For Leave To Appeal              8

1  The bankruptcy court's decision is well grounded factually and legally.

2  Therefore, there are no substantial grounds for a difference of opinion with respect to

3  the bankruptcy court's decision.

### C. Immediate Appeal From The Interlocutory Order Will Not Materially Advance The Ultimate Termination Of Litigation.

York's argument in support of the final prong of the legal standard for the

granting of a motion for leave to appeal is simply that "the issue is important, and in a

case like this should not be left to fester" and that "the question of the appropriate

selection of counsel – of whether the Trustee should be required to remain

disinterested – should be addressed and resolved now."  York MPA, 11:21-24.

York made its appearance in this case on June 7, 2007, a little over one

month ago.  UST RJN, Exhibit F.  York has standing in this case because it purchased

a claim on June 6, 2007 from a party (Hain Capital Holdings, LLC) who in turn had

purchased a claim in December 2006 from one of the original creditors in the case

(BCIA New England Holdings, LLC) that had filed its claim in July 2003.  See UST RJN,

Exhibits B through E.  York objected to the employment of Mr. Connolly's law firm one

week after a court-imposed deadline, and York is the only party who filed such an

objection.  Therefore, an inference can be fairly drawn that York's views do not

represent the views of the many active creditors and parties in interest in this case.

Because York stands alone in raising the argument that the employment of Mr.

Connolly's law firm by Mr. Connolly is in any way inappropriate, if this Motion is denied

no issue will be left to "fester" and there will be no further question regarding Mr.

Connolly's selection of counsel to be addressed and resolved.  Therefore, there is no

litigation regarding the Interlocutory Order whose ultimate termination needs to be

materially advanced by a grant of immediate appellate review.

### III. CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to deny

Opposition By UST To
Motion For Leave To Appeal                    9

1  York's Motion For Leave To Appeal.

2  Dated:  July 12, 2007                    Respectfully submitted,

3

4                                            /s/ Nanette Dumas
                                            Nanette Dumas
                                            Attorney for United States Trustee
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  Opposition By UST To
    Motion For Leave To Appeal              10