**Exhibit A**

Exhibit A

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MARILYN MORGAN, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 03-51775-MM |
| | ) Case No. 03-51776-MM |
| | ) Case No. 03-51777-MM |
| SONICBLUE INCORPORATED; | ) Case No. 03-51778-MM |
| DIAMOND MULTIMEDIA SYSTEMS, INC.; | ) Chapter 11 |
| REPLAYTV, INC.; SENSORY SCIENCE | ) (Jointly Administered) |
| CORPORATION, | ) |
| | ) |
| Debtors. | ) Thursday, June 14, 2007 |
| | ) (Morning and Afternoon) |
| | ) San Jose, California |

Hearing on:

Application for an order pursuant to Section 327(a) authorizing
the retention of Alston & Bird LLP as counsel to Dennis J.
Connolly, the Chapter 11 Trustee;

Application for an order pursuant to Section 327(a) authorizing
the retention of Friedman, Dumas & Springwater LLP as local
counsel to Dennis J. Connolly, the Chapter 11 Trustee;

Objection to trustee's proposed counsel by York Credit
Opportunities Fund, L.P.

Motion to amend October 17, 2003 protective order.


<u>Appearances</u>:

| | |
|---|---|
| For Chapter 11 Trustee and Movant Dennis J. Connolly: | Grant T. Stein, Esq.<br>Alston & Bird<br>1201 West Peachtree Street<br>Atlanta, Georgia  30309-3424 |
| | Cecily A. Dumas, Esq.<br>Friedman, Dumas & Springwater<br>150 Spear Street, Suite 1600<br>San Francisco, California  94104 |
| Chapter 11 Trustee: | Dennis J. Connolly, Esq.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia  30309-3424 |

Appearances continued on next page.

2

<u>Appearances continued</u>:


For York Credit          Michael St. James, Esq.
Opportunities Fund,      St. James Law
L.P.:                    155 Montgomery Street, Suite 1004
                         San Francisco, California  94104


For the Creditors'       Ron Bender, Esq.
Committee (via           Craig M. Rankin, Esq.
telephone):              Levene Neale Bender Rankin & Brill, LLP
                         10250 Constellation Boulevard
                         Suite 1700
                         Los Angeles, California  90067


For Citadel Equity       Van C. Durrer II, Esq.
Fund:                    Skadden Arps Slate Meagher & Flom LLP
                         300 South Grand Avenue, Suite 3400
                         Los Angeles, California  90071


From the U.S.            Nanette Dumas, Attorney
Trustee:                 United States Trustee, Region 17
                         United States Department of Justice
                         280 South First Street, Room 268
                         San Jose, California  95113


For SonicBlue Claims     Bernard S. Greenfield, Esq.
LLP:                     McGrane Greenfield LLP
                         40 South Market Street, Seventh Floor
                         San Jose, California  9513


                         Robert A. Greenfield, Esq.
                         Stutman Treister & Glatt, P.C.
                         1901 Avenue of the Stars, 12th Floor
                         Los Angeles, California  90067-6013


For Portside Growth      Lewis Kruger, Esq.
and Opportunity Fund;    Stroock, Stroock & Lavan
Smithfield Fiduciary;    180 Maiden Lane
Citadel Equity Fund:     New York, New York  10038

For Creditor Riverside   Robert A. Franklin, Esq.
Claims:                  Murray & Murray, P.C.
                         19400 Stevens Creek Boulevard, Suite 200
                         Cupertino, California  95014-2548



                    Appearances continued on next page.

3

<u>Appearances continued</u>:


For Pillsbury Winthrop:    Bernard A. Burk, Esq.
                           Howard Rice Nemerovski Canady Falk &
                           Rabkin
                           Three Embarcadero Center, Seventh Floor
                           San Francisco, California  94111-4024


For Intel Corporation:     Steven James Johnson, Esq.
                           Gibson Dunn & Crutcher
                           1881 Page Mill Road
                           Palo Alto, California  94304


Digital Court              United States Bankruptcy Court
Recorder:                  Clerk of the Court
                           Janet Dustin
                           280 South First Street, Room 3035
                           San Jose, California  95113
                           (408) 535-5003


Certified Electronic       Palmer Reporting Services
Transcriber:               P. O. Box 30727
                           Stockton, California  95213-0727


            Proceedings recorded by digital recording;
  transcript produced by federally-approved transcription service.

Applications to Retain Counsel and Objection to Proposed Counsel          4

1   Thursday, June 14, 2007                    10:32 o'clock a.m.

2                     P R O C E E D I N G S

3          THE CLERK:  All rise.  This is the United States

4   Bankruptcy Court for the Northern District of California.

5          Court is now in session.

6          THE COURT:  Good morning.

7          [COUNSEL]:  Good morning, Your Honor.

8          THE CLERK:  Item 1, SONICblue, Incorporated.

9          MS. CECILY DUMAS:  Good morning, Your Honor.  Cecily

10  Dumas appearing on behalf of the trustee.

11         THE COURT:  Okay.  It's interesting that we have two

12  Dumas in a row.

13     (Laughter.)

14         MS. NANETTE DUMAS:  And good morning, Your Honor.

15  Nanette Dumas — no relation to Cecily Dumas —

16         THE COURT:  Okay.

17         MS. NANETTE DUMAS:  — for the U. S. Trustee.

18         THE COURT:  Good morning.

19         MR. ST. JAMES:  Good morning, Your Honor.  Michael St.

20  James appearing for York Credit Opportunities.  Let me thank the

21  Court for accommodating my schedule.  I really apologize.

22         THE COURT:  I'm glad we were able to do that.

23         MR. ST. JAMES:  Thank you, Your Honor.

24         THE COURT:  Thank you.

25         MR. BERNARD GREENFIELD:  Good morning, Your Honor.

Applications to Retain Counsel and Objection to Proposed Counsel      5

1  Bernard Greenfield for SBC Claims.

2        MR. ROBERT GREENFIELD:  Good morning, Your Honor.

3  Robert A. Greenfield of Stutman, Treister and Glatt,

4  Professional Corporation, also attorney for SB Claims.  No

5  relationship to Bernie.

