Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for York Credit Opportunities Fund, L.P.

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | ) Case No. 03-51775 through 03-51778 |
| | ) Chapter 11 |
| SONICBLUE INCORPORATED et al. | ) |
| Debtor. | ) |
| | ) |

**REPLY BRIEF IN SUPPORT OF
MOTION FOR LEAVE TO APPEAL**

## I.     SUMMARY

At issue here is self-dealing by a fiduciary: the Trustee's decision to award millions of dollars in attorney's fees to his own law firm. *No case* has ever approved this. In this context, the rather esoteric and ethereal contentions of the Opposition Briefs – the appeal cannot be considered because there are no disputed legal questions or because it involves a mixed question of law and fact – are properly seen as evasive and beside the point.

Self-dealing by a fiduciary on this grand scale is always wrong, but it is more transparently and dramatically wrong in this case, where all of the problems have been caused by ethical lapses on the part of bankruptcy fiduciaries and their law firms. Of all bankruptcy cases, this one should be the least tolerant of ethical lapses by its Trustee.

There are only a handful of relevant considerations raised by this Motion, and apart from evasion and indirection, none of them are seriously disputed.

## II.     THE ISSUE IS SELF-DEALING BY A FIDUCIARY

The law of trusts arose out of the common law, and was intended to impose the highest standards of honesty and loyalty upon fiduciaries. A core principal is that a trustee is absolutely barred from having a financial interest in the trust or its *res*. "Equity tolerates in bankruptcy trustees no interests adverse to the trust. This is not because such interests are always corrupt, but because they are always corrupting." *Mosser v. Darrow*, 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed 927 (1951).

Under the law of trusts, a trustee was categorically barred from hiring his own firm to perform services for the trust: such conduct was considered "self-dealing" and was always absolutely prohibited.

> *A trustee who hires his own professional firm to assist him cannot be a 'disinterested person' who has no interests adverse to the estate.* Once the trustee's firm is hired by the estate, the trustee's personal interests are implicated. At that point, the trustee's independence and disinterestedness are compromised by a potential conflict of interest.

(emphasis supplied)     *In re Palm Coast, Matanza Shores Limited Partnership*, 101 F.3d 253 (2nd Cir. 1996).

REPLY BRIEF
IN SUPPORT OF MOTION FOR LEAVE TO APPEAL                                                                                      1

### III. THE BANKRUPTCY CODE DOES NOT ENDORSE SELF-DEALING

The Opposition Briefs suggest that, because Section 327(d) makes it possible for a trustee to hire his own law firm, such self-dealing is broadly endorsed and approved by the Bankruptcy Code. *No case* has adopted this contention.

Rather, *every case* has recognized the tension between Section 327(d) and core common law principles respecting trustees – the duty of loyalty and the obligation to avoid self-dealing and conflicting interests – and has recognized that the authorization contained in Section 327(d) must be narrowly circumscribed and applied only to "special circumstances" and "exceptional cases". The statutory exception provided by Section 327(d) "must… be severely limited so as to prevent abuse and the appearance of impropriety." *In re Butler Industries, Inc.* 101 B.R. 194 (Bkrtcy. C.D. Cal. 1989) (rejecting employment) *aff'd* 114 B.R. 695 (C.D. Cal. 1990).

Whether the Bankruptcy Code broadly endorses self-dealing under Section 327(d), as the Opposition Briefs suggest,[1] or permits it only in special circumstances and exceptional cases is the controlling question of law that warrants granting leave to appeal in this case. The decisional law, cited in the Opening Brief, is uniform and restrictive. Research has uncovered *no case*, on the other hand, which treats Section 327(d) as a blanket exemption from the self-dealing prohibitions of the law of trusts.

### IV. A BIG CASE IS NOT AN "EXCEPTIONAL CASE"

As noted, decisional law stresses that a trustee should hire his own firm only in exceptional cases. The two principal classes of "special circumstances" approved in the decisional law are very small cases that could not support the expense of a lawyer who was new to the facts and circumstances of the case, and "emergency cases", in which if legal services are not performed immediately, the estate

---

[1]  U.S. Trustee's Brief, 7:18-8:2; Trustee's Brief, 8:18-9:7.

REPLY BRIEF
IN SUPPORT OF MOTION FOR LEAVE TO APPEAL                                                              2

will suffer harm. In both cases, if the trustee does not hire his own firm, the estate will not receive needed legal services, timely or at all.