6      (Laughter.)

7        THE COURT:  Many coincidences today.

8        MR. ROBERT GREENFIELD:  Although we came from Los

9  Angeles together.

10        THE COURT:  Okay.

11        MR. STEIN:  Good morning, Judge.  Grant Stein, Alston

12  and Bird, on behalf of the trustee.

13        THE COURT:  Good morning.

14        MR. KRUGER:  Good morning, Your Honor.  Lewis Kruger

15  of Stroock, Stroock and Lavan counsel for Portside Growth,

16  Smithfield Fiduciary and Citadel Equity substituting for the

17  Hennigan, Bennett firm.

18        THE COURT:  Good morning.

19        MR. KRUGER:  I came early this morning to introduce

20  myself what I was going to think about as a noncontroversial day

21  where it would just be nice to come and say hello, but obviously

22  that's not the day we have.  It's nice to say hello.

23        THE COURT:  Okay.  Thank you, sir.

24        MR. FRANKLIN:  Good morning, Your Honor.  Robert

25  Franklin of Murray and Murray appearing on behalf of creditor,

Applications to Retain Counsel and Objection to Proposed Counsel          6

1   Riverside Claims.

2          THE COURT:  Good morning, Mr. Franklin.

3          MR. DURRER:  Good morning, Your Honor.  Van Durrer of

4   Skadden, Arps, Slate, Meagher and Flom on behalf of Citadel

5   Equity.

6          THE COURT:  Mr. Van Durrer.

7          Mr. St. James, this is your motion.

8          MR. RANKIN:  If I may, Your Honor, on the phone Craig

9   Rankin on behalf of the Official Creditors' Committee.

10         THE COURT:  Okay.  Good morning, Mr. Rankin.

11         MR. RANKING:  Thank you, Your Honor.

12         MR. ST. JAMES:  Thank you, Your Honor.  I'll be brief.

13  I'm sure the Court has had an opportunity to review the papers.

14         And what I'd like to simply note is that as a result

15  of Mr. Stein's comment in his brief I've had an opportunity now

16  to go through the caselaw.

17         And I think that the caselaw is fairly consistent.  I

18  have yet to find a case where a court said:  This is a really

19  great idea.  You know, it'd be wonderful to have trustees

20  represented by their law firms.

21         What you find are cases that accept it as a necessary

22  evil often in cases which are so small that it would not make

23  economic sense to bring in a law firm.  And so the trustee

24  represents him or herself, for example, filing an objection to a

25  claim of exemption, or you see it in cases where there's some

Applications to Retain Counsel and Objection to Proposed Counsel          7

1    urgent crisis where the only way to get the estate protected,

2    for example, to enjoin shipments of assets, or something like

3    that, is for the trustee's law firm to leap into action.

4            This isn't that type of case.  This is a case where

5    the law firm that represents the trustee will earn millions of

6    dollars in fees.  And there is no particular need to make it the

7    trustee's firm, except for the benefits that the caselaw says

8    are exactly what we should be concerned about.

9            As the Supreme Court said, having a trustee who is

10   interested in the case is not always corrupt, but it is always

11   corrupting.  And this is simply not the right case to begin with

12   the trustee who is not disinterested.

13           I'd be happy to respond to any questions the Court

14   has.

15           THE COURT:  I think you've thoroughly briefed it.

16           MR. ST. JAMES:  Thank you, Your Honor.

17           THE COURT:  Thank you.

18           MR. STEIN:  Thank you, Judge.

19           What I want to do is put into perspective the 327(d)

20   issues relating to the trustee's application.  And the way to do

21   that, I believe, is to take a look at — and I know you're

22   familiar with them — the March 26th and May 4th orders of the

23   Court, because if you look at those, you can see exactly what

24   directive you have given resulting in the appointment of a

25   trustee and for the trustee to proceed with.

1      And that, of course, relates to the disqualification

2  of Pillsbury, the facts relating to that as pertains to

3  disgorgement issues.  Then we have the issues of the committee,

4  the committee's conduct, the conduct of committee's counsel, the

5  conduct of committee members and how that impacts the VIA

6  settlement, and how that impacts the so-called senior

7  noteholders' priority vis-a-vis VIA, and what that means in this

8  case, and what should be done.  So we've gotten some directive

9  from you in that regard.

10      There are — since the case has been filed, there has

11  been a 510 complaint filed by SONICblue Claims and a motion to

12  reconstitute the committee.  Those issues, we believe, are

13  subsumed in the direction to the trustee with regard to what

14  we're supposed to investigate and look at.

15      You have also given us direction, Judge, to proceed

16  with plan issues.  You're smiling —

17      (Simultaneous talking.)

18      THE COURT:  You know, I'm smiling because I was going

19  to open my remarks this afternoon saying that I didn't want

20  anyone to misread that last paragraph in my motion — in my

21  ruling on clarification.  And I certainly wouldn't want to

22  presume to direct the trustee how to independently exercise the

23  trustee's judgment.  So I was going to clarify that this

24  afternoon.

25      Just so that you know, I do have that on my mind that

Applications to Retain Counsel and Objection to Proposed Counsel                    9

1    I do not intend to direct this case from the bench.

2                MR. STEIN:  Well, and I appreciate that Judge, as does

3    the trustee.  But to be quite clear, when we sat down and looked

4    at the case, we knew that it had to take two tracks.  In other

5    words, to the extent that it matters, and it does, we would

6    agree and have determined independently — the trustee has — plan

7    track, very important.

8                THE COURT:  Um-hum.

9                MR. STEIN:  Investigation track, very important.

10               With respect to the plan track, in fact, I might be so

11   bold to say some of the lawyers are here today because they know

12   that after the hearings we plan to distribute a plan.

13               The idea is — we've got a disclosure statement hearing

14   on August the 9th.  We want to get a plan and disclosure

15   statement filed.  We'll move it forward.