By contrast, this is a case with $80 million in cash on hand, and any law firm the Trustee employs will enjoy millions of dollars in revenues. While the case may support a careful and exhaustive investigation, Alston & Bird in not the only law firm that could conduct such an investigation. Quite the contrary, dozens of "national" firms could perform these services, as the Trustee acknowledges; Trustee's Brief, 6:18-7:5; and so he is left to arguing that his own firm would prove nebulously more efficient, and that he likes his partners the best. Id.

The decisional law does not accept a "smoother case administration" as an "exceptional circumstance"; *Butler, supra*, 114 B.R. at 699. Rather, decisional law is focused on the common law of trusts and the importance of preserving the actual and apparent propriety of the trustee's administration. As a consequence, it has developed almost a *per se* rule against permitting trustees to employ their own firms in large cases, where there will always be the suspicion that the trustee's decision was motivated by financial gain.

> The conduct of bankruptcy proceedings not only should be right but must seem right. Even when litigation is likely to be the trustee's chief responsibility, there must always be doubt whether he can make a truly disinterested determination that his own firm, no matter what its overall merit, is best qualified to be his counsel in the circumstances of the particular case

*Knapp v. Seligson,* 316 F.2d. 164, 168 (2nd Cir. 1966); *In re Showcase Jewelry Design, Ltd.*, 166 B.R. 205, 206 (E.D.N.Y 1994). It bears repeating that research has uncovered *no case* in which a court approved the appointment of the trustee's own firm in a large case. Rather, decisional law views large cases, where substantial fees will be earned, as the cases in which the Trustee's actual and apparent independence must be preserved by insisting on the appointment of independent counsel.

## V.   REVIEW MUST BE NOW OR NEVER

Most of the Opposition Briefs are focused on arguing that leave to appeal should not be granted on hyper-technical grounds. Obviously, this is done out of the recognition that if the employment of Alston & Bird is not reviewed now, as a practical matter it never will be reviewable. For this very reason, as one of the cases often cited by the Trustee explains, review should be granted:

> Were we to put off hearing [the] appeal… until after the entire bankruptcy proceeding, allowing the possibility of an order returning this bankruptcy to its very beginning for a second round, the concept of judicial efficiency would be effectively turned on its head. Liberal finality considerations… are necessary because these orders cannot be meaningfully postponed to the bankruptcy's conclusion.
>
> Were we not to take jurisdiction at this juncture, no meaningful review… could ever take place, as a practical matter. What we know as men and women we must never forget as judges. Once bankruptcy reorganization has been completed after months or years and after a plan of reorganization has been hammered out, it strains credulity to suggest that a reviewing court would jettison years of bankruptcy infighting, compromise and final determinations solely for the purpose of reversing [an appointment order] and have the proceedings begin again from scratch. The practical reality is that unless an appeal can be lodged now, there will never be a meaningful review….

*In re Marvel Entm't Group, Inc.*, 140 F.3d. 463, 470-1 (3rd Cir. 1998)[2]. Here, too, if the Order is not reviewed now, as a practical matter it never can be reviewed. The decision to grant leave to appeal is left to this Court's discretion. 28 U.S.C. § 158(b); *In re Roderick Timber Co.* 185 B.R. 601, 604 (BAP 9th Cir. 1995). The absence of a meaningful possibility of future review, coupled with the harm associated with permitting self-dealing in a bankruptcy case such as this, constitutes good cause to grant leave to appeal here.

---

[2]   The orders at issue in *Marvel*, about which the Third Circuit accepted appellate jurisdiction, appointed a trustee and disqualified retention of his own firm as counsel based on an actual conflict of interest.

REPLY BRIEF
IN SUPPORT OF MOTION FOR LEAVE TO APPEAL                    4

## VI. THE BANKRUPTCY COURT'S DECISION IS NOT ENTITLED TO DEFERENCE

With respect, the Bankruptcy Court's short analysis provides no assistance.

The sole authority cited by the Bankruptcy Court, *In re Mandell*, 69 F.2d. 830, 831 (2nd Cir. 1934), is inapt:[3] in *Mandell*, the trustee sought to employ a capable, disinterested, unrelated law firm with substantial background in the subject matter of the case, but citing a local rule, the District Court undertook to compel the trustee to hire a law firm the trustee did not know. While the decision does announce as a default rule that deference should be given to the trustee's choice of counsel, it does not address –at all – the matter at hand: what should be done when the trustee's choice of counsel is tainted by self-dealing?