16               THE COURT:  I'm glad to hear that.

17               MR. STEIN:  Thank you.

18               The same with regard to the investigation.  On May

19   17th we moved the investigation forward.  We sent out to many

20   parties in the case that we knew we would be wanting discovery

21   form informal discovery which focused on getting documents in

22   anticipation of taking depositions, interviews, et cetera.

23               Now how does that fit into today?  That's what the

24   protective order hearing this afternoon is about.  It was one of

25   the things that we discovered we needed to do as we moved down

1    that road.

2              Now what does all that have to do with 327(d)?  And

3    what it has to do with it is why it is in the best interests of

4    the estate in this case for Mr. Connolly to retain the law firm

5    where he is a partner.

6              And if you look, Judge, at his declaration — and I'm

7    sure you have — that's been filed, specifically paragraphs 6

8    through 12, he walks through the unique and extraordinary

9    experience that we had investigating and investigating the

10   lawyers, if you will, in the Enron case.  That is not

11   duplicable.

12             He knows us; he knows what we've done.  And we have

13   the experience and can bring that to the table.

14             The same thing with regard to 327 and 2014 issues, and

15   lawyer malpractice issues, and the issues of fee disgorgement.

16   Those are things that we have dealt with that is set forth in

17   his declaration.

18             And that brings me to the issue of, well, if it's all

19   there, what do the cases say about it, if it's in the

20   declaration?  One thing the cases do say is that the standard to

21   be met, to fulfill the requirements of 327(d), can be based on

22   affidavits, declaration.

23             So we believe that it is more than sufficient what we

24   have submitted in support of the trustee's retention of counsel.

25             But what I do want to do, and I can't help myself, and

Applications to Retain Counsel and Objection to Proposed Counsel        11

1  I hope you'll indulge me, I want to walk through the cases for a

2  minute, —

3        THE COURT:  That'd be fine.

4        MR. STEIN:  — because when you actually look at the

5  cases, and look at what they said, and look at what they held,

6  the important picture comes out.

7        In looking at the cases, one of the cases that's cited

8  in the opposition that's — it's a 1966 case from the Second

9  Circuit, *Matt versus Seligson* (phonetic).  I refer to it as "*Ira*

10  *Hope* (phonetic)."  It's a case where the court said in a

11  situation where it is a large and complex case that may be

12  special circumstances, and you have to look at what the special

13  circumstances are in approving counsel for the trustee that

14  happens to also be the trustee's law firm.

15        And if you take a look at the *Gem Tire* case, the same

16  thing.  The Court actually noted that aspect, the complexity

17  aspect, of the *Ira Hope* case in talking about that issue.  Now

18  in *Ira Hope* the lawyers were left in place.  There was no 327(d)

19  at the time and the statute and the rules were the way it used

20  to be under the old Act.  But the lawyers were left in place.

21        And in the *Gem Tire* case also cited in the various

22  briefs, the court, without prejudice, denied the 327(d)

23  application and said:  Come back to me with more evidence, which

24  is the same thing that happened in *InterAmerica* (phonetic) where

25  Judge Isker (phonetic) did the same thing, said:  I'm denying

1   without prejudice.  Come back, show me how the best interest of

2   the estate is met in those cases.

3            The next case to address, which is on page 3 of the

4   opposition, is the *Michigan Interstate* case.  And in that case

5   the court denied the 327(d) application because the lawyers had

6   no experience in railroad reorganizations.  It was a railroad

7   reorg case.

8            The next case is the *Palm Coast* case at 101 F.3d 1966

9   Second Circuit at page 3.  And in that case the court said:  You

10  can't be approved under 327(d) because you don't meet the

11  statute, because it was a real estate consulting firm that was

12  sought to be retained, not an attorney, not an accountant, which

13  the statute specifically contemplates.

14           *Showcase Jewelry* is cited on page 2.  In that case it

15  was a trustee that was an associate of the law firm.  And the

16  court said:  You can't be an associate in a law firm and hire

17  your law firm.  We can't have a situation like that.  That's a

18  master-servant imbalance.  And that's not acceptable for you to

19  be the attorney in that situation.

20           But the case that really caught my eye and that I

21  think addresses all the issues that we have here was the

22  *Kurtzman* (phonetic) case in 1988 out of the Southern District in

23  New York.

24           And in that case the court denied, having previously

25  approved on numerous occasions, a 327(d) application of counsel.

1  And why it caught my eye is because I think it will help inform

2  the appropriate analysis here.

3         And the court said as follows:  A trustee should only

4  be allowed to retain his law firm upon a showing of the

5  potential benefit to the fiduciary estate.  The potential

6  benefit to the fiduciary estate.

7         We believe Mr. Connolly's declaration spells that out

8  clearly.  The judge continued:  And then only after the court is

9  satisfied that the fiduciary will not succumb to the various

10  temptations presented.

11         That is an issue for Your Honor.  We believe that to

12  be the case with regard to a trustee here.  We believe it's an

13  appropriate case for the trustee to retain his own law firm.

14  You have to make that assessment, Judge.

15         And then the court concluded:  Trust, rectitude, and

16  honor, as well as professional competency must be demonstrated

17  to support a court's confidence in such risky appointments.

18         Again, we believe that has been established in Mr.

19  Connolly's application and in his declaration, which brings me

20  to the last point, Judge.

21         With respect to Friedman, Dumas and Springwater, we

22  believe there's no question that they are appropriately

23  qualified to serve as our local counsel.  They have been doing

24  so extremely well, in my view.  And we would ask that their

25  appointment be approved along with Alston and Bird's

Applications to Retain Counsel and Objection to Proposed Counsel    14

1  appointment.

2        Thank you, Your Honor.

3        THE COURT:  Thank you, Mr. Stein.

4        Is there anyone else who wishes to be heard?

5        Mr. Greenfield.

6        MR. ROBERT GREENFIELD:  Yes.  Thank you, Your Honor.

7  I'll be very brief.

8        We filed a response.  I want to make it clear that

9  we're not objecting to Alston and Bird's appointment as

10  attorney.  We think that they're a fine choice.

11        Our issue really involves the Creditors' Committee in

12  this case.  I'm kind of new to this case.  Mr. Shaffer is away.

13  So I had occasion to read just recently your memorandum

14  decision.