Likewise, the Bankruptcy Court seems to have turned the test provided by the decisional law on its head. As noted, case law requires the Trustee to show "cause" for the appointment of his own firm as counsel in the form of "exceptional circumstances"; Opening Brief, 8:4 – 9:18. Instead, the Bankruptcy Court apparently placed the burden on the objectors to show that the self-dealing would cause serious harm.[4] Contrast *Butler*, *supra*, 114 B.R. at 699 (holding that it is the Trustee's burden to show "cause" why the best interests of the estate are better served by hiring the Trustee's own firm "as opposed to representation by an *independent* law firm" and noting that "Safeguards against excess fee billing are built into the bankruptcy code. Those safeguards are irrelevant in this instance, however, because the objective is to avoid the potential conflict problem, not to remedy the problem once it is encountered.").

Finally, the Bankruptcy Court's sole factual "findings" are so terse as to be useless. The Bankruptcy Court found that "Alston & Bird is qualified"; Transcript, 21:7; but that was never in dispute. The only arguably significant finding was "It's certainly clear from the record that this is an extraordinary case that does require maybe special handling"; Transcript, 21:7-9. The Bankruptcy Court

---

[3]   Transcript of Hearing, 20:18 – 21:4, attached as Exhibit A to the Trustee's Opposition Brief.

[4]   "I'm not swayed that we should do anything other in this instance [than allow the trustee "the privilege of selecting his own counsel".]… and everyone is looking at fees very closely…" Transcript of Hearing, 21:3-12.

did not elaborate on what made this an "extraordinary case"; one can only surmise it was the developments that lead to the appointment of the Trustee. (For the Court's convenient review, the Bankruptcy Court's opinion in that regard is attached hereto.) There is no apparent connection between the factors that rendered the case "extraordinary" and justified "special handling" by the Trustee and whether the Trustee demonstrated "cause" sufficient to justify self-dealing in the selection of his law firm.

The Bankruptcy Court failed to address the key legal issues or to articulate factual findings in a manner that assists appellate review. The Bankruptcy Court made its decision based on the same documents that are before this Court, and this Court is in as good a position as the Bankruptcy Court was to evaluate them. In any event, the only relevant facts are undisputed:

> ➢ This is a large bankruptcy case, in which the Trustee's counsel will earn very substantial fees, rendering applicable the policy against permitting trustees to retain their own firm as counsel; see, Section IV, supra.

> ➢ *None* of the factors that decisional law has accepted as constituting "cause" for a trustee to employ his own firm as counsel are applicable here.[5]

---

[5] The factors are identified as follows:

1. Where the estate's assets consist principally of causes of action and legal counsel would have to look to recovery for payment of fees;

2. Where there is relatively little legal work to perform and thus it does not merit the effort and expense of hiring an outside law firm;

3. Where a substantial legal action must be taken immediately, and the trustee cannot wait for completion of the appointment process for outside counsel;

4. Where the trustee can demonstrate that such appointment will result in a substantial reduction of costs to the estate.

Derr & Layden, *Appointing the Trustee's Own Law Firm – Conflict and Cases*, 13 Oct AM. BANKR. INST. J. 26 (1994) ; *Butler, supra,* 114 B.R. at 699, n. 1; *Showcase, supra*, 166 B.R. at 207; Phelan & Penn, *Bankruptcy Ethics, An Oxymoron*, 5 AM. BANKR. INST. L. REV. 1, 40-41 (Spring 1997); Kelbon, Herman & Bell, *Conflicts, the Appointment of "Professionals," and Fiduciary Duties of Major Parties in Chapter 11*, 8 BANKR. DEV. J. 349, 398-400 (1991).

## VII. CONCLUSION

As reflected in the attached Decision of the Bankruptcy Court, this bankruptcy case has been grievously afflicted by the ethical lapses of the estate's fiduciaries and their counsel. Of all cases, this one cries out for a prohibition on self-dealing by the Trustee and an insistence that his "conduct of bankruptcy proceedings not only should be right but must seem right." To do that, the Trustee must be required to retain independent counsel.

                                            Respectfully submitted,

DATED: July 17, 2007              ST. JAMES LAW, P.C.

                                          By: _/s/ *Michael St. James*_ .
                                                Michael St. James
                                                Counsel for York Credit Opportunities Fund, L.P.