15        And one thing I think really flows from it, and that

16  is how dysfunctional this Creditors' Committee has been in this

17  case and how problematic it has been for quite a long time,

18  although the Court clearly didn't know about it and a lot of the

19  constituents did not as well.

20        The one thing that kind of came from the briefs that I

21  saw filed by both the U. S. Trustee and Mr. Connolly's firm was

22  this issue of legal fees, costs, how do they supervise their own

23  firm, and so forth.

24        The thing, again, that kind of flows very much out of

25  your memorandum was impropriety appearances, minimally,

Applications to Retain Counsel and Objection to Proposed Counsel          15

1    maximumly, real conflicts.  It would be unfortunate in this

2    case, I think, if there wasn't somebody independent around to

3    look at the legal fee issues and the costs because they could be

4    significant.  And it really ought to be a committee.  And this

5    committee is dysfunctional.

6           We think that there ought to be a reconstituted

7    committee.  There's a motion before Your Honor that sets for,

8    unfortunately, in August.  We're willing to bring that forward,

9    Your Honor.  We think that these really go hand-in-hand.

10          It has no — nothing to say negative about Mr.

11   Connolly, clearly.  It's just very difficult, I think — it would

12   be hard for me, if I were trustee, to basically look over the

13   shoulder of my law firm while I get compensation from my law

14   firm as a lawyer.

15          It's just — somebody should not be put in that

16   position.  And typically it's not a problem, because you have a

17   strong, functioning, active creditors' committee.  And

18   unfortunately we don't yet here in this case, and that's why

19   we're suggesting that those kind of go hand-in-hand.

20          Other than that, I have nothing further to add.

21          THE COURT:  I don't really think those comments are

22   directed toward the issue before me this morning.  So I'll

23   reserve those for a later determination.

24          Is there anyone who wishes to be heard with respect to

25   this morning's motion?

1          Mr. Franklin.

2          MR. FRANKLIN:  Your Honor, on behalf of Riverside

3   Claims, Riverside would like to note that it has no objection to

4   the pending application.

5          THE COURT:  Thank you, Mr. Franklin.

6          Ms. Dumas.

7          MS. NANETTE DUMAS:  Your Honor, I'll try to be brief

8   also.

9          Your Honor, on March 26th the Court ordered the

10  appointment of an independent trustee because the case was in a

11  state of gridlock; creditor confidence in the system was deeply

12  shaken.  And so the Court ordered the appointment of a neutral,

13  independent party.

14         One of the main arguments that was raised in — by

15  SONICblue Claims in opposition to the appointment of a Chapter

16  11 trustee in support of conversion was the idea that perhaps a

17  Chapter 7 trustee could get the money out to creditors faster.

18         The U. S. Trustee took those concerns very seriously

19  and has been really urging this trustee to focus on getting a

20  plan on file and getting money out to creditors to the

21  undisputed claims as soon as possible.

22         And, as the Court just heard, there's a draft plan

23  that's ready to be circulated to the parties in this courtroom.

24         So I think that the trustee has been very mindful of

25  the concerns of the creditor body, the Court, and the U. S.

Applications to Retain Counsel and Objection to Proposed Counsel          17

1  Trustee.

2          Your Honor, the U. S. Trustee also shared the Court's

3  concerns expressed in the March 26th opinion that a nationwide

4  search be conducted to find something who was truly an outsider,

5  unconnected, and had the skill set necessary to do a very

6  ambitious job, the two-track approach that Mr. Stein described

7  in detail.

8          The U. S. Trustee put a great deal of effort into that

9  search.  And the U. S. Trustee believes that she did find the

10 right person in Mr. Connolly, in his ability to be able to do

11 both things at once and do them well.

12         Having said that, the fact that Alston and Bird is Mr.

13 Connolly's firm, the U. S. Trustee in this instance regards that

14 as an asset, not a liability, because Alston and Bird, the law

15 firm, has those same skills as Mr. Stein has described.

16         So we think that it's a plus for the estate under

17 these particular circumstances to have Alston and Bird serve as

18 trustee's counsel.

19         Moreover, the law supports it.  327(a), the

20 appointment of Alston and Bird completely comports with 327(a),

21 327(d).  And I don't believe that the caselaw cited by Mr. St.

22 James is persuasive, to the contrary, at least not under the

23 facts and circumstances of this case.

24         Your Honor, just to — the committee issue is not

25 before the Court today.  However, the U. S. Trustee specifically

1    requested me to advise the Court that the U. S. Trustee has not

2    abdicated her responsibility with respect to the committee.

3         On the contrary, the U. S. Trustee has been very aware

4    of this issue.  However, the U. S. Trustee just believes that

5    the issue is premature at this point.  The U. S. Trustee is

6    deferring consideration of the issue until the trustee has had a

7    greater opportunity to conduct his investigation and to develop

8    the evidence and the facts.

9         It is very, very important to the U. S. Trustee and to

10   our office that anything that we do be based on a solid

11   evidentiary foundation and that everybody is treated fairly.

12        And I think anybody in this courtroom would want to be

13   treated fairly, as the U. S. Trustee wants the parties to be

14   treated and as the trustee also wants the parties to be treated.

15   That is the reason why there has been no action.  It has not

16   been neglect; it has not been any abdication of responsibility.

17   We just wanted the Court to be clear on that.

18        We have an independent trustee in control of this case

19   now.  We just want him to be able to do his job unfettered,

20   unhampered, and to be able to get the plan on file, get it

21   confirmed, go forward with the investigation.

22        Therefore, we urge that the Court overrule the

23   objection and appoint Alston and Bird as trustee's counsel.

24        Thank you, Your Honor.

25        THE COURT:  Okay.  Thank you.

Applications to Retain Counsel and Objection to Proposed Counsel          19

1          Mr. St. James.

2          MR. ST. JAMES:  Thank you, Your Honor.  I will be very

3    brief.

4          Your Honor, Alston and Bird is not unique.  It is not

5    the only firm in this country that has capable bankruptcy

6    attorneys; it's not the only firm in this country that has

7    assisted in an examination, even a national examination.  It's

8    not the only firm in this country that has abilities in

9    evaluating legal ethics, legal malpractice.

10          There were other alternatives.  This is a

11   multimillion-dollar decision.  I think the Trustee just made the

12   wrong decision, and it's for this Court to say.

13          I will point out that there is no external — there was

14   no external urgency.  The Court entered an order that said it

15   was interim and set it for a subsequent hearing.

16          If the answer was it was an interim order and the

17   decision is made permanently, the Court could have done that.

18   People could have done that.  There was the, at least, strong

19   suggestion that the issue was still open.  And that's why we

20   responded to it.

21          The fact that Alston and Bird has moved rapidly with a

22   plan is a fine thing but, Your Honor, I've inherited cases where

23   a plan has previously been drafted, and I've carried it forward

24   to the finish line.  This is not something that a different

25   lawyer could not do.

Applications to Retain Counsel and Objection to Proposed Counsel          20

1              In the case where the one thing that keeps on getting

2    said is:  We need a disinterested trustee, I think the Court

3    should require a disinterested trustee.  Thank you, Your Honor.

4              THE COURT:  Okay.  Thank you, Mr. St. James.

5              Is there anyone else who wishes to be heard at this

6    time?

7         (No audible response.)

8              THE COURT:  You know it really wasn't my intent to get

9    into matters other than listening to Mr. St. James present his

10   objection.  But I've listened to many other comments this

11   morning, and I'm wondering:  Are you all going to come back this

12   afternoon?  I hear that you have meetings that will take place,

13   and then you will come back for a hearing at 1:30.

14             So let me just go ahead and rule on the objection.

15             You all have put a lot of thought in it obviously on

16   both sides, have reviewed the law.  The one case you didn't find

17   was one that my Law Clerks found for me.

18             And, Mr. St. James, it really does go contrary to the

19   things that you've been saying, given the basis of a lot of the

20   development of this caselaw.  I'm quoting from a case of *Palmer*

21   *versus Kennedy, In re Mandell*, 60 F.2d 830-831, Second Circuit,

22   speaking in 1934.

23             They pointed out that the relationship between the

24   attorney and client is highly confidential, demanding personal

25   faith and confidence in order that they can work together

Applications to Retain Counsel and Objection to Proposed Counsel            21

1    harmoniously.  But it's the next sentence that I think was

2    important.  They go on to say:  Only in the rarest cases should

3    the trustee be deprived of the privilege of selecting his own

4    counsel.

5            And when I listened to all of the arguments, I'm not

6    swayed that we should do anything other in this instance.  It's

7    clear from the record that Alston and Bird is qualified.  And

8    it's certainly clear from the record that this is an

9    extraordinary case that does require maybe special handling.

10           Your concerns about the fees are understood.  You know

11   we do have the fee auditor in place in this case.  And everyone

12   I think is looking at fees very closely, particularly the Court,

13   as I understand my independent duty very, very well.

14           With respect to Ms. Dumas' firm, they do regularly

15   practice in courts in the Northern District.  And in these days

16   of the electronic filing and telephonic appearances, I don't

17   think her proximity to the Court is that significant.  And

18   certainly she's familiar with the Local Rules of the Northern

19   District and very qualified to represent the two cocounsel in

20   this case.

21           So with respect to those two issues, I am going to

22   overrule the objection.  I'm not going to grant the motion until

23   our hearing this afternoon.

24           MR. [SPEAKER]:  Thank you, Your Honor.

25           THE COURT:  Okay.  I wish — I hope that you all can

1   use this time productively.  And I appreciate the fact that you

2   have found a use for it.  So we're adjourned.

3              [COUNSEL]:  Thank you, Your Honor.

4        (The above matter concluded at 10:56 o'clock a.m. and

5   another matter in the same case was taken up at 1:36 o'clock

6   p.m. as follows:)

7              THE CLERK:  All rise.

8              THE COURT:  Please be seated.

9              THE CLERK:  Item 1, SONICblue Incorporated.

10             THE COURT:  Could we have your appearances?

11             MR. STEIN:  Your Honor, Grant Stein, Alston and Bird,

12  on behalf of the trustee.  Cecily Dumas is with me from Friedman

13  and Dumas, Springwater.  And the trustee is also in court this

14  afternoon.

15             MR. CONNOLLY:  Good afternoon, Your Honor.

16             THE COURT:  Okay.  Good afternoon to you.

17             MS. NANETTE DUMAS:  Good afternoon, Your Honor.

18  Nanette Dumas for the U.S. Trustee.

19             MR. KRUGER:  Good afternoon, Your Honor.  Lewis Kruger

20  from Stroock, Stroock and Lavan for Portside Growth, Smithfield

21  Fiduciary, and Citadel Equity Fund.

22             MR. GREENFIELD:  Good morning, Your Honor.  Robert A.

23  Greenfield of Stutman Treister and Glatt, Professional

24  Corporation, attorneys for SONICblue Claims LLC.

25             MR. DURRER:  Good afternoon, Your Honor.  Van Durrer,

Applications to Retain Counsel and Objection to Proposed Counsel          23

1   Skadden, Arps, Slate, Meagher and Flom for Citadel Equity Fund.

2          MR. BURK:  Good afternoon, Your Honor.  Bernard Burk

3   for Pillsbury Winthrop.

4          MR. JOHNSON:  Good afternoon, Your Honor.  Steve

5   Johnson from Gibson Dunn and Crutcher for Intel Corporation.

6          THE COURT:  Okay.  And do we have telephonic

7   appearances?  I didn't check that again.  Just one.

8          MR. BENDER:  Yes, Your Honor.  Ron Bender, Levene

9   Neale Bender Rankin and Brill appearing on behalf of the

10  Creditors Committee.  Good afternoon.

11         THE COURT:  Okay.  Well, good afternoon to you all of

12  you.

13         Now as I indicated for those of you who were here this

14  morning, after I reviewed the record from my prior hearing I

15  thought it would be valuable for me to clarify a few points.

16         First of all, I want it made plain that I am directing

17  this trustee to do anything.  I very much appreciate you

18  exercising your independent judgment, Mr. Connolly.

19         MR. CONNOLLY:  Yes, ma'am.

20         THE COURT:  Okay.  And, secondly, Mr. Kruger, I want

21  to make plain that I don't feel that I have predetermined any of

22  the issues that are going to come before us.  I want to say that

23  the issues that I ruled on previously arose in a different

24  context.  And you'll have since then and will be in the future

25  conducting discovery, so that you will be able to more fully

*Discussion on Advancing the Hearing to Reconstitute the Committee*        24

1    flush out those issues for the future hearings that we'll have.

2            MR. STEIN:  Thank you, Your Honor.

3            THE COURT:  Okay.  With respect to the trustee's

4    employment applications, you all know that at the request of the

5    objecting party we listened to argument this morning and I went

6    ahead and ruled on the objection that was made and made a record

7    on it.  One issue that we didn't touch upon was Mr. Greenfield's

8    comments about wanting to perhaps advance the hearing on

9    reconstituting the committee.  And I thought that at some point

10   this afternoon I should ask you all if you wish to be heard on

11   whether or not to advance that hearing.

12           But right now what we have is the trustee's motion for

13   appointment, the two firms, and I'm wondering if anyone else

14   wishes to be heard with respect to the trustee's employment

15   applications.

16           And I note that no one is coming forward to the

17   record.  So clearly it appears that the appointment of Alston

18   and Bird as counsel and Friedman, Dumas and Springwater as local

19   counsel is in the best interest of the estate and these

20   applications to retain counsel are approved.

21           Now I would like to hear from you, though, with

22   respect to the issue of whether we should advance the hearing on

23   — on reconstituting the committee and any other issues that you

24   feel are appropriate to raise at this time.

25           Do you wish to be heard on that, Mr. Stein?

1          MR. STEIN:  Yes, Your Honor.

2          THE COURT:  Okay.

3          MR. STEIN:  I didn't want to preempt anybody else

4    that —

5          THE COURT:  Yeah.

6          MR. STEIN:  — wanted to come up.  We actually are

7    planning to have a discussion with Mr. Greenfield and Mr.

8    McGrane about that specific issue today.

9          THE COURT:  Okay.

10          MR. STEIN:  The view that we have, I'm not going to

11    try and preempt the discussion, —

12          THE COURT:  Yeah.

13          MR. STEIN:  — is that it's within the scope of the

14    investigation that the trustee is doing.  And until we finish

15    that, it's the kind of thing that probably should be deferred,

16    but —

17          THE COURT:  Okay.  So you just as soon hold that

18    August date?

19          MR. STEIN:  We — we would.  And — but we want to be

20    able to have that discussion, because maybe there's something

21    we're missing in our initial consideration of it, and that's why

22    we talk to people.

23          THE COURT:  Okay.  Well, certainly I didn't want

24    preempt you on that.  And what — maybe what I ought to do is

25    just point out that if you all decide that you want to change

1    the date for that hearing, all you need to do is contact my

2    chambers and we'll specially set you.  You're not required to

3    hold the calendar dates that are shown on the internet.

4              MR. STEIN:  Thank you, Your Honor.

5              THE COURT:  Okay.  Are there any other — is there

6    anyone else who wishes to be heard on any of these issues or are

7    there any other things that we should talk about?

8              MR. STEIN:  Well, there is the other motion that is —

9              THE COURT:  Absolutely.  We'll get there.

10             Okay.  Let's turn then to the — to the motion for a

11   protective order.  Who wishes to be heard with respect to that?

12   To amend the protective order, excuse me.

13             MR. STEIN:  If I may, Your Honor, Grant Stein, Alston

14   and Bird.  To briefly summarize, there were protective orders

15   entered back in 2003 and 2004 that impacted trustee's ability to

16   get all of the information —

17             THE COURT:  Right.

18             MR. STEIN:  — the trustee is requesting as part of his

19   — the beginning of the investigation in the areas that we

20   discussed this morning.

21             As part of the process of getting documents, and I

22   want to be clear that we are receiving documents and we are

23   getting cooperation and getting information and it is moving

24   forward.  People aren't stonewalling us.  I don't want to leave

25   that impression.

1          Having said that, there has been a lot of sensitivity

2     expressed about 'But you're not under the umbrella of the

3     protective order.'  And we talked with Intel and talked with all

4     the other players of the case and ultimately it was determined

5     that it was appropriate to be under the umbrella with respect to

6     the October 17, 2003 protective order but that the areas covered

7     by the September 2004 protective order are so narrow and so

8     sensitive to Intel that we would not come within the scope of

9     that.

10          THE COURT:  Okay.

11          MR. STEIN:  We have obtained everybody's signature

12     that's involved from before on a stipulation.  I represented in

13     the pleadings that the Levene Neale firm had agreed.  I don't

14     actually have their signature, but Mr. Bender's on the phone and

15     can address that.  With the Court's permission I would hand up a

16     signed stipulation in just a moment.

17          The last two points to address are:  There are still

18     some moving parts, but they don't affect the trustee getting

19     access that these documents.  Others may want to come under the

20     scope of the protective order, for example, Pillsbury's counsel.

21     Others may want to do that, but no one is saying that we need to

22     wait to get the documents until all those other nits are worked

23     out, people are talking.

24          THE COURT:  Okay.  I'm very glad to hear that.

25          Okay.  Does anyone else wish to be heard?

1          Mr. Johnson.

2          MR. BENDER:  Your Honor, this is Ron Bender.  I'd just

3    like to be heard briefly.

4          THE COURT:  Oh, certainly.  Go ahead, Mr. Bender.

5          MR. BENDER:  First, in terms of the stipulation I did

6    not realize that Mr. Stein did not have the signature of my

7    firm.  We certainly support the stipulation.  So I could get him

8    a signature immediately or just represent that on the record.

9          Separate from the stipulation, because it wasn't

10   stated specifically I filed a pleading a couple of days ago

11   because I just was hoping to have either a written order or an

12   oral ruling by the Court so that there wasn't any ambiguity from

13   any parties, that I want to be able to turn over all of the

14   documents that I was provided during the period of time when I

15   was doing my investigation to the trustee.  And while I think

16   that was implied by putting the trustee under the protective

17   order, given the fact that everybody who produced these

18   documents to me made various threats, you know, to me regarding

19   turnover of documents to others, being subject to the protective

20   order, et cetera, and I don't — I was not involved directly in

21   the litigation so I'm not sure if the trustee's stipulation does

22   or doesn't authorize me to do just the simple task of taking all

23   these boxes of documents that were produced to me by the

24   O'Melveny firm, the Pillsbury firm, Marcus Smith, Mr. Bennett,

25   et cetera, I just want — I just want to hand all of them to the

1  trustee.

2         So in order to make sure that I wasn't doing anything

3  that wasn't consistent with what everybody understood I was

4  doing, I filed my pleading just to make it crystal clear.  So if

5  I could obtain from you either a written order or an oral ruling

6  that I have the authority to turn over all those documents, that

7  would be much appreciated.

8         THE COURT:  Mr. Johnson, were you going to address

9  that issue?

10        MR. JOHNSON:  Yes.

11        THE COURT:  Okay.  Then please come forward.

12        MR. JOHNSON:  Your Honor, the only issue with respect

13 to Mr. Bender's request is that the files that he subpoenaed

14 from various law firms could possibly contain a few documents

15 under the further protective order from 2004 that should be

16 removed before he turns those files over to the trustee.

17        THE COURT:  Okay.  Mr. Bender, can you identify those?

18        MR. BENDER:  Your Honor, I have absolutely no way of

19 doing it.  It's kind of the same problem we had last time.  I

20 mean when you — when you instructed me to perform the

21 investigation, I served informal and sometimes formal document

22 production requests and specifically what I received is I have

23 one complete box — you know, banker's box of documents from

24 O'Melveny, two complete banker box documents from Pillsbury.  I

25 never received anything from Via.  And I have, you know, some

*Trustee's Motion to Amend Protective Order*                    30

1  emails and some loose documents that I received from Mr. Bennett

2  and Mr. Smith.

3        I have no way of knowing what documents Intel has a

4  problem with and what not.  We started to talk about that at the

5  hearing a few months ago and then that hearing turned into, you

6  know, really a hearing about the trustee's motion for a trustee.

7  So I want to do whatever I can to cooperate, but I don't really

8  know what Mr. Johnson means and how I would go about taking

9  these thousands of documents and deciding what I can and can't

10  turn over to a trustee.

11        I don't really understand — I don't really understand

12  the exact mechanics of why the trustee, who has now substituted

13  in as essentially the debtor, the debtor's representative or the

14  estate's representative, why they're not entitled to the

15  documents.

16        The hearing that we had a few months ago was more

17  complicated because at that hearing I was looking to give copies

18  to Mr. McGrane and Mr. Franklin and the other people who wanted

19  to participate along with me in my investigation.  And all I'm —

20  all I want to do now is just turn them all over to the trustee.

21  It would be up to the trustee to decide how he does or doesn't

22  share the documents with others.

23        So I — you know, Mr. Johnson's position is, 'Well, I

24  can't turn over documents which are subject to one protective

25  order but I can for others,' I don't have any way of doing that

*Trustee's Motion to Amend Protective Order*                                    31

1   unless Mr. Johnson goes through the documents first and tells

2   them.  And many of the documents came to me after you had

3   already decided that I shouldn't proceed with the investigation.

4   So many of the documents I haven't even personally reviewed.

5   They're just in the same boxes they were in when I originally

6   got them.  Maybe — the only other —

7          THE COURT:  Let's hear from Mr. Johnson now.

8          Mr. Johnson.

9          MR. JOHNSON:  I don't think this is particularly

10  complicated.  The documents under the further protective order

11  from 2004 that could potentially be in Pillsbury's files would

12  be handwritten notes from a review by Pillsbury of a

13  particularly sensitive document.  Under that 2004 protective

14  order that the Court entered there was a particular document

15  that a very small number of lawyers were allowed to view in a

16  room, not make copies of, et cetera.  So there may be

17  handwritten notes of what those documents say, which would be

18  extremely commercially sensitive information to Intel.

19         And so Pillsbury could either confirm that the two

20  boxes delivered to Mr. Bender did not contain those notes or

21  they could locate them and remove them.

22         The same would be true of the box or boxes he received

23  from O'Melveny.  They had access and reviewed that document.  I

24  don't believe that the debtor's representative had access.  And

25  I don't know about Mr. Bennett's firm, but he could certainly

*Trustee's Motion to Amend Protective Order*                                     32

1   confirm one way or the other.

2           THE COURT:  Okay.  So what you're saying is that other

3   than records from O'Melveny and Pillsbury, Winthrop, everything

4   else can clearly be turned over?

5           MR. JOHNSON:  I would ask that Mr. Bennett's firm

6   confirm one way or the other whether —

7           THE COURT:  Mr. Bennett or Mr. Bender?

8           MR. JOHNSON:  The counsel for the senior noteholders.

9           THE COURT:  Okay.  Mr. Bennett's firm?

10          MR. JOHNSON:  Yes.

11          THE COURT:  Okay.

12          MR. JOHNSON:  I believe he was under the further

13  protective order.  I don't recall whether he sent a

14  representative of himself reviewed the document at issue.

15          THE COURT:  Okay.  We thought this was going to be

16  simple.  It's getting more complicated.

17          MR. JOHNSON:  It's simply — I think Mr. Bender calling

18  each of those three firms and asking whether the documents that

19  were delivered to him contain anything that was subject to their

20  further protective order and, if so, having it removed.

21          THE COURT:  Mr. Bender, can you proceed in that way?

22          Mr. Bender?

23          MR. BENDER:  Yeah, I'm thinking.  I mean I certainly

24  want to cooperate.  I'm not sure how this is going to work

25  logistically.  Maybe we need to work this out outside the

*Trustee's Motion to Amend Protective Order*                                    33

1    courtroom and Mr. Johnson simply send me an email of what he

2    wants me to then send to the various parties, because I — as I

3    said, I have two full boxes of Pillsbury documents.  I'm not

4    sure how I would even go about figuring out which documents

5    pertain.

6                I mean it seems to me that the easiest thing is for

7    Mr. Johnson to go through the documents and tell me what not to

8    turn over.  But last time when I proposed that, he didn't want

9    to — he said his client didn't want to incur the expense of

10   doing that.  So now it's sort of left to me to try and figure

11   out what I'm not supposed to turn over, and I just don't know

12   how I would do that.

13               MR. JOHNSON:  At the last hearing when we were

14   discussing this it was a different issue.  At that time we were

15   talking about removing all of the documents subject to both

16   protective orders, which is a large volume.  We're now talking

17   about one or two pieces of paper.  I've never seen Pillsbury's

18   files.  I've never seen O'Melveny's files.  I don't think I'm

19   the appropriate person to go through them, but I think those two

20   firms would know fairly quickly what they turned over.

21               THE COURT:  Mr. Stein, what do you recommend?

22               MR. STEIN:  Thank you, Judge.  Let me come up here.

23               The attorney for Pillsbury is here, Mr. Burks.  And if

24   we can identify the date of those notes, we'll be able to find

25   those notes.  And those can be determined that they will be

1    removed from the Pillsbury production; removed easily from the

2    Bates-stamped documents that were turned over to Mr. Bender.

3          The same thing with regard to the senior noteholders

4    and what's in Mr. Bennett's files.  Mr. Craver (phonetic) is

5    here on behalf of the senior noteholders.  It's an easy thing.

6    The same thing:  You look to see if there are notes of a

7    specific date.  If so, they're going to be Bates-stamped.

8    They'll be easy to find.  We can remove those.  And we will

9    coordinate with those two gentlemen to make sure.

10          If something were to slip through we would immediately

11    turn it over to Intel.  We wouldn't be using any of those

12    documents.  There's not a waiver of anything.  It's not that

13    complicated — at least not as I sit —

14          MR. BENDER:  Would —

15          THE COURT:  Mr. Stein, will you agree to coordinate

16    this?

17          MR. STEIN:  Yes, Your Honor.

18          THE COURT:  Thank you.

19          Mr. Bender, what else do you have?

20          MR. BENDER:  No, Your Honor, if Mr. Stein would take

21    the lead in coordinating that, that would be greatly

22    appreciated.

23          THE COURT:  Okay.  Thank you very much.

24          MR. STEIN:  Thank you, Judge.

25          MR. KRUGER:  Your Honor, if I may, Lewis Kruger.  Just

*Trustee's Motion to Amend Protective Order*                          35

1   to say that we may be asking for — in view of the substitution

2   of counsel, Mr. Bennett was a person authorized under the

3   protective order.  I think I may want substitute for him.  I

4   will make an appropriate application.

5          THE COURT:  Okay.  Thank you, Mr. Kruger.

6          Mr. Burk.

7          MR. BURK:  Thank you, Your Honor.  Similarly to Mr.

8   Kruger, we have the unenviable role of helping Pillsbury sort

9   through 15 years of prepetition representation of the debtor and

10  four years of postpetition representation of the debtor.  And

11  there are records both physical and electronic; in making

12  available to the trustee as promptly as we can what the trustee

13  needs to do his job.

14         I think Mr. Stein has confirmed that — that the

15  trustee is satisfied that we are making extraordinary efforts

16  and succeeding as well.

17         Howard Rice is not authorized nor any of its attorneys

18  to view any of the documents under either of the protective

19  orders.

20         THE COURT:  Okay.

21         MR. BURK:  We are having discussions principally with

22  Intel which appear to be bearing a lot of fruit.  but if for

23  some reason we can't come to an understanding because of the

24  sensitivity of these materials to Intel, and Intel is greatly

25  concerned about them for appropriate commercial reasons, it

*Trustee's Motion to Amend Protective Order*                                    36

1    might be appropriate to set a date with the Court by which all

2    of these issues can be sorted out with the Court's assistance if

3    we can't get stipulations done.

4            THE COURT:  I'm not inclined to give you a date but to

5    tell you that I can be very flexible as long as I'm in town.

6    And I'm going to be in town most of the summer.

7            MR. BURK:  Very well, Your Honor.  Thank you.

8            THE COURT:  All right.  Okay.  Mr. Stein.

9            MR. STEIN:  I have the stipulation with all signatures

10   except Mr. Bender's.  I don't know if he just wants the record

11   to reflect his consent.  And with your permission, I would hand

12   that to your Courtroom Deputy to hand to you.

13           THE COURT:  Thank you, Mr. Stein.

14           Mr. Bender, do you have anything for the record?

15           MR. BENDER:  No, Your Honor.  We support entry of that

16   stipulation.

17           THE COURT:  And you consent to it?

18           MR. BENDER:  Yes, Your Honor.

19           THE COURT:  Very well.  Thank you.

20           MR. STEIN:  Thank you, Your Honor.

21           THE COURT:  Okay.  Well, I very much appreciate the

22   efforts that all of you are putting into this.  So thank you for

23   what you're doing.

24           And go ahead and give me the order, Ms. McGowan.

25           Do you need your copies before you leave?

*Trustee's Motion to Amend Protective Order*                    37

1          MR. STEIN:  No.  We'll be able to get them off the

2    record.  You will see some blue ink on that because some of

3    those were signed today, but it is a full set.  Thank you.

4          THE COURT:  Okay.  All right.  Thank you all very

5    much.

6          [COUNSEL]:  Thank you, Your Honor.

7          THE COURT:  Okay.  We're adjourned.

8          THE CLERK:  All rise.

9       (The hearing was adjourned at 1:55 o'clock p.m.)

10                            —o0o—

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

State of California          )
                             )     SS.
County of San Joaquin        )


        I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

        I further certify I am not a party to nor in any way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber through the American Association of Electronic Reporters and Transcribers, Certificate No. 00124.  Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.


                              Susan Palmer
                              Palmer Reporting Services

                              Dated June 30, 2007